Exhibit A

| Case | 20CV03451 | **Caption** | ELVEN vs. THE BOARD OF COUNTY COMMISSIONERS OF THE C( |
|------|-----------|-------------|---|
| **Chapter** | 60 | **Nature** | OTHER TORT (60) |
| **Status** | PENDING | **Judge** | RHONDA K MASON |
| **Division** | 4 | | |



Sort By Ascending Order    Sort by Descending Order          Print Friendly          E-File On Case

| | | |
|---|---|---|
| 08/14/2020 | NEW CASE E-FILED; ELVEN VS THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON; FILING FEE $196.50; PAID BY BRUCE, ROBERT A, RECEIPTED AMOUNT $196.50, E-PAYMENT NO: 94164028 | |
| 08/14/2020 | JUDGE RHONDA K MASON ASSIGNED TO CASE | |
| 08/14/2020 | FILE STAMP 08/14/20, PETITION FOR DAMAGES (DEMAND FOR JURY TRIAL) | DOC(1) |
| 08/14/2020 | FILE STAMP 08/14/20, SERVICE INSTRUCTION FORM | DOC(2) |
| 08/14/2020 | FILE STAMP 08/14/20 02:37pm, REQUEST AND SERVICE INSTRUCTION FORM | DOC(3) |
| 08/14/2020 | PETITION, SUMMONS AND NOTICE ISSUED TO ATTORNEY FOR CERTIFIED MAIL "THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON" E/S | |
| 12/03/2020 | FILE STAMP 12/02/20, AFFIDAVIT OF SERVICE | DOC(4) |
| 12/03/2020 | ELECTRONIC ENTRY OF APPEARANCE BY JEANNIE M DEVENEY AS A DEFENSE ATTORNEY FOR THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON | |
| 12/03/2020 | DISPOSITIVE MOTION FEE $195.00; PAID BY JEANNIE M DEVENEY, RECEIPTED AMOUNT $195.00, E-PAYMENT NO: 95801590 | |
| 12/03/2020 | FILE STAMP 12/03/20, DEFENDANT'S MOTION TO DISMISS AND SUGGESTIONS IN SUPPORT THEREOF | DOC(5) |
| 12/22/2020 | FILE STAMP 12/17/20, PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | DOC(6) |
| 12/29/2020 | FILE STAMP 12/23/20, DEFENDANTS UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE REPLY IN SUPPORT OF MOTION TO DISMISS | DOC(7) |
| 12/29/2020 | FILE STAMP 12/29/20, ORDER | DOC(8) |
| 01/08/2021 | FILE STAMP 01/08/21, REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS | DOC(9) |
| 03/17/2022 | FILE STAMP 03/17/22, PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION | DOC(10) |
| 03/30/2022 | FILE STAMP 03/30/22, DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION | DOC(11) |
| 08/29/2022 | NOTICE AND ORDER OF PENDING DISMISSAL PER LOCAL RULE 6 MAILED TO PARTIES | |

1

| 08/29/2022 | FILE STAMP 8/29/2022, NOTICE AND ORDER OF PENDING DISMISSAL | DOC(12) |
|---|---|---|
| 09/19/2022 | FILE STAMP 09/19/22, PLAINTIFF'S MOTION AND SHOWING TO REMOVE CASE FROM DISMISSAL | DOC(13) |
| 09/21/2022 | FILE STAMP 09/21/22, PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION | DOC(14) |
| 09/28/2022 | SCHED. MOTION on 11/21/22,09:30am,Div 4 | |
| 09/29/2022 | FILE STAMP 09/29/22, DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE FIRST AMEDNED PETITION | DOC(15) |
| 09/30/2022 | FILE STAMP 09/30/22, ORDER (EXTENSION GRANTED) | DOC(16) |
| 10/18/2022 | FILE STAMP 10/18/22, DEFENDANT'S RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION | DOC(17) |
| 10/21/2022 | CANCELLED MOTION on 11/21/22,09:30am,Div 4, AGREED ORDER FILED. | |
| 10/24/2022 | FILE STAMP 10/24/22, ORDER | DOC(18) |
| 10/24/2022 | FILE STAMP 10/24/22, FIRST AMENDED PETITION FOR DAMAGES | DOC(19) |
| 10/24/2022 | FILE STAMP 10/24/22 09:54am, REQUEST AND SERVICE INSTRUCTION FORM | DOC(20) |
| 10/24/2022 | FILE STAMP 10/24/22 09:54am, REQUEST AND SERVICE INSTRUCTION FORM | DOC(21) |
| 10/24/2022 | FILE STAMP 10/24/22 09:54am, REQUEST AND SERVICE INSTRUCTION FORM | DOC(22) |
| 10/24/2022 | PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "MATTHEW FLETCHER" E/S | |
| 10/24/2022 | PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "BETH JOHNSON" E/S | |
| 10/24/2022 | PETITION AND SUMMONS ISSUED TO ATTORNEY FOR CERTIFIED MAIL "TIFFANY HENTSCHEL" E/S | |
| 10/26/2022 | FILE STAMP 10/26/22, DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION TO ANSWER OR OTHERWISE RESPOND | DOC(23) |
| 10/26/2022 | FILE STAMP 10/26/22, ORDER (EXTENSION TO ANSWER) | DOC(24) |

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | Division: |
| | ) | Chapter: 60 |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | REQUEST FOR JURY TRIAL |
| COUNTY OF JOHNSON, | ) | |
| | ) | |

Serve: The Board of County Commissioners of The County of Johnson
Penny Postoak Ferguson, County Manager
111 S Cherry Street, Suite 3300
Olathe, KS 66061

## PETITION FOR DAMAGES

COMES NOW Plaintiff, Charmaine Elven, and for her claims against Defendant The Board of County Commissioners of the County of Johnson, alleges and states as follows:

1.  Plaintiff was at all times set forth below a resident of Kansas.

2.  Defendant The Board of County Commissioners of the County of Johnson ("Defendant County") is a political subdivision (municipality) of the State of Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3.  The actions giving rise to Plaintiff's claims occurred in Johnson County, Kansas.

4.  On February 28, 2020, Plaintiff sent written notice of this claim to Defendant, substantially complying with the requirements of Kansas Tort Claims Act, particularly K.S.A. 12-105b (2020).

5.  Specifically, that document identified Plaintiff's name; Plaintiff's

attorneys' names and address; a statement of facts laying out Plaintiff's claim as outlined below; the names of public officers involved, and the address or two such officers; a statement of the injuries suffered; and a demand of more than $75,000.

6. Defendant denied the claim on or about May 15, 2020.

7. On March 18, 2020, Chief Justice Luckert signed Kansas Supreme Court Administrative Order 2020-PR-016, suspending all statute of limitations and statutory time standards.

8. That suspension remains in effect as of August 14, 2020, through later Administrative Orders.

## FACTS COMMON TO ALL COUNTS

9. Plaintiff was hired by Defendant in approximately April 2015.

10. Plaintiff was employed as a Community Employment Specialist at the Johnson County Developmental Supports (JCDS).

11. Plaintiff's job duties including serving as the Team Leader for Project SEARCH, which strives to offer education and vocational training to individual with intellectual and development disabilities.

12. Plaintiff worked as a non-exempt employee, and was required to submit timecards showing hours Plaintiff had worked for each week.

13. Plaintiff's supervisor, Kim Perry, the Team Leader for Day and Employment Services, had to approve all time entries before Plaintiff would be compensated for that time.

14. In Perry's absence, Beth Johnson would approve all time entries—including overtime—before Plaintiff would be compensated for that time.

15. Between April 2015 and January 2018, Plaintiff worked substantial overtime.

16. At no time prior to January 31, 2018 did Perry, Johnson, or any employee of Defendant ask Plaintiff about her overtime hours worked.

17. Plaintiff would often use a laptop computer provided by Defendant to complete tasks.

18. Some of these tasks were completed at Plaintiff's home.

19. In late 2017, Plaintiff began to notice several troubling issues at JCDS.

20. In one instance, Plaintiff arrived for her shift to find a client pounding on the wall of his room in an attempt to get assistance.

21. Plaintiff asked the night staff if something was wrong with the client.

22. The staff remarked that, "I dunno, he's been doing that for over an hour."

23. Plaintiff entered the client's room to find that the client had defecated and urinated on himself.

24. The client was pounding the wall in an attempt to get someone's attention for assistance in cleaning himself.

25. Plaintiff apologized to the client and helped him to get clean.

26. Plaintiff reported the occurrence to Senior Direct Support Professional, as well as Melissa Athey and Chris Goff.

27. To Plaintiff's knowledge, no investigation was under taken nor any corrective measures implemented to prevent similar occurrences.

28. Plaintiff also complained that narcotic medications that were at the JCDS 54th Terrace location were not being properly stored, including a lack of any lock on the

*Clerk of the District Court, Johnson County Kansas*
*08/14/20 02:37pm VV*

medications.

29.     Some narcotic medications ultimately came up missing at the 99th Terrace Home.

30.     Plaintiff reported the missing medications to her supervisors and the medical staff at JCDS.

31.     However, after Plaintiff's report, Plaintiff did not observe any changes in how the narcotic medications were stored or secured.

32.     On or about December 7, 2017, Plaintiff was working in the office at JCDS.

33.     The office had several medical files, which contained confidential medical and personal information of several clients of the JCDS.

34.     Some of this information is protected by the Health Insurance Portability and Accountability Act (HIPAA).

35.     During her shift, an unknown individual opened the door to the office.

36.     Plaintiff was startled, as the door was supposed to be locked to prevent unauthorized individuals from accessing the room, as well as the confidential information stored therein.

37.     Plaintiff examined the door, and found that it did not even have a functioning lock.

38.     Plaintiff also learned that court was being held in the same building as the JCDS office.

39.     Several individuals reporting to court for criminal cases began knocking on the office door, with some opening the unlocked door.

40.     Plaintiff learned that, despite court being held in the building, no additional

*Clerk of the District Court, Johnson County Kansas*
*08/14/20  02:37pm VV*

security was present.

41.    Plaintiff contacted Perry to report these incidents and request that a working lock be installed on the door to protect the confidential information, as well as the JCDS staff and clients.

42.    Plaintiff also noted that the door needed to be secured to protect the staff and clients of JCDS.

43.    Perry brushed off Plaintiff's complaints.

44.    Perry told Plaintiff, "I'm sure this will all blow over and get fixed eventually."

45.    Plaintiff was put off by this comment, as she did not want anything to "blow over"; Plaintiff wanted the issue corrected.

46.    Plaintiff again requested that Perry make these issues known.

47.    Perry again refused.

48.    On December 13, 2017, Plaintiff found that nothing had been done to address her complaints.

49.    Plaintiff decided she needed to report the issues to a higher authority.

50.    Plaintiff contacted Human Resources and described the occurrence, the potential issues, and the need for the lock.

51.    The Human Resources representative told Plaintiff the department would follow up on this to make sure it was addressed.

52.    Approximately 10 minutes after Plaintiff's complaint to Human Resources, Plaintiff received a call from Perry.

53.    Perry immediately asked Plaintiff: "Why did you contact HR?"

*Clerk of the District Court, Johnson County Kansas*
*08/14/20 02:37pm VV*

54. Plaintiff attempted to explain, but Perry talked over her.

55. Perry told Plaintiff that Plaintiff should not go "over her head" again "or else."

56. Perry told Plaintiff: "I have things under control."

57. Plaintiff apologized to Perry about contacting Human Resources.

58. Plaintiff explained that she did not realize Perry was working on something to address the issue.

59. Perry snapped back: "I'm not."

60. Plaintiff did not know what to say, and Perry ended the call.

61. A few weeks later, Plaintiff was called into a meeting with Human Resources representative Teal Goeller and JCDS Director of Day and Employment Services, and Johnson.

62. In that meeting Plaintiff was told that her overtime usage was "excessive."

63. Plaintiff pointed out that she had been working at JCDS for over three years, and substantial overtime was part of the job.

64. Plaintiff also noted that her supervisor, Perry, had signed off on all of Plaintiff's timecards showing Plaintiff's overtime hours.

65. Plaintiff further pointed out that the only other individual in the same position as Plaintiff, Jo Duncan, had been using FMLA leave during 2017, which had also contributed to Plaintiff working additional hours.

66. As Plaintiff attempted to explain the work she had been doing to justify the overtime worked, Goeller and Johnson continually interrupted Plaintiff and kept her from speaking.

*Clerk of the District Court, Johnson County Kansas*
*08/14/20 02:37pm VV*

67.     Plaintiff repeatedly told both Goeller and Johnson that she needed the laptop computer Defendant County had issued to her to indicate what she was doing on any given day.

68.     Plaintiff offered to allow Goeller or Johnson to operate the computer while Plaintiff instructed the operator where to locate the pertinent data, but was rebuffed.

69.     Plaintiff was never given the opportunity to access this documentation from her computer to prove she had been working for all claimed hours.

70.     In fact, Plaintiff would never be allowed to access her computer again before being discharged.

71.     The following day, Plaintiff was placed on administrative leave.

72.     When Plaintiff was informed of this, she asked if she should get an attorney.

73.     The Human Resources representative mocked Plaintiff for asking this question.

74.     The representative remarked "Why should you? You aren't in any trouble here."

75.     Plaintiff was only interviewed for approximately 10 minutes over the next three weeks as an investigation was conducted.

76.     In that brief interview, Plaintiff again directed Defendant to her work computer.

77.     Plaintiff noted that the computer contained all the relevant information to support Plaintiff's use of overtime.

78.     Defendant, through its agents, including Johnson, again denied Plaintiff access to her computer.

79.     Goeller contacted Plaintiff to request that Plaintiff attend a "meeting" on February 22, 2018.

80.     Goeller told Plaintiff that Defendant had some "follow up questions" for Plaintiff.

81.     Goeller did not inform Plaintiff that a decision would be made on this date.

82.     On February 22, 2018, Plaintiff arrived for the "meeting."

83.     However, Plaintiff found that six individuals, including JCDS Deputy Director Matthew Fletcher, Perry, and Goeller, were present.

84.     Shortly after Plaintiff entered the room, Fletcher told Plaintiff: "I intend to separate you from employment with JCDS; convince me otherwise."

85.     Plaintiff realized that this was not a "meeting" for follow-up questions, but a hearing upon which her employment status would be decided.

86.     Plaintiff had gotten no advanced warning of this fact.

87.     Plaintiff again, asked for access to her work computer.

88.     Plaintiff again, explained that the computer held documents and data that would prove her explanations regarding the use of overtime.

89.     Plaintiff was again denied access to this evidence by Defendant, acting through Fletcher.

90.     Fletcher informed Plaintiff that Defendant had advised the District Attorney for Johnson County, Kansas to pursue criminal charges against Plaintiff for theft.

91.     Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff.

92.     The memorandum had been written by Fletcher prior to hearing from

*Clerk of the District Court, Johnson County Kansas*
*08/14/20 02:37pm VV*

10

Plaintiff on February 22, 2018.

93.     In the memorandum, it stated: "[Defendant] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working."

94.     Despite signing off on Plaintiff's overtime, Perry was not discharged.

95.     In fact, Perry participated in Plaintiff's discharge.

96.     Johnson had signed off on some of Plaintiff's overtime as well.

97.     Despite this, Johnson was not discharged.

98.     Plaintiff was given five business days, up to and including March 1, 2018, to determine whether she would appeal the decision of Defendant.

99.     Plaintiff did not have access to her computer, so knew she would not have the ability to properly defend herself upon an appeal of the decision.

100.    Plaintiff notified Defendant of this one March 1, 2018.

101.    Plaintiff applied for unemployment benefits, but was denied when Defendant alleged that Plaintiff had committed theft by inflating overtime hours.

102.    Plaintiff began working at another job following her discharge from employment by Defendant.

103.    On January 2, 2019, the District Attorney for Johnson County, Kansas ("DA") filed a criminal charge of theft against Plaintiff.

104.    As a result of this charge, Plaintiff was terminated from her replacement employment.

105.    Plaintiff was arrested on January 2, 2019, and forced to post bond for her release.

*Clerk of the District Court, Johnson County Kansas*
*08/14/20 02:37pm VV*

106. Plaintiff retained legal counsel to represent her in the criminal case.

107. In the criminal case, Plaintiff's legal counsel requested access to Plaintiff's work computer and all data/documents contained therein.

108. Plaintiff has a constitutional right to this information, as it would exonerate her.

109. Plaintiff's legal counsel contacted the DA, through the attorney prosecuting Plaintiff's criminal case, and informed the attorney that the work computer would be extremely important.

110. The DA's office sent an investigator, Jason Novotny, to review the computer's contents.

111. However, it was discovered that the computer was believed to have been completely wiped.

112. Plaintiff's legal counsel then subpoenaed Defendant for access to the computer.

113. Defendant, though its IT department, stated that the computer had been reissued to another employee and that the computer had not been examined forensically in any way prior to being wiped.

114. Defendant, though its IT department, suggested that most of the data was saved to an external server owned by Defendant.

115. Novotny interviewed Mike Epperson, the Information Security and Resilience Manager for Defendant.

116. Epperson stated that Defendant's retention policy was for six months after an employee's discharge.

117. Epperson stated that the computer had been "disabled" on March 19, 2018, well before the six month period.

118. Further, no hold was placed on the data held by the computer.

119. Plaintiff's legal counsel then subpoenaed Defendant for access to the saved data from the server.

120. Defendant, through its legal counsel, stated *that none of the records from Plaintiff's computer could be located on the server*.

121. Upon information and belief, this data was never saved to the server, but instead deleted well ahead of Defendant's record retention policy.

122. Additionally, many of the documents identified in the discharge report written by Fletcher have been identified as "un-locatable" by the DA's office.

123. This destruction of exculpatory evidence, done well after Defendant knew it would be requesting a criminal case to be opened, constitutes further retaliation by Defendant against Plaintiff.

124. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## **COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY**

125. Plaintiff made good-faith complaints to management members of Defendant about the following concerns:

a. Neglect of residents who depended on staff of JCDS for support, in violation of the Adult Care Home Licensure Act (K.S.A. § 39-923) and civil rights of the residents;

b.     Unsafe and unsecured storage of narcotic medications, in violation of the Controlled Substances Act (21 U.S.C., ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

c.     Missing narcotic medications, in violation of the Controlled Substances Act (21 U.S.C. ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

d.     Unsafe working conditions due to lack of locks on doors, in violation of the Occupational Safety and Health Act (29 U.S.C., ch. 15); and

e.     Inadequate protections for personal information protected by HIPAA, in violation of HIPAA and Health Information Technology for Economic and Clinical Health Act.

126.     The above laws each pertain to public health, safety, and the general welfare of the citizens of Kansas.

127.     Plaintiff made each of the above reports to supervisory employees of Defendant, including Plaintiff's direct supervisor.

128.     When Plaintiff's direct supervisor failed to act on Plaintiff's complaint, Plaintiff went to a higher internal authority.

129.     Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, requesting criminal charges be brought against Plaintiff, destroying exculpatory evidence identified by Plaintiff, and opposing Plaintiff receiving unemployment benefits.

130.     Defendant's adverse employment actions taken against Plaintiff were each

*Clerk of the District Court, Johnson County Kansas*
*08/14/20  02:37pm VV*

based upon, and directly related to, Plaintiff's complaints.

131.    Defendant's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts, the Kansas Legislature, and Congress.

132.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, loss of subsequent employment, increased legal fees, and will continue to suffer the same unless and until this Court grants relief.

133.    Defendant acted toward Plaintiff with willful conduct, wanton conduct, or malice.

134.    Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all accounts and allegations of wrongful conduct alleged in this Petition.

*Clerk of the District Court, Johnson County Kansas*
*08/14/20 02:37pm VV*

Dated: August 14, 2020                    Respectfully submitted,

                                          _/s/ Robert A Bruce_____
                                          Daniel L. Doyle, KS Bar No. 11260
                                          Robert A. Bruce, KS Bar No. 28332
                                          DOYLE & ASSOCIATES LLC
                                          748 Ann Avenue
                                          Kansas City, Kansas 66101
                                          Telephone: (913) 371-1930
                                          Facsimile: (913) 371-0147
                                          d.doyle@ddoylclaw.com
                                          r.bruce@ddoylclaw.com
                                          ATTORNEYS FOR PLAINTIFF

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| **CHARMAINE ELVEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| v. | ) | **Division:** |
| | ) | **Chapter: 60** |
| **THE BOARD OF COUNTY** | ) | |
| **COMMISSIONERS OF THE** | ) | **REQUEST FOR JURY TRIAL** |
| **COUNTY OF JOHNSON,** | ) | |
| | ) | |

Serve: The Board of County Commissioners of The County of Johnson
Penny Postoak Ferguson, County Manager
111 S Cherry Street, Suite 3300
Olathe, KS 66061

## SERVICE INSTRUCTION FORM

To: Clerk of the District Court

You are hereby instructed to effect service among the litigant(s), as follows:

____X____ Return receipt delivery service by the undersigned litigant/attorney, who understands that the responsibility for obtaining service and effecting its return shall be on the attorney/litigant. The receipt for service (e.g., in the case of certified mail, the green card) must be filed with the clerk's office before service can be perfected.

The Board of County Commissioners of The County of Johnson
C/O Penny Postoak Ferguson, County Manager
111 S Cherry Street, Suite 3300
Olathe, KS 66061

Dated: August 14, 2020                    Respectfully submitted,

_/s/ Robert A Bruce_____

Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
d.doyle@ddoylclaw.com
r.bruce@ddoylclaw.com
ATTORNEYS FOR PLAINTIFF

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

CHARMAINE ELVEN

               Plaintiff                    Case No: 20CV03451

      vs                                    Division:   4

                                          K.S.A. Chapter 60

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON

               Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a SUMMONS, PETITION and NOTICE in this action for THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON whose address for service is:

    111 S CHERRY STREET, SUITE 3300
    OLATHE, KS 66061


Certified mail service by the undersigned attorney, who understands that it is their responsibility to obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the Clerk's office to prove service.


                      By: /s/ ROBERT A BRUCE
                      ROBERT A BRUCE, #28332
                      748 ANN AVE
                      KANSAS CITY, KS 66101
                      913-221-7066

# IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20CV03451 |
| | ) | Division No.: 4 |
| THE BOARD OF COUNTY | ) | Chapter 60 |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF SERVICE

I hereby state that the Petition and Summons for this matter were served upon Defendant on November 16, 2020, by delivering a copy of the same via Certified Mail, to Penny Postoak Ferguson, 111 S Cherry Street, Suite 3300, Olathe, Kansas 66061.

A copy of the signed Return Receipt is attached to this filing.

Bronwen Hicks
748 Ann Ave, Kansas City, KS 66101

| | | |
|---|---|---|
| STATE OF KANSAS | ) | |
| | ) | ss: |
| COUNTY OF WYANDOTTE | ) | |

On this 2nd day of December, 2020, the above person known to me executed this document.



NOTARY PUBLIC - State of Kansas
DANIEL L. DOYLE
My Appt. Expires 10/24/24

NOTARY PUBLIC

*Clerk of the District Court, Johnson County Kansas*
*12/02/20 04:21pm ML*

Respectfully submitted,

_/s/ Robert A. Bruce_
Daniel L. Doyle          KS#11260
Robert A. Bruce          KS#28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
**ATTORNEYS FOR PLAINTIFF**

**USPS TRACKING #**





First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 4865 9032 5998 39

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Daniel L. Doyle
Doyle & Associates LLC
748 Ann Avenue
Kansas City,KS  66101

Charmaine Elvein – Certified Mail of Summons and Petition

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
 so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
 or on the front if space permits.

1. Article Addressed to:
The Board of County Commissioner
of the County of Johnson
c/o Penny Postoak Ferguson, Cnty Manager
111 S. Cherry Street, Suite 3300
Olathe

9590 9402 4865 9032 5998 39

2. Article Number (Transfer from service label)

7013 0600 0002 0493 4160

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery
                                     11/16/20

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

# USPS Tracking®

FAQs ›

## Track Another Package +

**Tracking Number:** 70130600000204934160

Remove ✕

Your item was delivered to an individual at the address at 11:34 am on November 16, 2020 in OLATHE, KS 66061.

## ⊘ Delivered

November 16, 2020 at 11:34 am
Delivered, Left with Individual
OLATHE, KS 66061

Get Updates ⌄

---

**Text & Email Updates** ⌄

---

**Tracking History** ⌃

**November 16, 2020, 11:34 am**
Delivered, Left with Individual
OLATHE, KS 66061
Your item was delivered to an individual at the address at 11:34 am on November 16, 2020 in OLATHE, KS 66061.

**November 16, 2020, 7:31 am**
Out for Delivery
OLATHE, KS 66061

*Clerk of the District Court, Johnson County Kansas*
*12/02/20 04:21pm ML*

**November 16, 2020, 7:20 am**
Arrived at Unit
OLATHE, KS 66061

**November 15, 2020**
In Transit to Next Facility

**November 14, 2020, 1:11 pm**
Departed USPS Regional Origin Facility
KANSAS CITY MO DISTRIBUTION CENTER

**November 13, 2020, 11:59 pm**
Arrived at USPS Regional Origin Facility
KANSAS CITY MO DISTRIBUTION CENTER

**November 13, 2020, 5:14 pm**
Departed Post Office
KANSAS CITY, KS 66101

**November 13, 2020, 11:41 am**
USPS picked up item
KANSAS CITY, KS 66101

---

**Product Information**                                        ∧

**Postal Product:**                    **Features:**
                                       Certified Mail™

---

**See Less ∧**

**Can't find what you're looking for?** *Clerk Registration of Johnson County Kansas*
                                            *12/02/20  04:21pm ML*

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

CHARMAINE ELVEN,       )
      )
    Plaintiff,       )    **Case No.: 20CV03451**
      )
    vs.       )    **Div. 4**
      )
**THE BOARD OF COUNTY**       )
**COMMISSIONERS OF THE**       )
**COUNTY OF JOHNSON,**       )
      )
    Defendant.       )

## DEFENDANT'S MOTION TO DISMISS
## AND SUGGESTIONS IN SUPPORT THEREOF

Pursuant to K.S.A. § 60-212, Defendant The Board of County Commissioners of the County of Johnson ("Defendant" or "the County"), hereby moves to dismiss Plaintiff's Petition in its entirety. Even assuming the truth of all facts alleged in Plaintiff's Petition, Plaintiff has not stated a claim upon which relief may be granted.

Specifically, Plaintiff's Petition asserts one count of retaliation in violation of public policy. Plaintiff's claim is barred because Plaintiff failed to provide the County notice of her claim pursuant to the Kansas Tort Claims Act, as required by Kan. Stat. Ann. § 12-105b(d). Plaintiff alleges that her prior filing of a now-dismissed action in federal court constitutes notice for the purposes of this matter, but her federal complaint fails to meet the requirements of Kan. Stat. Ann. § 12-105b(d) in many aspects, not the least of which is that her alleged "notice" was, by her own allegation, served outside the two-year statute of limitations on her retaliation claim. This failure to timely serve notice deprives this Court of jurisdiction over her claim. Accordingly, Defendant respectfully submits that the Court dismiss Plaintiff's case.

## I.  FACTS.

1.  On February 22, 2018, Plaintiff received a written memorandum discharging her from her employment with Defendant. (Petition, ¶¶82-91).

2.  Plaintiff filed a Complaint against Defendant in the United States District Court for the District of Kansas on February 21, 2018. (*See* Ex. 1, the federal complaint).[1]

3.  Plaintiff alleges she "sent written notice" to Defendant on February 28, 2020 (Petition, ¶4), meaning, she mailed the federal Complaint she had filed against Defendant.

4.  On March 2, 2020, Defendant received a copy of the federal complaint and summons, via certified mail, which was addressed to the Board of County Commissioners of the County of Johnson and County Manager Penny Postoak Ferguson. (*See* Ex. 2, Proof of Service dated March 2, 2020).

5.  Count I of Plaintiff's federal complaint asserted a claim of retaliation in violation of public policy under Kansas state law, as well as five due process claims against the County and two individual defendants. (*See* Ex. 1).

6.  Plaintiff's federal complaint made no representation that she provided notice of her retaliation claim to Defendant pursuant to the Kansas Tort Claims Act ("KTCA"). (*See id.*).

7.  On May 15, 2020, Defendant filed its Answer in the federal case, denying the claims, including Count I. (*See* Ex. 3, a copy of the federal docket sheet, at Doc. 14; *see also* Petition, ¶6).

---

[1] This Court can take judicial notice of the filings in Plaintiff's previously-filed matter in the United States District Court for the District of Kansas, *Charmaine Elven v. The Board of Commissioners of the County of Johnson*, Case No. 2:20-cv-02074-JAR-GEB, without converting this motion to one for summary judgment. *See Mashaney v. Board of Indigents' Defense Services*, 49 Kan. App. 2d 596, 610 (2013) ("[W]hen matters outside the face of the pleading are proper objects for judicial notice, a motion to dismiss need not be treated as a summary judgment motion."), *aff'd in part, rev'd in part on other grounds* 302 Kan. 625 (2015); *Landrith v. Summers*, 2015 WL 1784900 (Kan. Ct. App. April 10, 2015) (where plaintiff's claims implicated other court proceedings, affirming the district court's decision that "taking judicial notice of prior court proceedings did not require it to treat the motions as motions for summary judgment.").

8.      Also on May 15, 2020, Defendant County and the individual defendants filed a Motion to Dismiss the due process claims and the individual defendants from the federal action. (*See* Ex. 3 at Doc. 12).

9.      On July 22, 2020, the Court granted Defendants' Motion to Dismiss in its entirety, leaving only Plaintiff's retaliation claim against the County. (*See id.* at Doc. 27).

10.     On August 14, 2020, Plaintiff filed the instant Petition, asserting the same public policy retaliation claim Plaintiff asserted in the federal complaint, practically word-for-word. (*See* Petition).

11.     In Plaintiff's Petition, she alleges that "[o]n February 28, 2020, Plaintiff sent written notice of this claim to Defendant, substantially complying with the requirements of the Kansas Tort Claims Act." (*Id.* at ¶4). In short, Plaintiff now alleges in this court that the prior filing of the federal action constituted notice to Defendant for purposes of the KTCA.

12.     On August 18, 2020, Plaintiff filed a Motion to Dismiss her remaining claim in the federal matter without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). (*See* Ex. 3 at Doc. 29).

13.     On September 1, 2020, Defendant filed a Cross-Motion to Dismiss Plaintiff's remaining claim for lack of jurisdiction. (*See id.* at Doc. 32).

14.     On September 28, 2020, the District Court dismissed Plaintiff's remaining claim for lack of jurisdiction and closed Plaintiff's federal case. (*See id.* at Docs. 34-35; *see also* Ex. 4).

15.     On November 16, 2020, Plaintiff served Defendant with the Petition in this matter.

## II.   **LEGAL STANDARD**

In order to state a claim upon which relief may be granted, Plaintiff must provide a short and plain statement of the claim showing she is entitled to relief. Kan. Stat. Ann. § 60-208(a). Kansas appellate courts have made it clear that courts must accept well-pleaded factual allegations and reasonable inferences drawn therefrom, but should disregard legal conclusions. *See, e.g.,*

*Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.*, 26 P.3d 1284, 1286 (Kan. Ct. App. 2001) (holding that courts are not required to accept conclusory allegations on the legal effects of events the plaintiff has set out) (emphasis added); *Williams v. C-U-Out Bail Bonds, LLC*, 402 P.3d 558, 563 (Kan. Ct. App. 2017) ("nothing requires us to treat the legal conclusions contained within the petition as also being true ..."). A court's dismissal of a petition is proper when the allegations of the petition clearly demonstrate plaintiff does not have a claim. *Id.* (granting motion to dismiss where the underlying factual allegations did not state a claim).

Here, Plaintiff's allegations not only fail to set forth a claim upon which relief could be granted, they affirmatively establish that Plaintiff has no such claim.

## III.   LEGAL ANALYSIS

### A.   Plaintiff's Petition Demonstrates that Plaintiff Failed to Timely Serve Defendant with a Tort Claim Notice, and Thus Her Claim is Time-Barred.

To provide adequate notice of a tort claim against an entity such as the County, a person must "file written notice ... with the clerk or governing body of the municipality." Kan. Stat. Ann § 12-105b(d). The notice must contain the following information:

> (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.

*Id.*

Plaintiff has asserted a single claim in this matter: wrongful termination in violation of public policy. (Petition, Count I). Under Kan. Stat. Ann. § 60-513(a)(4), Plaintiff had two years from the date of her injury – here, the notice of her termination – to serve Defendant with notice

of her claim. *See Johnston v. Famers Alliance Mut. Ins. Co.*, 218 Kan. 543, 547-548 (1976) (finding that plaintiff's cause of action accrued upon notice of termination and not on the date through which he was paid); *Srivastava v. University of Kansas*, 2018 WL 1770325, at *10 (Kan. Ct. App. Apr. 13, 2018) (holding that the statute of limitations began to run when plaintiff received notice of his impending termination, rather than the denial of his administrative appeal).

Plaintiff alleges she received notice of her termination on February 22, 2018. (Petition, ¶¶82-91). Thus, Plaintiff's statute of limitations expired on February 22, 2020, two years later. Plaintiff's own pleading affirmatively states that she did not send "written notice" of her wrongful termination claim to Defendant until February 28, 2020 – after the statute of limitations on her claims expired. (Petition, ¶4).

Accordingly, Defendant respectfully requests that this Court dismiss Plaintiff's Petition in its entirety, because even viewing Plaintiff's own allegations in the light most favorable to her, and considering no evidence in addition to Plaintiff's pleading, her sole claim is barred by the two-year statute of limitations. Therefore, she has not stated and cannot state a claim upon which relief can be granted.

**B.    Plaintiff Fails to State a Claim Because She Failed to Serve Notice as Required by K.S.A. § 12-105b(d).**

As addressed above, the KTCA provides specific instructions for what constitutes "notice" under the statute, and how it should be filed. First and foremost, someone having a claim against a municipality such as the County "shall file a written notice as provided in this subsection *before commencing such action* ... with the clerk or governing body of the municipality." Kan. Stat. Ann § 12-105b(d) (emphasis added). The statute also provides the following: "Once notice of the claim is filed, *no action shall be commenced* until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of

the notice of claim, whichever occurs first." *Id.* (emphasis added). Thus, under the statute, "[n]o person may initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or in part." *Id.* After the municipality has denied the claim, the claimant must commence an action no more than "90 days from the date the claim is denied." *Id.*

Plaintiff filed no written notice of a claim. Instead, she initiated a federal action, in direct contravention of the statute, against the County. Her failure to comply with the statue deprives any court of jurisdiction over her claims. *See Morgan v. Bd. Of Cty. Commissioners of Cty. of Doniphan*, 406 P.3d 923 (Kan. Ct. App. 2017) (in state courts, "[s]ubject matter jurisdiction is vested by statute, and it establishes a court's authority to hear a particular type of action."); *see also Davenport v. Wal-Mart Stores, Inc.*, No. 14-cv-2124-JAR-JPO, 2014 WL 3361729, at * 1 (D. Kan. July 9, 2014) (Federal courts must have a statutory or constitutional basis to exercise jurisdiction). As such, neither this Court, nor any court, has jurisdiction over Plaintiff's retaliation claim against the County.

Now, aware of the deficiencies that resulted in the dismissal of her federal claim, Plaintiff retroactively attempts to style her federal complaint as "notice" to Defendant that substantially complies with Kan. Stat. Ann. § 12-105b(d). (Petition, ¶¶4-5). Thus, she asserts that Defendant's Answer in the federal action constitutes denial of her claim for purposes of the statute, granting her 90 days from the date of Defendant's denial to file a separate action (this state action) to pursue her claims. (Petition, ¶6).

The idea that one can improperly file an action against a municipality, with flagrant disregard for the plain language of Kan. Stat. Ann. § 12-105b(d), and then point to that action as substantial compliance with that same statute, is preposterous. The purpose of the statute is to

"afford a municipality an opportunity to review and investigate tort claims against it and to approve or deny such claims *before* having to litigate an action." *Cummings v. City of Lakin*, 276 Kan. 858, 863 (2003) (emphasis added). It is completely contrary to the statute to improperly file an action without notice in one court and then, in another court, point to that first improper action as the "notice" that cures any previous deficiencies.

Moreover, even if Plaintiff's claim was not time-barred, and even if she had filed appropriate notice with the County pursuant to the statute, Plaintiff's claim would still fail as she did not file her Petition within 90 days of the County's denial, as required. Defendant filed its Answer in the federal court on May 15, 2020. (*See* Ex. 3). Plaintiff did not file her Petition until August 14, 2020 – 91 days later.

Finally, even if Plaintiff's federal complaint did constitute "notice," it would still fail because it was improperly directed. "Failure to serve notice on the proper official resolves a tort claim filed against a municipality." *Farmers Bank & Trust v. Homestead Community Development*, 2020 WL 5849345, at *13 (Kan. Ct. App. Oct. 2, 2020) (holding that plaintiff did not comply with the notice requirements of the KTCA when it merely communicated its claim to the city attorney). The statute provides that such notice be filed with the clerk or governing body of the County. Plaintiff's complaint was sent to "The Board of County Commissioners of the County of Johnson, Penny Postoak Ferguson, County Manager," and specifically included the County Manager's address. (*See* Ex. 2). Thus, though Plaintiff included Defendant's name, it incorrectly addressed the "notice" to the County Manager. It strains credulity that the County Manager, upon receipt of a federal lawsuit, would interpret the same as "notice" for purposes of the Kansas Tort Claims Act.

As such, Plaintiff's Petition fails because she failed to provide the County with notice under Kan. Stat. Ann. § 12-105b(d) and then, after she received a "denial," failed to file an action within 90 days. Moreover, even if the Court were to construe Plaintiff's federal complaint as proper "notice" for the purposes of the statute, Plaintiff's claim remains untimely as set forth in Section II(B), *supra*.

## IV. CONCLUSION.

As discussed above, Plaintiff failed to file a notice under the Kansas Tort Claims Act, and her time has now expired to do so. Moreover, the federal complaint she now seeks to retroactively construe as notice fails not only because it is time-barred, but because it fails to meet the requirements of Kan. Stat. Ann. § 12-105b(d). Accordingly, Plaintiff's Petition should be dismissed with prejudice because she is barred from pursing her claim due to the statute of limitations, and because her failure to provide notice under the KTCA deprives this Court, and any court, of jurisdiction over her claim.

Respectfully submitted,

*/s/ Jeannie M. DeVeney*

Jeannie M. DeVeney, #17445
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEYS FOR DEFENDANT

*Clerk of the District Court, Johnson County Kansas*
*12/03/20 03:21pm ML*

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2020, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeannie M. DeVeney*
ATTORNEY FOR DEFENDANT

*Clerk of the District Court, Johnson County Kansas*
*12/03/20 03:21pm ML*

# EXHIBIT 1

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | REQUEST FOR JURY TRIAL |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW FLETCHER, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BETH JOHNSON, in her official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Serve: The Board of County | Serve: Matthew Fletcher | Serve: Beth Johnson |
| Commissioners of | 700 SW Jackson, Suite 1100 | 10501 Lackman Road |
| The County of Johnson: | Topeka, KS 66603 | Lenexa, KS 66219 |
| Penny Postoak Ferguson, | | |
| County Manager | | |
| 111 S Cherry Street, Suite 3300 | | |
| Olathe, KS 66061 | | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Charmaine Elven, and for her claims against the above-
named Defendants, alleges and states as follows:

1.    Plaintiff was at all times set forth below a resident of Kansas.

2.    Defendant The Board of County Commissioners of the County of
Johnson ("Defendant County") is a political subdivision (municipality) of the State of

Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3.      Defendant Matthew Fletcher was, at relevant times at issue in this lawsuit, the Deputy Director for Johnson County Developmental Supports of Defendant County.

4.      Defendant Beth Johnson was, at relevant times at issue in this lawsuit, the Director of Day and Employment Services for Johnson County Developmental Supports of Defendant County.

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Counts II-VI of Plaintiff's Complaint each arise under the laws of the United States, specifically 42 U.S.C. § 1983.

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count I of Plaintiff's Complaint, as that count is so related to the claims encompassed within the other Counts as to form one case or controversy.

## FACTS COMMON TO ALL COUNTS

7.      Plaintiff was hired by Defendant County in approximately April 2015.

8.      Plaintiff was employed as a Community Employment Specialist at the Johnson County Developmental Supports (JCDS).

9.      Plaintiff's job duties including serving as the Team Leader for Project SEARCH, which strives to offer education and vocational training to individual with intellectual and development disabilities.

10.     Plaintiff worked as a non-exempt employee, and was required to submit timecards showing hours Plaintiff had worked for each week.

11.     Plaintiff's supervisor, Kim Perry, the Team Leader for Day and Employment

Services, had to approve all time entries before Plaintiff would be compensated for that time.

12.     In Perry's absence, Defendant Johnson would approve all time entries—including overtime—before Plaintiff would be compensated for that time.

13.     Between April 2015 and January 2018, Plaintiff worked substantial overtime.

14.     At no time prior to January 31, 2018 did Perry, Defendant Johnson, or any employee of Defendant County ask Plaintiff about her overtime hours worked.

15.     Plaintiff would often use a laptop computer provided by Defendant County to complete tasks.

16.     Some of these tasks were completed at Plaintiff's home.

17.     In late 2017, Plaintiff began to notice several troubling issues at JCDS.

18.     In one instance, Plaintiff arrived for her shift to find a client pounding on the wall of his room in an attempt to get assistance.

19.     Plaintiff asked the night staff if something was wrong with the client.

20.     The staff remarked that, "I dunno, he's been doing that for over an hour."

21.     Plaintiff entered the client's room to find that the client had defecated and urinated on himself.

22.     The client was pounding the wall in an attempt to get someone's attention for assistance in cleaning himself.

23.     Plaintiff apologized to the client and helped him to get clean.

24.     Plaintiff reported the occurrence to Senior Direct Support Professional, as well as Melissa Athey and Chris Goff.

25.     To Plaintiff's knowledge, no investigation was under taken nor any corrective measures implemented to prevent similar occurrences.

26.     Plaintiff also complained that narcotic medications that were at the JCDS 54th Terrace location were not being properly stored, including a lack of any lock on the medications.

27.     Some narcotic medications ultimately came up missing at the 99th Terrace Home.

28.     Plaintiff reported the missing medications to her supervisors and the medical staff at JCDS.

29.     However, after Plaintiff's report, Plaintiff did not observe any changes in how the narcotic medications were stored or secured.

30.     On or about December 7, 2017, Plaintiff was working in the office at JCDS.

31.     The office had several medical files, which contained confidential medical and personal information of several clients of the JCDS.

32.     Some of this information is protected by the Health Insurance Portability and Accountability Act (HIPAA).

33.     During her shift, an unknown individual opened the door to the office.

34.     Plaintiff was startled, as the door was supposed to be locked to prevent unauthorized individuals from accessing the room, as well as the confidential information stored therein.

35.     Plaintiff examined the door, and found that it did not even have a functioning lock.

36.     Plaintiff also learned that court was being held in the same building as the

JCDS office.

37.    Several individuals reporting to court for criminal cases began knocking on the office door, with some opening the unlocked door.

38.    Plaintiff learned that, despite court being held in the building, no additional security was present.

39.    Plaintiff contacted Perry to report these incidents and request that a working lock be installed on the door to protect the confidential information, as well as the JCDS staff and clients.

40.    Plaintiff also noted that the door needed to be secured to protect the staff and clients of JCDS.

41.    Perry brushed off Plaintiff's complaints.

42.    Perry told Plaintiff, "I'm sure this will all blow over and get fixed eventually."

43.    Plaintiff was put off by this comment, as she did not want anything to "blow over"; Plaintiff wanted the issue corrected.

44.    Plaintiff again requested that Perry make these issues known.

45.    Perry again refused.

46.    On December 13, 2017, Plaintiff found that nothing had been done to address her complaints.

47.    Plaintiff decided she needed to report the issues to a higher authority.

48.    Plaintiff contacted Human Resources and described the occurrence, the potential issues, and the need for the lock.

49.    The Human Resources representative told Plaintiff the department would

follow up on this to make sure it was addressed.

50.     Approximately 10 minutes after Plaintiff's complaint to Human Resources, Plaintiff received a call from Perry.

51.     Perry immediately asked Plaintiff: "Why did you contact HR?"

52.     Plaintiff attempted to explain, but Perry talked over her.

53.     Perry told Plaintiff that Plaintiff should not go "over her head" again "or else."

54.     Perry told Plaintiff: "I have things under control."

55.     Plaintiff apologized to Perry about contacting Human Resources.

56.     Plaintiff explained that she did not realize Perry was working on something to address the issue.

57.     Perry snapped back: "I'm not."

58.     Plaintiff did not know what to say, and Perry ended the call.

59.     A few weeks later, Plaintiff was called into a meeting with Human Resources representative Teal Goeller and JCDS Director of Day and Employment Services, Defendant Johnson.

60.     In that meeting Plaintiff was told that her overtime usage was "excessive."

61.     Plaintiff pointed out that she had been working at JCDS for over three years, and substantial overtime was part of the job.

62.     Plaintiff also noted that her supervisor, Perry, had signed off on all of Plaintiff's timecards showing Plaintiff's overtime hours.

63.     Plaintiff further pointed out that the only other individual in the same position as Plaintiff, Jo Duncan, had been using FMLA leave during 2017, which had also

contributed to Plaintiff working additional hours.

64.     As Plaintiff attempted to explain the work she had been doing to justify the overtime worked, Goeller and Defendant Johnson continually interrupted Plaintiff and kept her from speaking.

65.     Plaintiff repeatedly told both Goeller and Defendant Johnson that she needed the laptop computer Defendant County had issued to her to indicate what she was doing on any given day.

66.     Plaintiff offered to allow Goeller or Defendant Johnson to operate the computer while Plaintiff instructed the operator where to locate the pertinent data, but was rebuffed.

67.     Plaintiff was never given the opportunity to access this documentation from her computer to prove she had been working for all claimed hours.

68.     In fact, Plaintiff would never be allowed to access her computer again before being discharged.

69.     The following day, Plaintiff was placed on administrative leave.

70.     When Plaintiff was informed of this, she asked if she should get an attorney.

71.     The Human Resources representative mocked Plaintiff for asking this question.

72.     The representative remarked "Why should you? You aren't in any trouble here."

73.     Plaintiff was only interviewed for approximately 10 minutes over the next three weeks as an investigation was conducted.

74.     In that brief interview, Plaintiff again directed Defendant County to her work

computer.

75.   Plaintiff noted that the computer contained all the relevant information to support Plaintiff's use of overtime.

76.   Defendant County, through its agents, including Defendant Johnson, again denied Plaintiff access to her computer.

77.   Goeller contacted Plaintiff to request that Plaintiff attend a "meeting" on February 22, 2018.

78.   Goeller told Plaintiff that Defendant County had some "follow up questions" for Plaintiff.

79.   Goeller did not inform Plaintiff that a decision would be made on this date.

80.   On February 22, 2018, Plaintiff arrived for the "meeting."

81.   However, Plaintiff found that six individuals, including JCDS Deputy Director Defendant Fletcher, Perry, and Goeller, were present.

82.   Shortly after Plaintiff entered the room, Defendant Fletcher told Plaintiff: "I intend to separate you from employment with JCDS; convince me otherwise."

83.   Plaintiff realized that this was not a "meeting" for follow-up questions, but a hearing upon which her employment status would be decided.

84.   Plaintiff had gotten no advanced warning of this fact.

85.   Plaintiff again, asked for access to her work computer.

86.   Plaintiff again, explained that the computer held documents and data that would prove her explanations regarding the use of overtime.

87.   Plaintiff was again denied access to this evidence by Defendant County, acting through Defendant Fletcher.

88.     Defendant Fletcher informed Plaintiff that Defendant County had advised the District Attorney for Johnson County, Kansas to pursue criminal charges against Plaintiff for theft.

89.     Defendant Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff.

90.     The memorandum had been written by Defendant Fletcher prior to hearing from Plaintiff on February 22, 2018.

91.     In the memorandum, it stated: "[Defendant County] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working."

92.     Despite signing off on Plaintiff's overtime, Perry was not discharged.

93.     In fact, Perry participated in Plaintiff's discharge.

94.     Defendant Johnson had signed off on some of Plaintiff's overtime as well.

95.     Despite this, Defendant Johnson was not discharged.

96.     Plaintiff did not have access to her computer, so knew she would not have the ability to properly defend herself upon an appeal of the decision.

97.     Plaintiff applied for unemployment benefits, but was denied when Defendant County alleged that Plaintiff had committed theft by inflating overtime hours.

98.     Plaintiff began working at another job following her discharge from employment by Defendant County.

99.     On January 2, 2019, the District Attorney for Johnson County, Kansas ("DA") filed a criminal charge of theft against Plaintiff.

100.    As a result of this charge, Plaintiff was terminated from her replacement

employment.

101.    Plaintiff was arrested on January 2, 2019, and forced to post bond for her release.

102.    Plaintiff retained legal counsel to represent her in the criminal case.

103.    In the criminal case, Plaintiff's legal counsel requested access to Plaintiff's work computer and all data/documents contained therein.

104.    Plaintiff has a constitutional right to this information, as it would exonerate her. *Brady v. Maryland*, 373 U.S. 83 (1963).

105.    Plaintiff's legal counsel contacted the DA, through the attorney prosecuting Plaintiff's criminal case, and informed the attorney that the work computer would be extremely important.

106.    The DA's office sent an investigator, Jason Novotny, to review the computer's contents.

107.    However, it was discovered that the computer was believed to have been completely wiped.

108.    Plaintiff's legal counsel then subpoenaed Defendant County for access to the computer.

109.    Defendant County, though its IT department, stated that the computer had been reissued to another employee and that the computer had not been examined forensically in any way prior to being wiped.

110.    Defendant County, though its IT department, suggested that most of the data was saved to an external server owned by Defendant County.

111.    Novotny interviewed Mike Epperson, the Information Security and

Resilience Manager for Defendant County.

112.   Epperson stated that Defendant County's retention policy was for six months after an employee's discharge.

113.   Epperson stated that the computer had been "disabled" on March 19, 2018, well before the six month period.

114.   Further, no hold was placed on the data held by the computer.

115.   Plaintiff's legal counsel then subpoenaed Defendant County for access to the saved data from the server.

116.   Defendant County, through its legal counsel, stated *that none of the records from Plaintiff's computer could be located on the server*.

117.   Upon information and belief, this data was never saved to the server, but instead deleted well ahead of Defendant County's record retention policy.

118.   Additionally, many of the documents identified in the discharge report written by Defendant Fletcher have been identified as "un-locatable" by the DA's office.

119.   All actions or inactions of or by Defendant County occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT 1 - RETALIATION IN VIOLATION OF PUBLIC POLICY
### Against Defendant County

120.   Plaintiff made good-faith complaints to management members of Defendant County about the following concerns:

a.   Neglect of residents who depended on staff of JCDS for support, in violation of the Adult Care Home Licensure Act (K.S.A. § 39-923) and civil rights of the

residents;

b.   Unsafe and unsecured storage of narcotic medications, in violation of the Controlled Substances Act (21 U.S.C., ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

c.   Missing narcotic medications, in violation of the Controlled Substances Act (21 U.S.C. ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

d.   Unsafe working conditions due to lack of locks on doors, in violation of the Occupational Safety and Health Act (29 U.S.C., ch. 15); and

e.   Inadequate protections for personal information protected by HIPAA, in violation of HIPAA and Health Information Technology for Economic and Clinical Health Act.

121.   The above laws each pertain to public health, safety, and the general welfare of the citizens of Kansas.

122.   Plaintiff made each of the above reports to supervisory employees of Defendant County, including Plaintiff's direct supervisor.

123.   When Plaintiff's direct supervisor failed to act on Plaintiff's complaint, Plaintiff went to a higher internal authority.

124.   Defendant County took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, and opposing Plaintiff receiving unemployment benefits.

125.   Defendant County's adverse employment actions taken against Plaintiff were

each based upon, and directly related to, Plaintiff's complaints.

126.    Defendant County's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts, the Kansas Legislature, and Congress.

127.    As a direct and proximate result of Defendant County's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, loss of subsequent employment, and will continue to suffer the same unless and until this Court grants relief.

128.    Defendant County acted toward Plaintiff with willful conduct, wanton conduct, or malice.

129.    Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT II - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
### FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant County

130.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

131.    Defendant Fletcher and Defendant Johnson were each involved in gathering information that was used to convince the District Attorney (DA) to pursue criminal charges against Plaintiff.

132.    Particularly, Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

133.   Defendant County, Defendant Fletcher, and Defendant Johnson all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

134.   Plaintiff directly told Defendant Fletcher and Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during overtime hours.

135.   Despite this knowledge, Defendant County, Defendant Fletcher, and Defendant Johnson each did nothing to preserve the data contained on the computer.

136.   Instead, Defendant County, Defendant Fletcher, and Defendant Johnson allowed for the data to be completely destroyed while the computer was under their collective control.

137.   Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of former employees of Defendant County.

138.   However, this policy was not followed, and the data was erased well before the dictated amount of time.

139.   Defendant Fletcher had been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

140.   Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

141.   Defendant County, Defendant Fletcher, and Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely

located on the computer.

142.   Further, Defendant County, Defendant Fletcher, and Defendant Johnson indentified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

143.   Defendant County did not retain these documents, despite requesting that criminal charges be brought against Plaintiff.

144.   This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County, Defendant Fletcher, and Defendant Johnson.

145.   As a result of the destruction of evidence, Plaintiff's rights to Due Process of Law guaranteed by the Fifth and Fourteenth Amendments have been violated.

146.   Plaintiff has suffered injury due to this deprivation, in the form of increased legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

147.   Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County, Defendant Fletcher, and Defendant Johnson in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT III - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
## FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Johnson

148.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

149.    Defendant Johnson was involved in gathering information that was used to convince the District Attorney (DA) to pursue criminal charges against Plaintiff.

150.    Particularly, Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

151.    Defendant Johnson had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

152.    Plaintiff directly told Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during overtime hours.

153.    Despite this knowledge, Defendant Johnson did nothing to preserve the data contained on the computer.

154.    Instead, Defendant Johnson allowed for the data to be completely destroyed while under her control.

155.    Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff believed the data imperative to defend herself from false allegations of theft via overtime fraud was solely on the computer.

156.    This deliberate destruction of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County, Defendant Fletcher, and Defendant Johnson.

157.    As a result of the destruction of evidence, Plaintiff's rights to Due Process of

Law guaranteed by the Fifth and Fourteenth Amendments have been violated.

158.    Defendant Johnson took these actions under color of state law, which she possessed by virtue of her position with Defendant County.

159.    Plaintiff has suffered injury due to this deprivation, in the form of increased legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

160.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Johnson in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
### FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Fletcher

161.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

162.    Defendant Fletcher was involved in gathering information that was used to convince the District Attorney (DA) to pursue criminal charges against Plaintiff.

163.    Particularly, Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

164.    Defendant County, Defendant Fletcher, and Defendant Johnson all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

165.   Plaintiff directly told Defendant Fletcher that the computer contained information that would prove what tasks Plaintiff was performing during overtime hours.

166.   Despite this knowledge, Defendant Fletcher did nothing to preserve the data contained on the computer.

167.   Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

168.   Instead, Defendant Fletcher allowed for the data to be completely destroyed.

169.   Defendant Fletcher took intentional actions and/or omissions while knowing that Plaintiff believed the data imperative to defend herself from false allegations of theft via overtime fraud was solely on the computer.

170.   Further, Defendant Fletcher indentified documents in the report he wrote to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

171.   Defendant County did not retain these documents, despite requesting that criminal charges be brought against Plaintiff.

172.   This deliberate destruction of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County, Defendant Fletcher, and Defendant Johnson.

173.   As a result of the destruction of evidence, Plaintiff's rights to Due Process of Law guaranteed by the Fifth and Fourteenth Amendments have been violated.

174.   Defendant Fletcher took these actions under color of state law, which he possessed by virtue of his position with Defendant County.

175.   Plaintiff has suffered injury due to this deprivation, in the form of increased

legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

176.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Fletcher in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT V - VIOLATION OF LIBERTY INTEREST VIA STIGMATIZATION FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant County

177.    Defendant County discharged Plaintiff from employment.

178.    The reason used to justify Plaintiff's discharge was an unfounded charge of dishonesty, in the form of allegations of criminal theft via overtime fraud.

179.    Defendant County, through Defendant Fletcher, publicly disclosed these allegations by requesting that criminal charges be filed.

180.    Such allegations were disclosed publicly with case no. 19CR00022, *State of Kansas v. Charmaine Elise Elven*.

181.    Such allegations were also publicized to the Kansas Department of Labor.

182.    These allegations of theft are false.

183.    These allegations are the type that may seriously damage Plaintiff's standing and associations in her community, thereby foreclosing Plaintiff's freedom to take advantage of future employment opportunities.

184.    Plaintiff was discharged as a direct result of her new employer learning of

these criminal charges.

185.    Plaintiff has suffered injury due to this deprivation of rights, in the form of legal fees, lost wages, emotional distress, and deprivation of these rights.

186.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT VI - VIOLATION OF LIBERTY INTEREST
### VIA STIGMATIZATION
### FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Fletcher

187.    Defendant County discharged Plaintiff from employment.

188.    The reason used to justify Plaintiff's discharge was an unfounded charge of dishonesty, in the form of allegations of criminal theft via overtime fraud.

189.    Defendant Fletcher publicly disclosed these allegations by requesting that criminal charges be filed.

190.    Such allegations were disclosed publicly with case no. 19CR00022, *State of Kansas v. Charmaine Elise Elven.*

191.    Such allegations were also publicized to the Kansas Department of Labor.

192.    These allegations of theft are false.

193.    These allegations are the type that may seriously damage Plaintiff's standing and associations in her community, thereby foreclosing Plaintiff's freedom to take advantage of future employment opportunities.

194.    Plaintiff was discharged as a direct result of her new employer learning of these criminal charges.

195.    Plaintiff has suffered injury due to this deprivation of rights, in the form of legal fees, lost wages, emotional distress, and deprivation of these rights.

196.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Fletcher in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas, to be held at the Robert J. Dole Federal Courthouse in Kansas City, Kansas, on all accounts and allegations of wrongful conduct alleged in this Complaint.

Dated: February 21, 2020                    Respectfully submitted,

/s/ Daniel L. Doyle
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 371-1930, ext. 109
Facsimile:  (913) 371-0147
d.doyle@ddoylclaw.com
r.bruce@ddoylclaw.com
ATTORNEYS FOR PLAINTIFF

# EXHIBIT 2

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  2:20-cv-02074

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* The Board of County Commissioners of the
was received by me on *(date)*  3-7-2020  .  County of Johnson

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☒ Other *(specify):* Sent via US Mail-Certified Mail-Return Receipt Requested
(see attached receipt)

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date:  3-9-2020

Benwen Hicks
*Server's signature*

Benwen Hicks
*Printed name and title*

748 Ann Ave., KCKS 66101
*Server's address*

Additional information regarding attempted service, etc:

**USPS TRACKING #**



9590 9402 4473 8248 1544 22

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Daniel L. Doyle
Doyle & Associates LLC
748 Ann Avenue
Kansas City, KS   66101

Elven, Charmaine -CM of Summons and Petition on

The Board of County Commissioners

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Board of County Commissioners
of the County of Johnson
Penny Postoak Ferguson, County Manager
111 S. Cherry Street, Ste. 3300
Olathe, KS   66061



9590 9402 4473 8248 1544 22

2. Article Number (Transfer from service label)

7013 0600 0002 0493 4634

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Lana Hites_     ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Lana Hites                       3-2-2020

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

58

# EXHIBIT 3

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

# U.S. District Court
## DISTRICT OF KANSAS (Kansas City)
## CIVIL DOCKET FOR CASE #: 2:20-cv-02074-JAR-GEB

Elven v. Johnson County, Kansas, Board of Commissioners et al
Assigned to: Chief District Judge Julie A. Robinson
Referred to: Magistrate Judge Gwynne E. Birzer
Demand: $75,000
Cause: 42:1983 Civil Rights Act

Date Filed: 02/21/2020
Date Terminated: 09/28/2020
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Charmaine Elven**                      represented by   **Robert A. Bruce**
                                                          Doyle & Associates LLC
                                                          748 Ann Avenue
                                                          Kansas City, KS 66101
                                                          913-379-1083
                                                          Fax: 913-371-0147
                                                          Email: r.bruce@ddoylelaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Daniel L. Doyle**
                                                          Doyle & Associates, LLC
                                                          748 Ann Avenue
                                                          Kansas City, KS 66101
                                                          913-379-1084
                                                          Fax: 913-371-0147
                                                          Email: d.doyle@ddoylelaw.com
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Johnson County, Kansas, Board of**      represented by   **Bonnie Birdsell**
**Commissioners**                                          Littler Mendelson, PC - Kansas City
                                                          1201 Walnut Street, Suite 1450
                                                          Kansas City, MO 64106
                                                          816-627-4412
                                                          Email: bbirdsell@littler.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jeannie DeVeney**
                                                          Littler Mendelson, PC - Kansas City
                                                          1201 Walnut Street, Suite 1450
                                                          Kansas City, MO 64106
                                                          816-627-4405

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*
                                                          Email: jdeveney@littler.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Matthew Fletcher**
*in his official and individual capacities*

represented by **Bonnie Birdsell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeannie DeVeney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Beth Johnson**
*in her official and individual capacities*

represented by **Bonnie Birdsell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeannie DeVeney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/21/2020 | 1 | COMPLAINT with trial location of Kansas City ( Filing fee $400, Internet Payment Receipt Number AKSDC-5068574.), filed by Charmaine Elven.(Doyle, Daniel) (Entered: 02/21/2020) |
| 02/21/2020 | 2 | CIVIL COVER SHEET by Plaintiff Charmaine Elven. (Attachments: # 1 Civil Cover Sheet)(Doyle, Daniel) (Entered: 02/21/2020) |
| 02/21/2020 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to Chief District Judge Julie A. Robinson and Magistrate Judge Gwynne E. Birzer for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ca) (Entered: 02/21/2020) |
| 02/27/2020 | | SUMMONS ISSUED as to Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners. (issued to Attorney for service) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (ca) (Entered: 02/27/2020) |
| 03/09/2020 | 3 | RETURN OF SERVICE of The Board of County Commissioners of the County of Johnson filed by Plaintiff Charmaine Elven (Doyle, Daniel) (Entered: 03/09/2020) |
| 03/09/2020 | 4 | RETURN OF SERVICE of Matthew Fletcher filed by Plaintiff Charmaine Elven (Doyle, Daniel) (Entered: 03/09/2020) |
| 03/09/2020 | 5 | RETURN OF SERVICE of Beth Johnson filed by Plaintiff Charmaine Elven (Doyle, Daniel) (Entered: 03/09/2020) |
| 03/13/2020 | 6 | CLERKS ORDER EXTENDING TIME until 4/8/2020 for Defendants Beth Johnson, Matthew Fletcher, Johnson County, Kansas, Board of Commissioners to answer or otherwise plead. Signed by deputy clerk on 3/13/2020. (ca) (Entered: 03/13/2020) |

Clerk of the District Court, Johnson County Kansas
12/02/2020 03:02pm ML

| 03/26/2020 | 7 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint (attorney) by Defendants Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners (referred to Magistrate Judge Gwynne E. Birzer) (DeVeney, Jeannie) (Entered: 03/26/2020) |
| --- | --- | --- |
| 03/30/2020 | 8 | ORDER granting 7 Defendants' Unopposed Motion for Extension of Time to Answer. Defendants shall answer or otherwise respond to Plaintiff's Complaint on or before 5/8/2020. Signed by Magistrate Judge Gwynne E. Birzer on 3/30/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 03/30/2020) |
| 05/01/2020 | 9 | Unopposed MOTION for Extension of Time to File Answer by Defendants Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners (referred to Magistrate Judge Gwynne E. Birzer) (DeVeney, Jeannie) (Entered: 05/01/2020) |
| 05/04/2020 | 10 | ORDER granting 9 Defendants' Unopposed Motion for Extension of Time to Answer. Defendants are granted an extension of time, to and including May 15, 2020, to answer or otherwise respond to Plaintiff's Complaint. Signed by Magistrate Judge Gwynne E. Birzer on 5/4/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 05/04/2020) |
| 05/04/2020 | 11 | ENTRY OF APPEARANCE by Bonnie Birdsell on behalf of All Defendants (Birdsell, Bonnie) (Entered: 05/04/2020) |
| 05/15/2020 | 12 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners (DeVeney, Jeannie) (Entered: 05/15/2020) |
| 05/15/2020 | 13 | MEMORANDUM IN SUPPORT of 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners (Attachments: # 1 Exhibit A, # 2 Exhibit B)(DeVeney, Jeannie) (Entered: 05/15/2020) |
| 05/15/2020 | 14 | ANSWER to Complaint by Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners.(DeVeney, Jeannie) (Entered: 05/15/2020) |
| 05/15/2020 | 15 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 6/12/2020 at 10:00 AM by Telephone before Magistrate Judge Gwynne E. Birzer. Participants must call the CONFERENCE LINE at 1-888-363-4749 using ACCESS CODE 9686294. Counsel should fully confer prior to the conference, and be prepared to discuss potential scheduling concerns in light of the motion to dismiss (ECF No. 12). (adc) (Entered: 05/15/2020) |
| 06/02/2020 | 16 | Unopposed MOTION for Extension of Time to File Response as to 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 13 Memorandum in Support of Motion, by Plaintiff Charmaine Elven (Bruce, Robert) (Entered: 06/02/2020) |
| 06/02/2020 |  | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 16 Unopposed MOTION for Extension of Time to File Response as to 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 13 Memorandum in Support of Motion, . The motion will be resolved by the District Judge.**(adc) (Entered: 06/02/2020) |
| 06/02/2020 | 17 | ORDER granting as unopposed 16 Motion for Extension of Time to File Response re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. The response deadline is extended to 6/15/2020. Signed by Chief District Judge Julie A. Robinson on 6/2/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 06/02/2020) |

*12/03/20 03:21pm ML*

| 06/12/2020 | 18 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 6/12/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (adc) (Entered: 06/12/2020) |
|---|---|---|
| 06/15/2020 | 19 | MEMORANDUM IN OPPOSITION by Plaintiff Charmaine Elven re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Bruce, Robert) (Entered: 06/15/2020) |
| 06/16/2020 | 20 | ORDER. On 6/12/20 the Court held a status conference. Plaintiff Charmaine Elven appeared through counsel, Robert Bruce. All Defendants appeared through counsel, Bonnie Birdsell. After discussion with counsel, the Court enters the following orders: Plaintiff and Defendant Johnson County Board of Commissioners must exchange their Rule 26(a)(1) disclosures no later than 7/17/20. All other scheduling is stayed pending resolution of the pending dispositive motion, ECF No. 12. In the event this matter survives the motion to dismiss, the Court will promptly set this matter for scheduling conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 6/16/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 06/16/2020) |
| 06/24/2020 | 21 | Unopposed MOTION for Extension of Time to File Reply as to 19 Memorandum in Opposition to Motion by Defendants Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners (referred to Magistrate Judge Gwynne E. Birzer) (DeVeney, Jeannie) (Entered: 06/24/2020) |
| 06/25/2020 | 22 | ORDER granting as unopposed 21 Motion for Extension of Time to File Reply re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. The reply deadline is extended to 7/6/2020. Signed by Chief District Judge Julie A. Robinson on 6/25/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 06/25/2020) |
| 07/06/2020 | 23 | REPLY TO RESPONSE TO MOTION re 12 Motion to Dismiss for Failure to State a Claim by Defendants Matthew Fletcher, Beth Johnson, Johnson County, Kansas, Board of Commissioners. (DeVeney, Jeannie) Modified on 7/13/2020 to correct title/event and add docket entry relationship . (smc) (Entered: 07/06/2020) |
| 07/13/2020 | 24 | NOTICE OF INTENT TO ISSUE SUBPOENA by Johnson County, Kansas, Board of Commissioners Subpoena to be issued to: Alex Scott, Assistant District Attorney (Attachments: # 1 Subpoena)(DeVeney, Jeannie) (Entered: 07/13/2020) |
| 07/16/2020 | 25 | CERTIFICATE OF SERVICE of Rule 26 Initial Disclosures and Documents by Charmaine Elven. (Bruce, Robert) (Entered: 07/16/2020) |
| 07/17/2020 | 26 | CERTIFICATE OF SERVICE of Defendant's Rule 26 Initial Disclosures and Document Production by Johnson County, Kansas, Board of Commissioners (DeVeney, Jeannie) (Entered: 07/17/2020) |
| 07/22/2020 | 27 | MEMORANDUM AND ORDER granting 12 Motion to Dismiss. Counts II-IV are dismissed without prejudice; Counts V and VI are dismissed with prejudice. Signed by Chief District Judge Julie A. Robinson on 7/22/2020. (hео) (Entered: 07/22/2020) |
| 07/24/2020 | 28 | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Scheduling Conference set for 9/10/2020 at 11:00 AM by telephone before Magistrate Judge Gwynne E. Birzer. Participants shall dial into the conference call at 888-363-4749, enter access code 9686294#, and follow the prompts to join the call. Report of Parties Planning Conference and Rule 26 Initial Disclosures due 9/3/2020. Signed by Magistrate Judge Gwynne E. Birzer on 7/24/2020. (ala) (Entered: 07/24/2020) |
| 08/18/2020 | 29 | MOTION to Dismiss *Pursuant to Rule 41(a)(2)* by Plaintiff Charmaine Elven (Bruce, Robert) (Entered: 08/18/2020) |

*Received Charmaine Elven from Bruce,*
*12/03/20 03:21pm ML*

| 08/18/2020 | 30 | MEMORANDUM IN SUPPORT of 29 MOTION to Dismiss *Pursuant to Rule 41(a)(2)* by Plaintiff Charmaine Elven(Bruce, Robert) (Entered: 08/18/2020) |
|---|---|---|
| 08/24/2020 | 31 | ORDER. In light of the 29 MOTION to Dismiss *Pursuant to Rule 41(a)(2)* filed by Plaintiff Charmaine Elven now pending before Chief District Judge Julie A. Robinson, the Scheduling Conference set for 9/10/2020 and related deadlines are cancelled. If the case proceeds after decision on Plaintiff's motion, the undersigned will promptly convene the parties as necessary. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 8/24/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(adc) (Entered: 08/24/2020) |
| 09/01/2020 | 32 | CROSS-MOTION to Dismiss With Prejudice and MEMORANDUM IN OPPOSITION by Defendant Johnson County, Kansas, Board of Commissioners re 29 MOTION to Dismiss *Pursuant to Rule 41(a)(2)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(DeVeney, Jeannie) Modified on 9/4/2020 to make a two entry of cross motion and response(smc). (Entered: 09/01/2020) |
| 09/15/2020 | 33 | REPLY TO RESPONSE TO MOTION by Plaintiff Charmaine Elven re: 29 Motion to Dismiss *Pursuant to Rule 41(a)(2)* (Bruce, Robert) (Entered: 09/15/2020) |
| 09/28/2020 | 34 | MEMORANDUM AND ORDER granting 29 Motion to Dismiss Pursuant to Rule 41(a) (2); denying 32 Cross-Motion to Dismiss with Prejudice. Signed by Chief District Judge Julie A. Robinson on 9/28/2020. (heo) (Entered: 09/28/2020) |
| 09/28/2020 | 35 | JUDGMENT. Signed by deputy clerk on 9/28/2020. (heo) (Entered: 09/28/2020) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/02/2020 15:56:41 | | |
| **PACER Login:** | jdeveney | **Client Code:** | 062484.1022 |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-02074-JAR-GEB |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

*Clerk of the District Court, Johnson County Kansas*
*12/03/20 03:21pm ML*

# EXHIBIT 4

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CHARMAINE ELVEN,

      **Plaintiff,**

      **v.**

THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF
JOHNSON, MATTHEW FLETCHER, and
BETH JOHNSON,

      **Defendants.**

Case No. 20-2074-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Charmaine Elven filed this action alleging claims against her former employer,

the Board of County Commissioners for the County of Johnson ("the County"), and County

employees Matthew Fletcher and Beth Johnson, arising out of the termination of her

employment.  Plaintiff alleged federal claims under 42 U.S.C. § 1983 against all Defendants, and

a state law claim for retaliation in violation of public policy against the County.  The Court

previously granted Defendants' motion to dismiss Plaintiff's federal claims.  Before the Court

are Plaintiff's Motion to Dismiss Pursuant to Rule 41(a)(2) (Doc. 29) her remaining state law

claim for retaliation in violation of public policy, and the County's Cross-Motion to Dismiss

with Prejudice (Doc. 32).  The motions are fully briefed and the Court is prepared to rule.  For the

reasons described more fully below, the Court grants Plaintiff's motion to dismiss the remaining

claim without prejudice and denies Defendant's motion to dismiss with prejudice.

## I.    Background

Plaintiff's Complaint raises a state law claim for retaliation in violation of public policy

against the County in Count I, asserting supplemental jurisdiction under 28 U.S.C. § 1367.  She

*Clerk of the District Court, Johnson County Kansas*
*12/03/20   03:21pm ML*

also raised five federal claims under 42 U.S.C. § 1983 that the Court recently dismissed in a July 22, 2020 Memorandum and Order.[1]   Plaintiff now moves to dismiss Count I under Fed. R. Civ. P. 41(a)(2) based on a "potential jurisdictional issue regarding notice pursuant to the Kansas Tort Claims Act ["KTCA"]."[2]   On August 14, 2020, Plaintiff filed a petition in the District Court of Johnson County, Kansas, asserting the same retaliation claim alleged in Count I in this case.[3] The state court petition alleges that this federal action constitutes notice under the KTCA.

The County responds and also moves for dismissal.   It contends that the state law claim should be dismissed with prejudice because Plaintiff's lack of timely written notice under the KTCA bars any court from exercising jurisdiction over the claim.   Alternatively, the County argues that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) since the federal claims have been dismissed.

## II.    Standards

Because both parties seek dismissal on the basis of subject matter jurisdiction, the Court is mindful of the standard that applies to this type of dismissal, irrespective of whether the motion invokes Rule 41(a)(2).   "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is

---

[1] Doc. 27.

[2] Doc. 30 at 3.

[3] The Court takes judicial notice of the Petition in the Johnson County case, attached to the County's response. Doc. 32-2; *see* Fed. R. Evid. 201.

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

lacking."[4]  The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon

the party asserting jurisdiction."[5]  Mere conclusory allegations of jurisdiction are not enough.[6]

Tenth Circuit law is clear that when a district court dismisses upon finding a lack of

jurisdiction, the dismissal must be without prejudice.[7]  Moreover, a dismissal under Rule

41(a)(2) allows the Court to dismiss an action without prejudice "upon such terms and conditions

as the court deems proper."  "The rule is designed primarily to prevent voluntary dismissals

which unfairly affect the other side, and to permit the imposition of curative conditions."[8]

Absent a showing of prejudice, the Court should normally grant a plaintiff's request for dismissal

without prejudice.[9]

## III.   Discussion

The County argues that Plaintiff has not complied with the notice requirements of K.S.A.

§ 12-105b(d), which require a person having a claim under the KTCA to file written notice with

the clerk of the governing body of the municipality before filing suit.  Compliance with this

provision "is required before a court has subject matter jurisdiction over a tort claim against a

municipality."[10]  The County further argues that Plaintiff's state court case suffers from the same

jurisdictional flaw.  In the alternative, the County argues that Plaintiff's state court claim is

---

[4] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[5] *Id.* (citation omitted).

[6] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[7] *See, e.g., Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice.").

[88] *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (quoting *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996)).

[9] *Id.* (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).

[10] *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1206 (D. Kan. 2018) (quoting *Whaley v. Sharp*, 343 P.3d 63, 67 (2014)).

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

untimely to the extent that she relies on the pleadings in this case as notice of her claim. Essentially, the County argues that this Court should dismiss Plaintiff's claim with prejudice because not only does this Court lack jurisdiction, but *any* court lacks subject matter jurisdiction over the action. Of course, this Court should not rule on a jurisdictional question squarely before the state court in a separate case. The limited question before this Court is whether this Court has jurisdiction over the remaining state law claim in this case.

The Court need not resolve the issue of KTCA notice. Because the Court granted Defendants' motion to dismiss Plaintiff's federal claims, it must decide whether to exercise supplemental jurisdiction over the remaining state-law claim. Whether to exercise supplemental jurisdiction is committed to the Court's sound discretion.[11]  28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"[12] Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[13] "When 'the parties have already expended a great deal of time and energy on the state law claims,' it is appropriate for the 'district court to retain supplement[al] state claims after dismissing all federal questions.'"[14] "If, however, the parties have not shown they have spent a great deal of time on the state law claims, the 'district court should normally dismiss supplemental state law claims

---

[11] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[12] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cty. Commr's*, 365 F.3d 855 (10th Cir. 2004).

[13] *Ball v. Renneri*, 54 F.3d 664, 669 (10th Cir. 1995).

[14] *Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

after all federal claims are dismissed.'"[15]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[16]  The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[17]

The supplemental jurisdiction analysis is straightforward here.  The parties have not spent a great deal of time on the state law claims and Plaintiff has already refiled in state court. Notions of comity and federalism dictate that the state court should decide the issues of sufficiency and timeliness of Plaintiff's notice of claim under K.S.A. § 12-105b(d) in that separate action.  Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claim.  Because dismissal is granted on jurisdictional grounds, it is without prejudice.

Dismissal without prejudice under Rule 41(a)(2) is also warranted because the County has not demonstrated prejudice.  The fact that another action has been filed in state court is not sufficient to demonstrate prejudice.[18]  The County will have a full and fair opportunity to contest the sufficiency and timeliness of Plaintiff's notice of claim in that matter.  Therefore, dismissal without prejudice is proper under Rule 41(a)(2).

In sum, dismissal without prejudice is appropriate because the dismissal is on jurisdictional grounds, and because it is warranted under Rule 41(a)(2).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Dismiss Pursuant to Rule 41(a)(2) (Doc. 29) is **granted**, and the County's Cross-Motion to Dismiss with Prejudice (Doc. 32) is **denied**.

---

[15] *Id.*

[16] *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[17] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

[18] *See Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (citing *Am. Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991)).

*Clerk of the District Court, Johnson County Kansas*
*12/03/20  03:21pm ML*

**IT IS SO ORDERED.**

Dated: September 28, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20CV03451 |
| v. | ) | Division No.: 4 |
| | ) | Chapter No.: 60 |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Plaintiff Charmaine Elven and provides the following Suggestions in Opposition to Defendant's Motion to Dismiss:

## I.    INTRODUCTION

Within the statutory period imposed by Section 60-513 Defendant had notice of Plaintiff's claims as required by the Kansas Tort Claims Act. Admittedly, that notice did not take the form one might expect, but the form that it did take—a premature lawsuit—has been recognized as sufficient to substantially comply with Section 12-105b by the Court of Appeals. *See Debbrecht v. City of Haysville*, cited and examined in detail *infra* Section IV.A.i. Form should not rule over substance in determining whether substantial compliance has been achieved—just it did not in the previous decision by the Court of Appeals. Plaintiff's notice was timely, as Plaintiff's wrongful discharge claim accrued on March 1, 2018—the first date upon which Plaintiff's discharge claim would have been ripe and capable of prosecution to a successful conclusion. Even if the Court disagrees as to the discharge, Plaintiff's other alleged adverse actions are undisputed timely.

## II.  FACTUAL BACKGROUND

Plaintiff worked as a Community Employment Specialist for Defendant. (Pet. at ¶¶ 10-11). Between April 2015 and January 2018, Plaintiff worked substantial overtime. (Pet. at ¶ 15). Plaintiff's supervisors had to sign off showing approval of Plaintiff's hours worked. (Pet. at ¶¶ 11-14). At no time prior to January 31, 2018 did any supervisor question Plaintiff's submitted time. (Pet. at ¶ 16). In late 2017, Plaintiff made several complaints regarding various issues pertaining to the public health, safety, and general welfare of citizens of the state of Kansas. (Pet. at ¶¶ 19-42; 48-51; 125-128). In January 2018, Plaintiff was told by Defendant that Plaintiff's use of overtime was being investigated. (Pet. at ¶¶ 61-62).

### A. The Investigation and Denial of Evidence

In the initial meeting of January 31, 2018 when Plaintiff was told of the investigation of her overtime usage, Plaintiff informed Defendant that information on Plaintiff's work-issued laptop would show that Plaintiff had worked all hours for which she was paid. (Pet. at ¶ 67). Defendant repeatedly denied Plaintiff access to the computer. (Pet. at ¶¶ 69, 78, 89). Plaintiff would never be allowed access to her computer again. (Pet. at ¶ 70).

The next day, Plaintiff was placed on administrative leave pending an investigation. (Pet. at ¶ 71). When informed of her leave, Plaintiff asked if she should get an attorney, and was mocked by the representative of Defendant, who stated: "Why should you? You aren't in any trouble here." (Pet. at ¶¶ 72-74). During the investigation, Plaintiff was interviewed a second time. (Pet. at ¶ 75). This interview lasted approximately 10 minutes. (Pet. at ¶ 75). During this interview, Plaintiff again told the representatives of Defendant that Plaintiff required access to her laptop to show that she had been working and exactly what she had done. (Pet. at ¶¶ 76-77). This request was denied again. (Pet. at ¶ 78).

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

Plaintiff was told to report to a meeting on February 22, 2018. (Pet. at ¶ 79). Plaintiff was told the meeting was because Defendant had some "follow up questions" for Plaintiff. (Pet. at ¶ 80). When Plaintiff arrived she was told: "I intend to separate you from employment with [Defendant]; convince me otherwise." (Pet. at ¶ 84). Plaintiff again explained that she needed access to her work computer and the documents it held. (Pet. at ¶¶ 87-89). Defendant Fletcher denied Plaintiff's request for the computer. (Pet. at ¶ 89). Defendant Fletcher told Plaintiff that Defendant County would be requesting that the District Attorney for Johnson County pursue criminal charges against Plaintiff. (Pet. at ¶ 90). Defendant Fletcher handed Plaintiff a memorandum which memorialized what had been said. (Pet. at ¶¶ 91-93). Plaintiff's discharge was not effective until March 1, 2018—five business days after the meeting. (Pet. at ¶ 98). Plaintiff had five days to consider whether she wanted to pursue a review of the decision prior to her formal discharge. (Pet. at ¶¶ 98-99). After considering her options, and still not having access to the documents on her computer, Plaintiff did not pursue any further review and the decision became effective on March 1, 2018. (Pet. at ¶ 98-100).

### B. Destruction of the Evidence

Defendant County's retention policy for information on a work-issued laptop is six months from date of discharge. (Pet. at ¶ 116). Plaintiff's computer had been disabled on March 19, 2018—less than a month after her discharge. (Pet. at ¶¶ 100, 117). No employee of Defendant placed a hold on the data contained on the computer. (Pet. at ¶ 118). Ultimately, the data on the computer has been lost forever. (Pet. at ¶ 120-21). These files were not saved despite Defendant's intention to pursue criminal charges. (Pet. at ¶ 123).

## C. Criminal Charges Pursued Despite Destroyed Evidence

Following the erasure of the data on Plaintiff's computer on March 19, 2018, criminal charges were filed by the District Attorney on January 2, 2019. (Pet. at ¶¶ 103, 117). Plaintiff was discharged from her new employment following this. (Pet. at ¶ 104). The contents of the computer were requested from the District Attorney by Plaintiff's retained legal counsel. (Pet. at ¶ 107). The District Attorney found that the computer's contents had been wiped. (Pet. at ¶¶ 110-11). The computer had not been forensically examined in any way prior to being wiped. (Pet. at ¶ 113).

## D. First Filing

On February 21, 2020, Plaintiff filed a Complaint in United States District of Kansas. (Def.'s Motion to Dismiss, Ex. 1). The Complaint was addressed to "The Board of County Commissioners of the County of Johnson: Penny Postoak Ferguson, County Manager, 111 S Cherry Street, Suite 3300, Olathe, KS 66061." (Def.'s Motion to Dismiss, Ex. 1). The Complaint identified Plaintiff's name; Plaintiff's attorneys' names and address; a statement of facts laying out Plaintiff's claims; the name of public officers involved, and the address of two such officers; a statement of the injuries Plaintiff suffered; and a demand of more than $75,000. (Pet. at ¶ 5). Plaintiff mailed the document to Defendant on February 28, 2020. (Pet. at ¶ 4). The notice arrived on Monday, March 2, 2020. (Def.'s Motion to Dismiss, Ex. 2). Defendant has made no claim that service of process was insufficient. (Def.'s Motion to Dismiss, Ex. 3).

On May 15, 2020, Defendant filed its Answer to the Complaint, along with a Motion to Dismiss and Partial Motion to Dismiss. (Def.'s Motion to Dismiss, Ex. 3; Answer, attached as Ex. A). The Answer fully denied Plaintiff's claim. (Ex. A at ¶¶ 120-29, p. 17, "Affirmative and Other Defenses" ¶¶ 1-2, 4). In the Answer, Defendant stated that "at the time of the February 22,

2018 meeting was scheduled, it was not certain that a decision as to Plaintiff's employment status would be made on that date." (Ex. A at ¶ 84). In the Answer, Defendant stated that "the memorandum was partially drafted prior to meeting with Plaintiff on February 22, 2018, as is standard practice and *that the memorandum was subject to change based on the information presented.*" (Ex. A at ¶ 90). Defendant further alleged that "Plaintiff's claims are barred to the extent she failed to timely exhaust administrative remedies." (Ex. A at p. 18, "Affirmative and Other Defenses" ¶ 14). The District Court of Kansas granted Defendant's Motion to Dismiss on July 22, 2020, and Plaintiff asked that the remaining claim be dismissed on August 18, 2020. (Def.'s Motion to Dismiss, Ex. 2).

### E. This Lawsuit

On August 14, 2020, Plaintiff filed this lawsuit. (Pet. at p. 14). Defendant was served by mailing a copy of the Petition and Summons to: "The Board of County Commissioners of the County of Johnson: Penny Postoak Ferguson, County Manager, 111 S Cherry Street, Suite 3300, Olathe, KS 66061." (Summons; Request and Service Instruction Form; Pet. at p. 1). Defendant has made no claim that service of process was insufficient.

### III.   LEGAL STANDARD

"[W]hen reviewing a motion to dismiss, a court views the petition in a light most favorable to the plaintiff to determine whether the petition states any valid claim for relief." *Hill v. State*, 310 Kan. 490, 500, 448 P.3d 457 (2019). All facts alleged by the plaintiff are taken as true, "along with any inferences that can reasonably be drawn therefrom." *Id.* (internal quotations omitted). "Dismissal is only justified if the petition's allegations clearly demonstrate petitioners do not have a claim, after viewing all claims in the light most favorable to petitioners and

resolving every doubt in their favor." *State ex rel. Slusher v. City of Leavenworth*, 279 Kan. 789, 790, 112 P.3d 131 (2005).

## IV.    ARGUMENT AND LEGAL AUTHORITIES

Defendant's Motion to Dismiss should be denied. Plaintiff has substantially complied with the notice requirement of the Kansas Tort Claims Act ("KTCA") in a way that has been recognized as appropriate by the Kansas Court of Appeals. *Debbrecht v. City of Haysville*, No. 110,410, 328 P.3d 585, 2014 WL 3397180, at *8 (Kan. Ct. App. July 11, 2014) (unpublished[1] table decision). Additionally, Plaintiff's claims are timely because notice was provided within two years of the date Plaintiff was "certain about the termination." *Whyte v. City Council for City of Topeka*, 278 Kan. 458, 459, 102 P.3d 384 (2004). This date was also the first date upon which Plaintiff was able to "file and prosecuted h[er] action to a successful conclusion." *Johnston v. Farmers Alliance Mut. Ins. Co.*, 218 Kan. 543, 548, 545 P.2d 312 (1976). Even if the Court disagrees regarding Plaintiff's discharge, the other adverse actions complained of are undisputedly within the limitations period. For these reasons, Defendant's Motion to Dismiss should be denied.

### A.    Plaintiff substantially complied with Kansas Tort Claims Act.

A plaintiff is not held to strict rigors when determining the sufficiency of a filing pursuant to the KTCA, but instead only required to demonstrate "substantial compliance with the provisions and requirements" thereof. K.S.A. § 12-105b(d) (2020). The Kansas Supreme Court has defined "substantial compliance" to mean "compliance in respect to the essential matters

---

[1] Plaintiff acknowledges that *Debbrecht* is an unpublished opinion as defined by Supreme Court Rule 7.04(g). However, as *Debbrecht* itself acknowledges, there was no Kansas opinion directly on point to the issues of that case, and—aside from *Debbrecht* itself—there is still no such opinion. As this opinion is both relevant to a material issue not addressed in a published opinion and Plaintiff believes it would assist the Court in the disposition of that material issue in this matter, Plaintiff cites this case. Plaintiff has additional attached a copy of the opinion as required by Rule 7.04(g)(2)(C).

necessary to assure every reasonable objective of the statute." *Myers v. Board of Cty. Com'rs of Jackson Cty.*, 280 Kan. 869, 874, 127 P.3d 319 (2006) (quoting *Orr v. Heiman*, 270 Kan. 109, 112-13, 12 P.3d 387 (2000)). As the objective of the KTCA is simply to "sufficiently advise the proper municipality...of the time and place of the injury and give the municipality an opportunity to ascertain the character and extent of the injury sustained," the Kansas Supreme Court has never required a strict checklist-style analysis of substantial compliance. *Orr*, 270 Kan. at 112-15.

Here, Defendant argues that substantial compliance is lacking for two reasons. First, the form of the notice is defective. Second, the notice was delivered to Defendant in care of the County Manager. Prior decisions of the Kansas Appellate Courts show that neither of these hinders substantial compliance.

### i. *The Federal Complaint constitutes appropriate notice.*

The Kansas Court of Appeals has held that an improperly filed lawsuit, if cured via a later filing, can constitute sufficient notice for purpose of the KTCA. *Debbrecht*, 2014 WL 3397180, at *8; *see also Steed v. McPherson Area Solid Waste Util.*, 43 Kan. App. 2d 75, Syl. ¶ 11, 91, 221 P.3d 1157 (2010). These cases recognize that prematurely filed lawsuits cannot be "lawsuits" pursuant to Section 12-105b(d), and thus can be notices under that law. *Steed*, 43 Kan. App. 2d at 91; *Debbrecht*, 2014 WL 3397180, at *8. Additionally, both *Debbrecht* and *Steed* recognized that a municipality is not guaranteed a "completely litigation free" period in which to consider a claim. *Debbrecht*, 2014 WL 3397180, at *8; *see Steed*, 43 Kan. App. 2d at 90-91.

In *Debbrecht*, the plaintiff was convicted of violating an ordinance, which ultimately led to the filing of various state law and Federal law claims. *Debbrecht*, 2014 WL 3397180, at *1-2. On November 18, 2010, the plaintiff sent a letter to the city and contemporaneously filed a

lawsuit. *Id.* at *2. That lawsuit was removed to the District of Kansas and litigated for several months. *Id.* On March 17, 2011—119 days after the filing of the lawsuit—counsel for the city argued that the plaintiff had not complied with the KTCA. *Id.* The city then began motion practiced aimed at dismissing the case in federal court. *Id.* On June 14, 2011, the plaintiff filed a second petition in state court asserting the same claims and pointing to the first lawsuit as notice pursuant to the KTCA. *Id.* That matter was also removed to federal court, but stayed pending the outcome on the first lawsuit. *Id.*

The first lawsuit was ultimately dismissed in full, including failure to comply with KTCA's notice requirements. *Id.* Shortly after that, the second lawsuit's federal claims were dismissed and the matter remanded to state court. *Id.* The court then dismissed the claims for failure to comply with the KCTA's notice requirements. *Id.* at *3.

The Court of Appeals found that the trial court erred in holding that the first lawsuit could not constitute notice. *Id.* at *8. The city's arguments that it was deprived an opportunity to "investigate without also having to litigate the claims" was rejected, with the Court finding that the KTCA does not guarantee a municipality "that the waiting period between the notice and denial of claims be completely litigation free." *Id.* at *7-8.

*Steed* followed a much simpler path: the lawsuit was filed after notice was given but prior to a denial or passage of 120 days. *Steed*, 43 Kan. App. 2d at 91. After the 120 days had passed, the plaintiff filed an amended petition noting that this fact. *Id.* at 91. The trial court dismissed the case for lack of jurisdiction. *Id.* The Court of Appeals reversed, finding:

> More importantly, however, because the district court lacked subject matter
> jurisdiction over the Steeds' original petition due to their failure to comply with
> [the KTCA], the Steeds' original petition was a nullity and was void *ab initio*. The
> Utility is correct in asserting that an action can only be commenced once. Here,
> the Steeds' action was not properly commenced until the filing of the amended
> petition on June 21, 2007. Because the amended petition satisfied the

jurisdictional requirements of [the KTCA], the district court erred in finding that it did not have jurisdiction over the Steeds' claims contained therein.

*Id.*

The facts here are strikingly similar to those in *Debbrecht.* The parties agree that the District of Kansas could not and did not assume jurisdiction over the court at issue in this matter; it was "a nullity and was void *ab initio.*" *See Steed*, 43 Kan. App. 2d at 91. Thus, the document could and did serve the purpose of the written notice requirement of the KTCA. The KTCA does not promise a municipality a litigation-free period to consider claims, only promise of notice, which Defendant undisputedly received.

### ii. The lawsuit was addressed to the Board of Commissioners and delivered to the address used by the Board, in the care of the County Manager.

The KTCA states that notices should be provided to "the clerk or governing body of the municipality." K.S.A. § 12-105b(d). In Johnson County, the Board of County Commissioners appoints the County Manager. Johnson Cty., Kan. Charter art. IV, § 4.01 (2000). The County Manager is charged with "be[ing] responsible to the Commission for the administration of all Johnson County government affairs," which includes directly reporting to the Commission and attending all Board meetings. Johnson Cty., Kan. Charter art. IV, § 4.03 (2000). Both the Board of County Commissioners and County Manager use the exact same physical address: 111 South Cherry Street, Suite 3300, Olathe, Kansas 66061.

Courts have held that service upon legal counsel is not substantial compliance. *See Steed*, 43 Kan. App. 2d at 84-86 (discussing cases). However, the Kansas Supreme Court has found that service on an individual who is, by law, granted "charge and control" and required to report to the governing body of the municipality is sufficient. *Orr*, 270 Kan. at 114-15 (superintendent). Likewise, service upon the office manager for a Utility was deemed appropriate, finding that the

individual served a rule similar to that of a clerk and that the governing body—a board of directors—had actual notice of the claim. *Steed*, 43 Kan. App. 2d at 85-86.

Defendant in this case argues that, though the notice was addressed to the appropriate "governing body," mailed to the address of the "governing body," and sent to the attention of a full-time employee charged with the daily administration of government affairs by the "governing body" who must report regularly to the "governing body," the notice was not "filed with the clerk or governing body." This is not analogous to the cases cited by Defendant, were notice was never directed to the "governing body" at all, but instead to a completely separate individual. Plaintiff provided notice, addressed to the "governing body," and it is undisputed that the governing body had actual notice sufficient for it to respond to the claim. That same "governing body" has not objected to legal service obtained in the precise same way. Plaintiff has substantially complied with the notice requirement by providing it to the "governing body" as required by the statute.

**B. Notice was timely served.**

Plaintiff's claim is controlled by the two-year statute of limitations. K.S.A. § 60-513. Computation of time is controlled by Section 60-206, which directly applies to statutes of limitations. *See State ex rel. Quinn v. Johnson*, 19 Kan. App. 2d 315, 316-17, 868 P.2d 555 (1994). The statute has been found to apply to virtually any time limitations, based upon the language of the statute itself: "The following provisions apply in computing any time period specified in this chapter, in any local rule or court order *or in any statute or administrative rule or regulation that does not specify a method of computing time*." K.S.A. § 60-206 (2020); *see also McIntyre v. A.L. Abercrombie, Inc.*, 23 Kan. App. 2d 204, 207-08, 929 P.2d 1386 (1996) (discussing wide range of applications of Section 60-206).

Two provisions of Section 60-206 are of importance here. First, periods of time stated in "days or a longer unit" always "exclude the day of the event that triggers the period." K.S.A. § 60-206(a)(1)(A). Second, if the "last day [of the time period] is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legally holiday." *Id.* at § 60-206(a)(1)(C).

### i. *Plaintiff's discharge claim accrued on March 2, 2020—two years after the date upon which was "certain about the termination" and could have first filed and successfully prosecuted her claim to completion.*

While it is certainly true that most wrongful discharges accrue upon communication of the discharge, communication is not the test articulated by the Kansas Supreme Court. *See Johnston*, 218 Kan. at Syl. ¶ 2 ("In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises, the true test being at what point in time the plaintiff could first have filed and prosecuted his action to a successful conclusion."); *Whyte*, 278 Kan. at 459-60 ("A cause of action for wrongful discharge accrues when the plaintiff knows or is certain about the termination... Although each act predated the ultimate cessation of pay, it signaled that the ***cessation had become inevitable***.") (internal quotations omitted)(emphasis added).

Further, any such claim must be capable of prosecution to "a successful conclusion." *See Johnston*, 218 Kan. at Syl. ¶ 2. All claims require proper standing and ripeness, as "[j]udicial power is limited to actual cases and controversies." *Kansas Nat'l Educ. Ass'n v. State*, 305 Kan. 739, 743, 387 P.3d 795 (2017). An injury that is speculative, vague, or uncertain robs a part of both standing (via lack of injury-in-fact) and ripeness. *Id.* at 746-48. If "additional facts need to arise of be developed" before an injury is definite, ripeness fails. *Id.* at 748 (internal quotations and citations omitted).

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

Here, Plaintiff was specifically told that her termination would not be effective for "five business days" from February 22, 2018—that it had not become "certain" nor "inevitable." Plaintiff, knowing the decision was wrong and believing it could be prevented with access to her computer, explored her options. Ultimately, Plaintiff learned she would not be allowed access to the evidence she needed, and the termination became final and effective on March 1, 2018.

Thus, Plaintiff's claim accrued on March 1, 2018, and she would need to file notice by March 2, 2020[2] (the "day of the event that triggers the period" is excluded pursuant to Section 60-206(a)(1)(A)). Plaintiff mailed notice on February 28, 2020 and it was signed for and received by Defendant on March 2, 2020. Thus, the action was commenced within the statutory period. Defendant denied the claim on May 15, 2020, and this lawsuit was filed on August 14, 2020—90 days[3] after that denial (the "day of the event that triggers the period" is excluded pursuant to Section 60-206(a)(1)(A)). Thus, Plaintiff's wrongful discharge is timely.

Further, had Plaintiff pursued a lawsuit between February 22 and March 1, 2018, a court would have lacked subject matter jurisdiction due to lack of an injury-in-fact and ripe claim—she would not have been able to prosecute it to a successful conclusion because her injury was speculative. Defendant stated in its Answer in the previous case that, as of February 22, the decision was subject to change and undecided. (Ex. A at ¶¶ 84, 90). Not until the termination was final definitive and certain could Plaintiff have pursued her claim for wrongful discharge, and only at that point did her claim accrue.

---

[2] Even if the date were March 1, 2020, that date fell on a Sunday, meaning the notice was timely if given by the end of the following non-holiday weekday, Monday March 2, 2020.

[3] Even aside from this timing, statutes of limitations have been suspended by Administrative Orders of the Kansas Supreme Court since March 18, 2020, continuing today.

### ii. *Plaintiff's other adverse actions are undisputed not time barred and are not challenged as such by Defendant.*

In addition to terminations, Kansas law prohibits "any employment action that is materially adverse to a reasonable employee." *Hill*, 310 Kan. at 505. The test is whether the action is "harmful to the point that it could well dissuade a reasonable worker from" undertaking the activity protected by public policy.[4] *Id.* (internal citations and quotations omitted).

Here, Plaintiff has alleged several adverse actions taken by Defendant which each as harmful to the point dissuading a reasonable employee:

> Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, requesting criminal charges be brought against Plaintiff, destroying exculpatory evidence identified by Plaintiff, and opposing Plaintiff receiving unemployment benefits.

(Pet. ¶ 129). Each adverse actual occurred after Plaintiff's discharge, and thus accrued at later dates. Defendant requested that criminal charges be brought against Plaintiff, which they were on January 2, 2019. (Pet. ¶ 103). Defendant destroyed evidence on March 19, 2018, despite Plaintiff repeatedly having stated such evidence was exculpatory. (Pet. ¶ 117). Defendant did this knowing that it was requesting a criminal case be filed. (Pet. ¶¶ 103, 117). Defendant opposed Plaintiff receiving unemployment benefits, which occurred after March 1, 2018. (Pet. ¶¶ 100-01). Defendant does not dispute the date it received the complaint which constituted notice, and none of these allegations occurred after that date. Thus, at worst, Plaintiff's discharge is the only time-barred adverse action.

---

[4] Though Hill dealt specifically with retaliation for exercising rights under the Civil Service Act, the Court spoke broadly of violation of any public policy, and specifically instructed "the Kansas caselaw to date deals with terminations and demotions, but this is because those happened to be the facts presented—not because they represented some minimum threshold of harm necessary to invoke a cause of action." *Id.* at 504. Indeed, the Court framed the issue as: "we are confronted in this case with how to determine whether an employment action is sufficiently coercive to undermine the public policy goal and give rise to tort liability." *Id.*

## V.   CONCLUSION

Defendant's Motion should be denied because Plaintiff has substantially complied with the KTRA. The Court of Appeals has upheld a notice that is nearly identical to the facts in this case. Further, Plaintiff's notice was provided within the time limitations imposed by Section 60-513. The proper date for the accrual of Plaintiff's claim is the first date upon which she could have successfully prosecuted the claim, which only became ripe on March 1, 2018. Even if the discharge is found to be time-barred, the other adverse actions alleged by Plaintiff are undisputedly timely.

Respectfully submitted,

_/s/ Robert A. Bruce_
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone:  (913) 371-1930
Facsimile:  (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's

electronic filing system to the following:

Jeannie M. DeVeney
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, Missouri 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com
**Attorneys for Defendant**

*/s/ Robert A. Bruce*
Attorney for Plaintiff



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHARMAINE ELVEN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:20-cv-02074-JAR-GEB |
| vs. | ) | |
| | ) | |
| **THE BOARD OF COUNTY** | ) | |
| **COMMISSIONERS OF THE COUNTY** | ) | |
| **OF JOHNSON,** | ) | |
| **MATTHEW FLETCHER, and** | ) | |
| **BETH JOHNSON,** | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO PLAINTIFF'S COMPLAINT

Defendants, The Board of County Commissioners of the County of Johnson ("County"), Matthew Fletcher ("Fletcher"), and Beth Johnson ("Johnson") (collectively "Defendants"), for their Answer to Plaintiff's Complaint, states as follows:

1.      Defendants admit the allegations in Paragraph 1 upon information and belief.

2.      Admitted.

3.      Answering Paragraph 3, Defendants admit that Defendant Fletcher previously held the position of Deputy Director for Johnson County Developmental Supports for Defendant County. Defendants deny any remaining allegations and implications.

4.      Answering Paragraph 4, Defendants admit that Defendant Johnson holds the position of Director of Day and Employment Services for Defendant County. Defendants deny any remaining allegations and implications.

5.      Answering Paragraph 5, Defendants admit this Court has jurisdiction over this dispute but deny any remaining allegations.

6.     Answering Paragraph 6, Defendants admit this Court currently has jurisdiction over this dispute but deny any remaining allegations.

## FACTS COMMON TO ALL COUNTS

7.     Admitted. Defendant notes Plaintiff had been employed previously as well.

8.     Answering Paragraph 8, Defendants admit that Defendant County hired Plaintiff as a Community Employment Specialist/Service Coordinator I in or about April 2015.

9.     Denied.

10.    Admitted.

11.    Answering Paragraph 11, Defendants admit that Kim Perry was Plaintiff's supervisor and was typically tasked with approving time entries for the employees she supervised, including Plaintiff. Defendants deny that Ms. Perry was the only individual who could approve Plaintiff's time entries and deny all remaining allegations.

12.    Answering Paragraph 12, Defendants admit that in Ms. Perry's absence, Ms. Johnson was one of the individuals who could potentially approve Plaintiff's time entries. Defendants deny that Ms. Johnson approved all time entries in Ms. Perry's absence and further deny all remaining allegations.

13.    Denied.

14.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and, therefore, deny the same.

15.    Admitted.

16.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and, therefore, deny the same.

2     *Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

17.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, therefore, deny the same.

18.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and, therefore, deny the same.

19.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and, therefore, deny the same.

20.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, therefore, deny the same.

21.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, therefore, deny the same.

22.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and, therefore, deny the same.

23.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and, therefore, deny the same.

24.    Denied.

25.    Answering Paragraph 25, Defendants admit that no investigation was undertaken, because Plaintiff made no report of any such occurrence, nor are Defendants in possession of any knowledge or information that any such event occurred. Defendants further deny any remaining allegations.

26.    Denied.

27.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and, therefore, deny the same.

28.    Denied.

*Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

29.     Answering Paragraph 29, Defendants deny the premise and, therefore, deny the allegations.

30.     Answering Paragraph 30, Defendants admit that Plaintiff's timecard reflects that she was working on December 7, 2017. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 30 and, therefore, deny the same.

31.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and, therefore, deny the same.

32.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 and, therefore, deny the same.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and, therefore, deny the same.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and, therefore, deny the same.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and, therefore, deny the same.

36.     Answering Paragraph 36, Defendants admit that a conference room in the administration building, where the JCDS office is also located, is sometimes used for overflow from traffic court. Defendants deny all remaining allegations.

37.     Answering Paragraph 37, Defendants deny that criminal court proceedings were held in the administration building. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, deny the same.

38.     Answering Paragraph 38, Defendants deny the premise and, therefore, deny the allegations.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Answering Paragraph 43, Defendants deny the premise and, therefore, deny the allegations.

44.     Denied.

45.     Denied.

46.     Answering Paragraph 46, Defendants deny the premise and, therefore, deny the allegations.

47.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 and, therefore, deny the same.

48.     Answering Paragraph 48, Defendants admit that Plaintiff contacted Human Resources on December 13, 2017, but deny that she reported the alleged problem described herein and further deny all remaining allegations.

49.     Answering Paragraph 49, Defendants admit that the Human Resources representative responded appropriately to Plaintiff but deny that the conversation was on the topic Plaintiff describes herein and further deny all remaining allegations.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Answering Paragraph 59, Defendants admit that Teal Goeller, Ms. Johnson, and Plaintiff met in or about January 2018. Defendants deny any remaining allegations and implications.

60.     Admitted.

61.     Answering Paragraph 61, Defendants admit that Plaintiff told Ms. Goeller and Ms. Johnson that she performed substantial overtime as part of her job. Defendants deny all remaining allegations.

62.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and, therefore, deny the same.

63.     Answering Paragraph 63, Defendants admit that Plaintiff told Ms. Goeller and Ms. Johnson that Ms. Duncan's absence contributed to her working additional hours. Defendants deny all remaining allegations.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

*Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

68.    Answering Paragraph 68, Defendants admit that Human Resources took possession of Plaintiff's County-issued laptop for the duration of the investigation into Plaintiff's misconduct but deny that Plaintiff would not have been allowed access to the computer, had she requested it. Defendants further deny all remaining allegations.

69.    Answering Paragraph 69, Defendants admit that Plaintiff was placed on administrative leave on or about February 1, 2018. Defendants deny any remaining allegations.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Answering Paragraph 77, Defendants admit that Plaintiff's attendance was requested at a meeting scheduled for February 22, 2018 but deny all remaining allegations.

78.    Answering Paragraph 78, Defendants admit that Ms. Goeller told Plaintiff that a purpose of the meeting was for Plaintiff to provide them any additional information she might have in connection with the investigation. Defendants deny all remaining allegations.

79.    Admitted.

80.    Answering Paragraph 80, Defendants admit that Plaintiff attended the February 22, 2018 meeting. Defendants deny any remaining allegations or implications.

7    *Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

93

81.     Answering Paragraph 81, Defendants admit that the February 22, 2018 meeting was attended by Plaintiff, Mr. Fletcher, Ms. Perry, and Ms. Goeller. Defendants deny all remaining allegations.

82.     Answering Paragraph 82, Defendants admit that Defendant Fletcher informed Plaintiff that based on the investigation, it was his intention to separate her from employment with JCDS and then asked her if she could provide him with any information that she believed he should know that could change this decision. Defendants deny any remaining allegations and implication.

83.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 and, therefore, deny the same.

84.     Answering Paragraph 84, Defendants admit that at the time the February 22, 2018 meeting was scheduled, it was not certain that a decision as to Plaintiff's employment status would be made on that date. Defendants deny all remaining allegations and implications.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Answering Paragraph 88, Defendants admit that, in the meeting, Plaintiff was informed that due to the seriousness of her actions, JCDS would be turning the matter over to the District Attorney for Johnson County for review. Defendants deny all remaining allegations.

89.     Admitted.

90.     Answering Paragraph 90, Defendants admit that the memorandum was partially drafted prior to meeting with Plaintiff on February 22, 2018, as is standard practice and that the memorandum was subject to change based on information presented. Defendants deny all remaining allegations and implications.

91.     Admitted.

92.     Answering Paragraph 92, Defendants admit that Ms. Perry was not discharged as a result of Plaintiff's misconduct.

93.     Answering Paragraph 93, Defendants admit that Ms. Perry participated in the investigation into Plaintiff's misconduct and the February 22, 2018 meeting. Defendants otherwise deny the allegations.

94.     Admitted.

95.     Admitted.

96.     Denied.

97.     Admitted.

98.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 and, therefore, deny the same.

99.     Answering Paragraph 99, Defendants admit that the District Attorney for Johnson County filed charges against Plaintiff on December 31, 2018. Defendants otherwise deny the allegations.

100.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and, therefore, deny the same.

101.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 and, therefore, deny the same.

102.    Defendants admit the allegations in Paragraph 102 upon information and belief.

103.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 and, therefore, deny the same.

*Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

104.    The allegations in Paragraph 104 call for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

105.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 and, therefore, deny the same.

106.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 and, therefore, deny the same.

107.    The allegations in Paragraph 107 are vague as to the information allegedly believed to be wiped, who allegedly discovered this, and who allegedly believed it. As a result, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations, therefore, deny the same.

108.    Answering Paragraph 108, Defendants admit that Plaintiff's counsel subpoenaed the County for information and that the subpoena speaks for itself. Defendants deny the remaining allegations.

109.    The allegations in Paragraph 109 are vague as to who allegedly made these statements and in what context. As a result, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, deny the same.

110.    Answering Paragraph 110, Defendants admit that work product Plaintiff saved to Defendant County's systems were saved. The allegations in Paragraph 110 are vague as to who allegedly made these statements and in what context. As a result, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, deny the same.

111.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 and, therefore, deny the same.

*Clerk of the District Court, Johnson County Kansas*
                                              *12/17/20  01:01pm ST*

112.   Denied.

113.   Defendants deny the allegations in Paragraph 113 related to a six month period. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations related to what Epperson stated about the date that Plaintiff's computer was disabled. and, therefore, deny the allegation, as well as any remaining allegations.

114.   The allegations in Paragraph 114 are vague. As such, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations.

115.   Answering Paragraph 115, Defendants admit that Plaintiff's counsel served a subpoena on Defendant County and that the subpoena speaks for itself. Defendants deny the remaining allegations.

116.   The allegations in Paragraph 116 are vague as to the meaning of "the records from Plaintiff's computer." Defendants admit that information stored locally on Plaintiff's computer was not stored on a server. Defendants deny the remaining allegations.

117.   The allegations in Paragraph 117 are vague as to the meaning of "this data." Defendants admit that the data stored locally on Plaintiff's computer was not stored on a server. Defendants deny the remaining allegations.

118.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 and, therefore, deny the same.

119.   The allegations in Paragraph 119 are vague. To the extent that the "actions and inactions" referenced are intended to refer to the allegations preceding Paragraph 119, most of them did not occur at all. Accordingly, Defendants deny the allegations.

## COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY
### Against Defendant County

120.   Denied.

11        *Clerk of the District Court, Johnson County Kansas*
          *12/17/20  01:01pm ST*

121.    The allegations in Paragraph 121 call for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

## COUNT II - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
## FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant County

130.    The allegations in Paragraph 130 are vague. Defendants admit that Defendant County investigated Plaintiff's conduct and provided information about the results of its investigation to the District Attorney's office. Defendants otherwise deny the allegations.

131.    Answering Paragraph 131, Defendants admit that Defendants Fletcher and Johnson participated in an investigation into Plaintiff's misconduct and that the results of the investigation were provided to the District Attorney. Defendants deny all remaining allegations.

132.    Denied.

133.    Answering Paragraph 133, Defendants deny both the premise and the allegations.

134.    Denied.

135.    Defendants deny the premise in Paragraph 135 and, therefore, deny the allegations.

136.    Defendants deny the premises in Paragraph 136 and therefore deny the allegations.

137.    Answering Paragraph 137, Defendants admit that Plaintiff's County-issued hard drive was repurposed in the regular course of business. Defendants deny any remaining allegations.

138.    Defendants deny the premise in Paragraph 138 and therefore deny the allegations.

139.    Denied.

140.    Answering Paragraph 140, Defendants admit that Plaintiff's County-issued computer was repurposed in the regular course of business and that Defendant Fletcher did not change (or have reason to) change that process. Defendants deny all remaining allegations.

141.    Denied.

142.    Admitted.

143.    Denied.

144.    Denied.

145.    Denied.

146.    Denied.

147.    Denied

## COUNT III - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
## FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Johnson

148.    The allegations in Paragraph 148 are vague. Defendants admit that Defendant County investigated Plaintiff's conduct and provided information about the results of its investigation to the District Attorney's office. Defendants otherwise deny the allegations.

149.    Answering Paragraph 149, Defendants admit that Defendant Johnson was involved in the investigation into Plaintiff's misconduct and that the results of the investigation were provided to the District Attorney. Defendant denies all remaining allegations.

150.    Denied.

151. Denied.

152. Denied.

153. Answering Paragraph 153, Defendants admit that Plaintiff's County-issued computer was repurposed in the regular course of business and that Defendant Johnson did not change (or have reason to change) that. Defendants deny the remaining allegations.

154. Answering Paragraph 154, Defendants admit that Plaintiff's County-issued computer was repurposed in the regular course of business and that Defendant Johnson did not change (or have reason to change) that. Defendants deny the remaining allegations.

155. Denied.

156. Denied.

157. Denied.

158. Denied.

159. Denied.

160. Denied.

## COUNT IV - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
## FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Fletcher

161. The allegations in Paragraph 161 are vague. Defendants admit that Defendant County investigated Plaintiff's conduct and provided information about the results of its investigation to the District Attorney's office. Defendants otherwise deny the allegations.

162. Answering Paragraph 162, Defendants admit that Defendant Fletcher was involved in the investigation into Plaintiff's misconduct and that the results of the investigation were provided to the District Attorney. Defendants deny the remaining allegations.

163. Denied.

164. Denied.

165. Denied.

166. Answering Paragraph 166, Defendants admit that Plaintiff's County-issued computer was repurposed in the regular course of business and that Defendant Johnson did not change (or have reason to change) that. Defendants deny the remaining allegations.

167. Answering Paragraph 167, Defendants admit that Plaintiff's County-issued computer was repurposed in the regular course of business and that Defendant Johnson did not change (or have reason to change) that. Defendants deny the remaining allegations.

168. Answering Paragraph 168, Defendants admit that Plaintiff's County-issued computer was repurposed in the regular course of business and that Defendant Johnson did not change (or have reason to change) that. Defendants deny the remaining allegations.

169. Denied.

170. Admitted.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

### COUNT V - VIOLATION OF LIBERTY INTEREST VIA STIGMATIZATION
### FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant County

177. Admitted.

178. Denied.

15    *Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

101

179.    Answering Paragraph 179, Defendants admit that Defendant County referred Plaintiff's misconduct to the District Attorney. Defendants deny all remaining allegations.

180.    Answering Paragraph 180, Defendants admit that the District Attorney filed charges against Plaintiff under case no. 19CR000022, and that such charges are public. Defendants deny all remaining allegations.

181.    Answering Paragraph 181, Defendants admit that they provided information about Plaintiff's misconduct to the Kansas Department of Labor when Plaintiff filed for unemployment. Defendants deny all remaining allegations.

182.    Denied.

183.    The allegations in Paragraph 183 call for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

184.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184 and, therefore, deny the same.

185.    Answering Paragraph 185, Defendants deny the premise and therefore deny the allegations.

186.    Denied.

## COUNT VI - VIOLATION OF LIBERTY INTEREST VIA STIGMATIZATION
### FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Fletcher

187.    Admitted.

188.    Denied.

189.    Denied.

*Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

190.   Answering Paragraph 190, Defendants admit that the District Attorney filed charges against Plaintiff under case no. 19CR000022, and that such charges are public. Defendants deny all remaining allegations.

191.   Answering Paragraph 191, Defendants admit that Defendant County provided information about Plaintiff's misconduct to the Kansas Department of Labor when Plaintiff filed for unemployment. Defendants deny all remaining allegations.

192.   Denied.

193.   The allegations in Paragraph 193 call for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

194.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194 and, therefore, deny the same.

195.   Denied.

196.   Denied.

## AFFIRMATIVE AND OTHER DEFENSES

1.   Defendants deny all allegations not specifically admitted herein.

2.   Defendants deny that they engaged in any wrongful conduct and deny that Plaintiff is entitled to any legal or equitable relief.

3.   Defendants deny that Plaintiff engaged in any protected activity, including the protected activity specifically alleged herein.

4.   Plaintiff has failed, in whole or in part, to state a claim upon which relief may be granted.

5.   Plaintiff's claims against Mr. Fletcher and Ms. Johnson are barred by the doctrine of qualified immunity.

6.     Plaintiff's claims are barred because of Defendants' litigation privilege.

7.     Plaintiff's claims are barred because the rights asserted by Plaintiff were not clearly established at the time of the alleged violation.

8.     Plaintiff's Constitutional claims are barred because they are not ripe for adjudication.

9.     Plaintiff has not identified a Constitutionally protected life, liberty, or property right.

10.    Plaintiff has not identified has not identified a right that meets the definition of a substantive due process right, which fits within the Constitution's notions of ordered liberty.

11.    Plaintiff's claims are barred by the doctrines of waiver and unclean hands.

12.    Plaintiff waived any right to due process or name clearing hearing when she declined to participate in Defendant's appeal process.

13.    Plaintiff waived any right to assert violation of Due Process by failing to raise any claim related to her computer during Defendant's investigation and/or by specifically asserting that her computer would *not* aid in substantiating her hours worked.

14.    Plaintiff's claims are barred to the extent she failed to timely exhaust administrative remedies.

15.    The actions about which the Plaintiff complains were based on reasonable factors other than characteristics protected by applicable law. Specifically, the County did not make employment decisions based on Plaintiff's alleged protected activity.

16.    Defendant County had legitimate business reasons for its decisions, and the actions about which the Plaintiff complains would have been the same in the absence of any impermissible consideration.

17.     Defendants acted in good faith toward Plaintiff and in compliance with all applicable laws, including adopting and enforcing policies to effectuate the same, therefore Plaintiff is not entitled to an award of punitive damages against Defendants.

18.     Plaintiff's claim for punitive damages is contrary to the law and constitutional provisions and any award of punitive damages against Defendants would violate Defendants' Due Process rights under the Kansas and/or United States Constitutions.

19.     Plaintiff's claims are barred to the extent Plaintiff has failed to mitigate damages allegedly sustained as a result of conduct by Defendant. In the alternative, Defendant is entitled to an offset in the amount of Plaintiff's mitigation.

20.     Plaintiff's claim fails because any alleged action or failure to act on the part of Defendants was not the proximate cause of any injuries to Plaintiff.

21.     Plaintiff's claims may be barred, in whole or in part, by the doctrine of after acquired evidence.

22.     Plaintiff's claims are barred to the extent they are the subject of any bankruptcy proceedings or adjudication.

23.     Defendants reserve the right to assert additional defenses and affirmative defenses.

WHEREFORE, Defendants respectfully request the Court dismiss Plaintiff's Complaint, enter judgment for Defendants and against Plaintiff on each count, and award Defendants their costs, reasonable attorneys' fees, expenses and other relief as the Court deems appropriate.

19     *Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

Respectfully submitted,


/s/ Jeannie M. DeVeney
Jeannie M. DeVeney #17445
Bonnie Birdsell #78895
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com
bbirdsell@littler.com

**ATTORNEYS FOR DEFENDANT**


**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2020, the above and foregoing was filed via the Court's

CM/ECF system, which sent electronic notice of same to the following:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylclaw.com
r.bruce@ddoylelaw.com

**ATTORNEYS FOR PLAINTIFF**


/s/ Jeannie M. DeVeney
ATTORNEY FOR DEFENDANT

*Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

Provided to Court pursuant to K.S.Ct.R. 7.04(g)(2)(C)

328 P.3d 585 (Table)
Unpublished Disposition
(Pursuant to Kansas Supreme Court Rule 7.04(f), unpublished opinions are not
precedential and are not favored for citation. They may be cited for persuasive authority
on a material issue not addressed by a published Kansas appellate court opinion.)
Court of Appeals of Kansas.

## Thomas W. DEBBRECHT and Par Digital Outdoor, Inc., Appellants,

v.

## The CITY OF HAYSVILLE, Kansas, and Jeana M. Morgan, Appellees.

No. 110,410.
|
July 11, 2014.

Appeal from Sedgwick District Court; J. Patrick Walters, Judge.

**Attorneys and Law Firms**

Paul S. McCausland, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellants.

David G. Seely and Jason R. Bock, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees.

Before MALONE, C.J., BRUNS, J., and HEBERT, S.J.

MEMORANDUM OPINION

MALONE, C.J.

**\*1** Thomas W. Debbrecht and Par Digital Outdoor, Inc. (Par Digital) appeal the district court's dismissal of their lawsuit against the City of Haysville, Kansas (the City), and Jeana M. Morgan. Debbrecht and Par Digital claim the district court erred in granting the City's motion to dismiss for lack of jurisdiction under K.S.A.2013 Supp. 12–105b(d). The City responds that the district court correctly dismissed the case for lack of jurisdiction. In the alternative, the City argues that the district court also should have dismissed for failure to state a claim upon which relief could be granted under K.S.A.2013 Supp. 60–212(b)(6). The City requested dismissal on this basis in the district court, but because it dismissed for lack of jurisdiction, the district court did not reach this issue.

We conclude the district court erred in dismissing the case for lack of jurisdiction under K.S.A.2013 Supp. 12–105b(d). But we also conclude that the district court should have dismissed for failure to state a claim upon which relief could be granted. Thus, we affirm the district court's judgment as being right for the wrong reason.

Factual and Procedural Background

The facts are mostly undisputed. In September 2008, Debbrecht owned and operated a used car lot located within the city of Haysville. On September 16, 2008, Debbrecht entered into a lease agreement with Par Digital of Springfield, Missouri, allowing it to erect, illuminate, and operate an advertising sign on his property.

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

In a letter dated June 3, 2009, Jeana Morgan, the coordinator of planning and community relations for the City of Haysville, notified Debbrecht that the sign, as a "brightly illuminated sign" in operation between the hours of 11 p.m. and 6 a.m., violated the City's planning and zoning code. The letter informed Debbrecht that any such violation continuing after June 4 would result in his prosecution. On June 9, 2009, Par Digital sent Morgan a letter informing her that it was the owner and operator of the sign and that Par Digital would reduce the sign's brightness by 25% during nighttime hours. On June 18, 2009, a Haysville police officer inspected the sign and noted that it was still illuminated after 11 p.m.

On June 19, 2009, Morgan issued a complaint against Debbrecht for violating the city ordinance. The Haysville Municipal Court held a bench trial on August 19, 2009. After hearing the evidence, the municipal court convicted Debbrecht and sentenced him to 6 months' imprisonment and a fine of $500. The municipal court agreed to suspend the sentence and commute it to probation if the prohibited illumination stopped within 10 days. On the next day, the sign was turned off from 11 p.m. to 6 a.m. and has remained off during those hours in compliance with the ordinance.

Debbrecht appealed his conviction to the district court. On October 20, 2009, the district court dismissed the complaint, finding that the ordinance in question was unconstitutionally vague and, even if the ordinance was constitutional, the City had "failed to establish beyond a reasonable doubt" that Debbrecht violated the ordinance.

*2 In November 2010, counsel for Debbrecht and Par Digital delivered to the City a letter dated November 18, 2010, which purported to notify the City, pursuant to K.S.A.2013 Supp. 12–105b(d), of Debbrecht's civil claims against the City and Morgan. Debbrecht and Par Digital alleged (1) malicious prosecution, (2) abuse of process, (3) tortious interference with the agreement between Debbrecht and Par Digital, and (4) claims under 42 U.S.C. § 1983 (2012). The letter also stated: "Concurrently with the service of this notice, a petition setting out these claims has been filed in Sedgwick County District Court on this 19th day of November 2010."

Although very little documentation of this initial lawsuit appears in the record before this court on appeal, the parties agree that Debbrecht and Par Digital filed a lawsuit in Sedgwick County District Court on the same day or the day after they delivered the notice to the City. The civil action was then removed to federal court. While the civil action was pending in the federal court, the City, by and through counsel, sent Debbrecht a letter dated March 17, 2011, in which the City informed Debbrecht and Par Digital that their purported K.S.A.2013 Supp. 12–105b(d) letter was invalid because it did not comply with the statute; the City asserted that the contemporaneous filing of the lawsuit against it was contrary to the statute's requirements. In addition, the City notified Debbrecht and Par Digital that the claims referred to in the November 18, 2010, letter were "without merit, for the reasons set forth in the Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, filed in [the pending federal case]."

On June 14, 2011, while the initial lawsuit was still pending in federal court, Debbrecht and Par Digital filed another civil action in Sedgwick County District Court against the City and Morgan, alleging identical state and federal claims. This second lawsuit also was removed to the federal court, where the federal district judge stayed it pending a ruling on the dispositive motion the City had filed in the first lawsuit.

On February 5, 2012, a United States magistrate judge filed a report and recommendation in the first lawsuit, recommending that the district court grant the City's motion for judgment on the pleadings. In particular, the magistrate judge found that the federal court "lack[ed] jurisdiction over plaintiffs' state law claims owing to plaintiffs' failure to comply with K.S.A. 12–105b(d) ." On March 29, 2012, the district court adopted the magistrate's report and recommendation, dismissed the plaintiffs' federal claims with prejudice, and dismissed the state claims without prejudice for lack of jurisdiction.

On February 7, 2013, the federal district court filed a memorandum decision and order in the remaining federal case. The order reiterated that the case had been stayed pending a ruling in another federal case that involved the same parties and "substantially identical claims." The district court noted the resolution of that first case and stated that the parties agreed that the first judgment barred the federal claims in the second lawsuit pursuant to the doctrine of res judicata. Accordingly, the district

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works.

court dismissed the federal claims; the court then declined to exercise supplemental jurisdiction over the remaining state law claims and remanded the case back to state court.

**\*3** On April 5, 2013, the City filed a motion to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief could be granted. The City argued that by filing the first lawsuit on the same day they delivered their K.S.A.2013 Supp. 12–105b letter, Debbrecht and Par Digital failed to comply with the statute, thus divesting the court of subject matter jurisdiction. Anticipating the argument that 120 days had passed between the K.S.A.2013 Supp. 12–105b letter and the second lawsuit, the City contended that the ongoing prosecution of the first lawsuit meant that that time period could not be counted toward a required notice period in regards to the second lawsuit.

On April 29, 2013, Debbrecht and Par Digital filed a response in opposition to the motion to dismiss. As the City had anticipated, they argued that they complied with the notice requirements of K.S.A.2013 Supp. 12–105b(d) by serving notice on November 18, 2010, receiving a letter in which the City rejected the claims on March 17, 2011, and filing a lawsuit on June 14, 2011, within 90 days of the letter. The City filed a reply and argued that by filing the first lawsuit contemporaneously with service of the K.S.A.2013 Supp. 12–105b notice, Debbrecht and Par Digital negated the purpose of the statute—to afford the municipality time to review and investigate the claims against it.

On June 10, 2013, the district court granted the City's motion to dismiss "due to lack of jurisdiction pursuant to K.S.A. 12–105b." At the hearing on the motion, the district court specifically stated that it was dismissing because K.S.A.2013 Supp. 12–105b(d) does not allow commencement of a lawsuit under that statute until the defendant has either denied the claims or the time has run. The district court also made it clear that it was not addressing any of the alternate grounds for dismissal. Debbrecht and Par Digital filed a motion for reconsideration, which the district court denied. Debbrecht and Par Digital timely appealed the district court's judgment.

K.S.A.2013 Supp. 12–105b Notice

On appeal, Debbrecht and Par Digital assert that the notice they served on November 18, 2010, and the response from the City on March 17, 2011, satisfied the requirements of K.S.A.2013 Supp. 12–105b(d) and therefore conferred subject matter jurisdiction upon the district court. Debbrecht and Par Digital concede that "the giving of the notice and concurrent filing of the first civil action did not comply with the statute and failed to confer subject matter jurisdiction on the court." Nevertheless, Debbrecht and Par Digital argue that the notice and subsequent response from the City conferred subject matter jurisdiction on the court in the second civil action.

The City argues that the contemporaneous filing of the first lawsuit with the service of the K.S.A.2013 Supp. 12–105b notice meant that Debbrecht and Par Digital failed to meet the requirements of the statute, thereby failing to confer jurisdiction on the district court. The City further argues that although the second lawsuit was filed more than 120 days after service of the notice letter, K.S.A.2013 Supp. 12–105b(d) requires that the waiting period be litigation-free in order for subject matter jurisdiction to be conferred upon the district court.

**\*4** " 'Statutory interpretation and the determination of jurisdiction involve questions of law over which this court's scope of review is unlimited.' [Citation omitted.]" *State v. Hall,* 298 Kan. 978, 982–83, 319 P.3d 506 (2014). Moreover, our Supreme Court has recently and explicitly said, "When the contents of the purported notice are uncontroverted," as they are here: "whether a plaintiff has substantially complied with K.S.A. [2013] Supp. 12–105b(d) involves only statutory interpretation, and, accordingly, is a question of law subject to de novo review. [Citations omitted.]" *Sleeth v. Sedan City Hospital,* 298 Kan. 853, 863, 317 P.3d 782 (2014).

This appeal centers on interpretation of K.S.A.2013 Supp. 12–105b(d), which commands: "Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

in this subsection before commencing such action." The statute goes on to explain where to file the notice and what information a potential plaintiff must include, then states:

"In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action." K.S.A.2013 Supp. 12–105b(d).

In addition, our Supreme Court has stated that K.S.A 2013 Supp. 12–105b is jurisdictional in nature:

"It is a longstanding rule that filing a proper notice of a claim is a prerequisite to filing an action with the district court against a county or other municipality. [Citations omitted.] Failure to provide the statutory notice of a claim in accordance with K.S.A. [2013] Supp. 12–105b precludes relief. [Citation omitted.] Thus, K.S.A. [2013] Supp. 12–105b is jurisdictional.... If the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality." *Myers v. Board of Jackson County Comm'rs,* 280 Kan. 869, 876–77, 127 P.3d 319 (2006).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. "[A]n appellate court must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings." *Bussman v. Safeco Ins. Co, of America,* 298 Kan. 700, 725, 317 P.3d 70 (2014). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *In re Tax Appeal of Burch,* 296 Kan. 713, 722, 294 P.3d 1155 (2013). Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Northern Natural Gas Co. v. ONEOK Field Services Co.,* 296 Kan. 906, 918, 296 P.3d 1106 (2013).

**\*5** In granting the City's motion to dismiss, the district court cited *Gessner v. Phillips County Comm'rs,* 270 Kan. 78, 81, 11 P.3d 1131 (2000), for the proposition that under K.S.A.2013 Supp. 12–105b(d), no claimant can initiate a lawsuit against a municipality until the claim has been denied in whole or part or the time has run. The *Gessner* court explicitly recognized "a clear legislative intent to disallow the commencement of any actions prior to the filing of the requisite notice" and that the "failure to provide the appropriate notice must be construed to preclude claimants from commencing a legal action." 270 Kan. at 81, 82.

The district court did not make specific findings regarding the effect of the first lawsuit on the adequacy of the K.S.A.2013 Supp. 12–105b(d) letter and whether it provided sufficient notice for the second lawsuit. In other words, although the parties raised the issue before the district court, the district court did not address the crux of what the parties again argue on appeal—whether the ongoing litigation in the first lawsuit, which overlapped the commencement of the second lawsuit, meant that the notice, filed contemporaneously with the first lawsuit, was ineffective as to the second lawsuit.

Debbrecht and Par Digital acknowledge that their first lawsuit was prematurely filed, but they argue that the November 18, 2010, notice and subsequent response from the City conferred subject matter jurisdiction on the court in the second lawsuit. Debbrecht and Par Digital gave the City notice of their claims on November 18, 2010. On March 17, 2011, within 120 days of the notice, the City sent a letter rejecting the claims. Specifically, the letter stated: "[T]he purported claims referred to in your [November 18, 2010] letter are without merit." Moreover, the City concedes in its appellate brief, "If there was ever a denial of Plaintiffs' claims for purposes of K.S.A. 12–105b(d), it occurred long before Plaintiffs received the March 17 letter," in the City's motion for judgment on the pleadings in the first lawsuit in federal court. Debbrecht filed the second lawsuit within

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

90 days of the City's letter rejecting the claims, and the City does not argue that the lawsuit was filed outside the statute of limitations. Thus, Debbrecht and Par Digital argue that under the plain language of K.S .A.2013 Supp. 12–105b(d), the second lawsuit was timely in relation to the November 2010 notice.

The City argues that K.S.A.2013 Supp. 12–105b(d) requires a "litigation-free" time period between filing notice and the municipality denying the claim, relying primarily on *Sleeth*. Thus, we will examine that decision in detail. Scott and Linda Sleeth, parents of Christopher Johnson, sued Sedan City Hospital and its employee, David Short, after Short allegedly caused Johnson's death. Because the hospital was a municipality as defined by statute, the Sleeths had to comply with the notice requirements of K .S.A.2012 Supp. 12–105b(d). The issue throughout the lawsuit was whether a series of letters sent to the hospital administrator and an insurance carrier representative constituted notice by substantially complying with the statutory requirements. The first letter did not contain any statement of damages, as required by K.S.A.2012 Supp. 12–105b(d), but the last letter itemized damages. The Sleeths argued that by reading the letters together, they substantially complied with the statute regarding the required content of a notice letter.

**\*6** Regarding the *timing* of the notice and the Sleeths' filing their lawsuit, however, the Sleeths filed suit more than 120 days after their first letter but less than 120 days after the last. The district court specifically found that neither the hospital administrator nor the insurance representative was the proper person to serve with notice under the statute, so the Sleeths failed to meet the requirements of the statute. Moreover, the district court found that even if the series of letters satisfied the statutory notice requirements, the lawsuit was filed prematurely because the hospital had not denied the claims in full or in part and less than 120 days had passed since the last letter, which itemized damages and completed fulfillment of the statutory requirements for the content of the notice.

On appeal, our Supreme Court placed aside other issues and decided the case "on the basis of the premature filing." 298 Kan. at 862. After establishing the statutory language and the standard of review, the *Sleeth* court held that "a notice that lacks any statement of monetary damages claimed against the municipality cannot reasonably be seen to meet K.S.A.2012 Supp. 12–105b's objectives and/or requirements. [Citations omitted.]" 298 Kan. at 866. The court then considered whether the Sleeths had complied with "the [s]tatutorily [r]equired 120–day [r]eview [p]eriod." 298 Kan. at 867. Based on its holding that a notice without any statement of monetary damages is not sufficient notice pursuant to K .S.A.2012 Supp. 12–105b(d), the court determined that the Sleeths' 120–day period began at the time of the last letter that contained a statement of damages. Unfortunately for the Sleeths, they filed their petition only 92 days after that letter and the hospital had not denied the claims prior to the Sleeths filing suit. See 298 Kan. at 866–68.

The *Sleeth* court discussed the effect of the premature filing and examined the purpose of the waiting period, analyzing the assertion that a municipality could waive the waiting period by failing to raise it as an affirmative defense:

"Clearly, the time bar is shortened if a municipality denies a claim before the 120 days passes. Just as clearly, any shortening of the time period is intended to occur only from the municipality's decision to deny a claim, in whole or in part, before a legal action is initiated. But under [the] waiver analysis, a claimant could ignore the statute and easily force the municipality's hand by filing early, then waiting to see if the municipality, obligated to respond to the petition, waives the time bar by failing to assert it by motion or as an affirmative defense. [Citation omitted.]

"This is not what K.S.A.2012 Supp. 12–105b(d) envisions. The statute plainly provides that no person may initiate a lawsuit until the claim is denied or statutorily deemed denied. [Citation omitted .] Any other reading of the statute diminishes its utility and the underlying policy of giving a municipality an opportunity to 'ascertain the character and extent of the injury sustained, and to allow for the early investigation and resolution of claim disputes.' [Citation omitted.]" 298 Kan. at 870–71.

**\*7** Returning to our facts, the City contends that the *Sleeth* rationale relates to the present case because allowing a party to file a lawsuit before the claim is denied undermines the purpose of K.S.A.2013 Supp. 12–105b(d). The City points out that Debbrecht and Par Digital filed their first lawsuit at the same time as the notice, making it impossible for the City to investigate without also having to litigate the claims, which the City asserts is the purpose of the waiting period. See *Cummings v. City of Clerk of the District Court, Johnson County Kansas*
12/17/20 01:01pm ST

111

*Lakin,* 276 Kan. 858, 863, 80 P.3d 356 (2003) (addressing K.S.A. 12–105b[d]'s tolling of the statute of limitations but stating as a purpose of the notice of claim requirement: "[a]fford[ing] a municipality an opportunity to review and investigate tort claims against it and to approve or deny such claims *before having to litigate an action* under the Kansas Tort Claims Act. [Citation omitted.]") (Emphasis added.)

But what the City fails to take into account is that the cases upon which it depends, including *Sleeth,* are distinguishable from the instant case in that those cases considered the effect of the premature filing of a lawsuit under K.S.A.2013 Supp. 12–105b(d) on the lawsuit that was prematurely filed. Kansas caselaw makes clear that lawsuits filed prematurely in light of K.S.A.2013 Supp. 12–105b(d) must be dismissed for lack of subject matter jurisdiction. The case before this court, however, is concerned with the effect of the premature filing of a lawsuit under K.S.A.2013 Supp. 12–105b(d) on a completely separate, subsequent lawsuit that is not prematurely filed. Thus, *Sleeth* is not controlling here.

Debbrecht and Par Digital assert that this court should turn to *Continental Western Ins. Co. v. Shultz,* 297 Kan. 769, 304 P.3d 1239 (2013), for guidance. In that case, Layne Steinert sustained injuries in a car accident with Christopher Shultz, a Great Bend police officer, while both men were in the course of their employment. When Steinert did not pursue a tort action, his right to do so was statutorily assigned to Continental Western Insurance Company, his employer's workers compensation carrier. Continental Western gave notice under K.S.A.2012 Supp. 12–105b to the City of Great Bend and filed suit in district court that same day. That lawsuit was dismissed as premature. Continental Western later filed a second, timely petition. The issue before our Supreme Court when the case reached it was whether the notice substantially complied with K.S.A.2012 Supp. 12–105b(d) despite the difference between the amount of damages claimed in the notice and the amount ultimately sought during litigation.

Although the ultimate analysis of our Supreme Court in *Continental Western* is not germane to the issue on appeal here, Debbrecht and Par Digital point out that it involved a similar procedural path: the K.S.A.2012 Supp. 12–105b(d) notice and an initial lawsuit were filed contemporaneously, the first lawsuit was dismissed for lack of jurisdiction, and a second lawsuit that complied with K.S.A.2012 Supp. 12–105b(d) was subsequently filed. Debbrecht and Par Digital argue the implication is that a second lawsuit is valid if compliant with the statute, regardless of the validity of the initial lawsuit, because our Supreme Court would not have reached the substantive issue in *Continental Western* if the second lawsuit was jurisdictionally invalid.

**\*8** The City cautions against reading too much into the procedural history of *Continental Western,* especially in light of the fact that the opinion contains no discussion of the first and second lawsuits. We agree with the City and place little weight on the fact that *Continental Western* proceeded to the merits of the issue on review without addressing the effect of the first, premature lawsuit on the second lawsuit.

In the end, neither party cites a Kansas appellate court decision that is directly on point. We must apply K.S.A.2013 Supp. 12–105b(d) to the facts before the court. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent and will not read into the statute something not readily found in it. *In re Tax Appeal of Burch,* 296 Kan. at 722. Simply put, the plain language of K.S.A.2013 Supp. 12–105b(d) contains no requirement that the waiting period between the notice and denial of claims be completely litigation free. Rather, the statute states that "[o]nce notice of the claim is filed, no action shall be commenced" until the municipality denies the claim or it is deemed denied by the passage of 120 days without approval. The proper remedy for disregarding this waiting period is dismissal of the premature lawsuit. See, *e.g., Sleeth,* 298 Kan at 871; *Continental Western,* 297 Kan. at 771.

Here, that is exactly what happened. The initial lawsuit, which was premature in relation to the notice letter, was dismissed by the federal court for that very reason. The lawsuit on appeal in this case is the second suit Debbrecht and Par Digital brought; it contains the same claims as the initial lawsuit but is timely with respect to the plain-language requirements of K.S.A.2013 Supp. 12–105b(d). We agree with Debbrecht and Par Digital that their initial notice letter and subsequent response from the City conferred subject matter jurisdiction on the court in the second civil action. Thus, the district court erred by dismissing the case for lack of jurisdiction under K.S.A.2013 Supp. 12–105b(d).

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

K.S.A.2013 Supp. 60-212(b)(6) Motion

The City and Morgan (collectively referred to as the City) assert that if this court finds that the district court erred in dismissing the lawsuit for failure to comply with K.S.A.2013 Supp. 12-105b(d), it should consider whether the district court was right for the wrong reason, *i.e.*, whether the district court should have dismissed for failure to state a claim upon which relief could be granted under K.S.A.2013 Supp. 60-212(b)(6). In addition, the City argues that Morgan and the City were immune from liability for all claims under the Kansas Tort Claims Act.

The City requested dismissal for failure to state a claim upon which relief could be granted in the district court, but because it dismissed for lack of jurisdiction, the district court did not reach this issue. Both parties agree that the issue presents only questions of law and that, for reasons of judicial efficiency, this court should decide the matter, rather than remanding to the district court. As this court has previously stated:

**\*9** "An appellate court may consider issues a district court has declined to review as moot in several circumstances. If the appellate court rejects the trial court's reasons for a dispositive ruling, in whole or in part, those 'moot' issues could provide an alternative basis to uphold the judgment. Thus, an appellate court may look at them because it will commonly affirm a lower court that has reached the correct result despite relying on an incorrect reason. [Citations omitted.]" *Estate of Belden v. Brown County,* 46 Kan.App.2d 247, 288, 261 P.3d 943 (2011).

"When a motion to dismiss raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of a plaintiff's petition. K.S.A. 60-212(b)(6). Dismissal is justified only when the plaintiffs allegations clearly demonstrate that plaintiff does not have a claim." *Hemphill v. Shore,* 295 Kan. 1110, 1117, 289 P.3d 1173 (2012). The court views the well-pleaded facts in a light most favorable to the plaintiff and assumes as true those facts and any inferences reasonably drawn from them. *Cohen v. Battaglia,* 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

*Malicious Prosecution*
First, the City argues that Debbrecht failed to state a claim for malicious prosecution. To show malicious prosecution, a plaintiff must prove the following elements: (1) the defendant instituted the proceeding about which the complaint is made; (2) that the defendant did so without probable cause; (3) that the defendant acted with malice; (4) the complained-of proceeding terminated in the plaintiff's favor; and (5) the plaintiff sustained damages. See *Wilkinson v. Shoney's, Inc.,* 269 Kan. 194, 203, 4 P.3d 1149 (2000); *Bezona v. Tomson,* 25 Kan.App.2d 210, Syl. ¶ 1, 960 P.2d 252 (1998).

The City concedes that it initiated a criminal proceeding against Debbrecht and that the proceeding terminated in Debbrecht's favor when the district court dismissed the charges against him. Likewise, the City does not address the third or fifth elements of a claim for malicious prosecution; instead, it focuses only on the probable cause element, arguing that collateral estoppel prohibits relitigation of the existence of probable cause. In the alternative, the City argues that probable cause is conclusively established as a matter of Kansas law.

During the first lawsuit, which included claims under 42 U.S.C. § 1983 (2012), the United States magistrate judge identified one of Debbrecht's federal claims as "one for malicious prosecution in violation of the Fourth Amendment." *Debbrecht v. City of Haysville, Kansas,* No. 10-1419-JAR-DJW, 2012 WL 1080527, at \*7, 10 (D.Kan.2012) (unpublished opinion). The elements of a claim for malicious prosecution under section 1983 are identical to those required under Kansas law, as listed above, including a requirement that the prosecution be undertaken without probable cause. See 2012 WL 1080527, at \*10.

**\*10** The magistrate judge explicitly found that because Debbrecht was convicted by the municipal court, "as a matter of law, Morgan's actions are backed by probable cause." 2012 WL 1080527, at \*10. The magistrate judge also found that "the fact that his conviction was reversed does not negate the existence of probable cause before the municipal court." 2012 WL 1080527, at \*10. Before the federal district court, Debbrecht did not allege any errors in the magistrate's report and recommendation; he only

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works.

asked the court to clarify whether the state law claims were dismissed without prejudice. Regarding the federal claims, the United States District Court adopted the report and recommendation and granted the City's motion for judgment on the pleadings.

The City claims that the doctrine of collateral estoppel precludes Debbrecht from now succeeding in an assertion that the City instituted the criminal proceedings against him without probable cause. Because this court is examining the preclusive effects of a federal court judgment, federal law controls as to the elements of collateral estoppel. See *Rhoten v. Dickson*, 290 Kan. 92, 113, 223 P.3d 786 (2010). Our Supreme Court has explained the elements required to establish collateral estoppel, also known as issue preclusion, under federal law as: (1) the previously decided issue must be identical to the one presented in the current action; (2) the previous action must have reached final judgment; (3) the same parties or parties in privity in the current and previous action; and (4) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue in the prior action. 290 Kan. at 113–14; see also *Bushco v. Shurtleff*, 729 F.3d 1294, 1301 (10th Cir.2013) (stating elements of issue preclusion).

The City cites *Estate of Belden*, 46 Kan.App.2d 247, to support its claim that the prior federal case conclusively established that the City had probable cause to proceed against Debbrecht in the criminal case. That case examined civil litigation brought by the heirs and estate of Jeffrey Ray Belden against Brown County, the Sheriff of Brown County, and two employees of the Brown County jail after Belden committed suicide while in custody at the jail. The plaintiffs filed suit in the United States District Court for the District of Kansas, alleging various state law tort claims and federal constitutional claims under 42 U.S.C. § 1983 (2000). The defendants moved for summary judgment, which the district court denied except as to the constitutional claims against the Brown County commissioners. The district court ruled that the sheriff and two employees were not entitled to qualified immunity on the constitutional claims. 46 Kan.App.2d at 255. The sheriff and one employee took an interlocutory appeal of the rulings on qualified immunity.

The United States Court of Appeals for the Tenth Circuit held that the plaintiffs had failed to present sufficient evidence to preclude summary judgment on two facts required by the constitutional claims: that the offending government actors knew Belden was suicidal and did nothing or were deliberately indifferent. On remand, the federal district court dismissed the constitutional claims against the remaining jail employee, which left only state law claims at issue. The defendants filed a motion urging the district court to decline jurisdiction over the state law claims; the district court granted the motion and dismissed the state law claims without prejudice. On appeal, the Tenth Circuit affirmed the district court's finding of qualified immunity and the dismissal of the state law claims. The plaintiffs then filed suit in Brown County District Court, reasserting their state law claims.

**\*11** In the second lawsuit, the Brown County District Court granted summary judgment to the defendants under the doctrine of collateral estoppel involving facts the Tenth Circuit found when deciding the interlocutory appeal and granting qualified immunity in the first lawsuit. On appeal, this court found that the district court properly applied collateral estoppel to give effect to the Tenth Circuit's factual finding that neither the sheriff nor any jail personnel had actual knowledge that Belden was suicidal or acted with deliberate indifference to Belden's situation. 46 Kan.App.2d at 266–67. However, this court went on to find that the district court's decision to credit those findings was not a legally sufficient basis to enter judgment for the defendants because neither of these factual findings precluded the plaintiffs' success on a negligence claim. 46 Kan.App.2d at 267.

The City contends that the doctrine of collateral estoppel requires the state district court presiding over the second lawsuit to credit the federal district court's finding in the first lawsuit that there was probable cause for Morgan to prosecute the case against Debbrecht. All of the elements of collateral estoppel are met: the previously decided issue is identical to the one presented in the current action—whether Morgan has probable cause to prosecute the lawsuit; the federal district court's dismissal of the federal claim for failure to show a Fourth Amendment violation based on malicious prosecution was a final judgment; Debbrecht, the party against whom the City is invoking the doctrine of collateral estoppel, was a party to the previous lawsuit; and Debbrecht had a full and fair opportunity to litigate the issue in the previous case. See *Rhoten*, 290 Kan. at 113–14 (listing elements of collateral estoppel).

Debbrecht asserts two reasons that collateral estoppel does not apply. First, Debbrecht argues that the federal district court's decision addressed only the federal claims and did not rule on the merits of the state law claims. This is exactly what occurred in *Belden,* however, and there it presented no problem. See also *Rhoten,* 290 Kan. at 113–18 (examining whether a federal court's finding that there was no causation barred a future state law claim that required a showing of causation). Debbrecht provides no authority for his assertion that a factual finding in a determination on the merits of the federal law claim would not control in subsequent litigation of the state law claim and does not explain why *Rhoten* and *Belden* are not instructive.

Second, Debbrecht argues that the petition in the second lawsuit differed from the petition in the first lawsuit, alleging additional facts; accordingly, Debbrecht contends, since the federal court in the first lawsuit considered only the allegations made in the first lawsuit, the state court in the second lawsuit should not be collaterally estopped by the federal court's decision. Again, Debbrecht cites no legal authority for this proposition. In addition, the federal court did not find that Morgan had probable cause based upon allegations that changed from the first to second petition. The federal court based its finding that there was probable cause on the fact that Debbrecht was convicted in municipal court, a fact that has not changed from the first lawsuit to the second.

**\*12** Debbrecht's arguments against collateral estoppel are unpersuasive. The federal district court found as a matter of law that Morgan's actions were supported by probable cause. The doctrine of collateral estoppel precludes Debbrecht from now succeeding in an assertion that the City instituted the criminal proceedings against him without probable cause, which is a necessary element in the claim of malicious prosecution. We do not need to address the City's alternative argument that probable cause is conclusively established as a matter of Kansas law. Accordingly, we find that the district court should have dismissed Debbrecht's malicious prosecution claim for failure to state a claim upon which relief could be granted.

*Abuse of Process*

Next, the City contends that Debbrecht and Par Digital failed to state a claim for abuse of process. Conversely, Debbrecht and Par Digital maintain that their petition established a claim for abuse of process upon which relief could be granted. They argue that the gist of an abuse of process claim is not the commencing of an action or causing process to issue without justification but misusing or applying process justified in itself for an end other than that which it was designed to accomplish.

Under Kansas law, the essential elements of an action for abuse of process are a knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship, which resulted in damage to the plaintiff. *Bloom v. FNU Arnold,* 45 Kan.App.2d 225, 230, 248 P.3d 752 (2011). Stated differently, the essential elements required to sustain an action for abuse of process are:

"(1) That the defendant made an (illegal) (improper) (unauthorized) use of the process; and

"(2) That the defendant had knowledge of the (illegal) (improper) (unauthorized) use of the process; and

"(3) That it was done for the purpose of (harassing) (causing great inconvenience) (causing great hardship) to the plaintiff; and

"(4) That the plaintiff sustained damage as a result." PIK Civ. 4th 127.80.

The City focuses on the first element and argues that the plaintiffs, Debbrecht and Par Digital, have failed to allege any use of process that was illegal, improper, or unauthorized. Although the plaintiffs belabor their theory that the City and Morgan acted with an ulterior motive, the City argues that allegation goes to an element of their cause of action that is entirely separate and distinct from the requirement that there be an illegal, improper, or unauthorized use of process.

Regarding the abuse of process claim, Debbrecht and Par Digital asserted the following claims in their petition:

"44. The defendants made an illegal, improper and unauthorized use of a criminal complaint and other judicial process against the plaintiffs Debbrecht and Par Digital in violation of the plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment (no person shall be deprived of life, liberty or [sic] without due process of law).

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

**\*13** "45. The defendants instituted a criminal proceeding against the plaintiff Debbrecht by coercion to obtain a collateral advantage, with an ulterior motive, the turning off of the sign by Par Digital during prohibited hours. This motive was not properly involved in the proceeding itself, as admitted by Ms. Morgan during her testimony. Her testimony in this regard was relied upon in argument by the City Attorney and formed the basis for Debbrecht's conviction by the pro tem judge.

"46. The criminal citation was not used for the purpose for which it was designed and intended, to punish Debbrecht or compel his compliance with the City code.

"47. The defendants had knowledge of the illegal, improper and unauthorized use of the process.

"48. The prosecution of the plaintiff Debbrecht was done for the purpose of harassing him, causing great inconvenience and causing great hardship for the ulterior motive of causing Par Digital to turn off its sign during hours prohibited by an illegal and inapplicable City ordinance.

"49. As a result of the defendants' abuse of process, the plaintiff Debbrecht has suffered economic and non-economic damages, all in an amount exceeding $75,000 and the plaintiff Par Digital has suffered economic loss [in] an amount in excess of $75,000."

The testimony referred to in paragraph 45 is presumably the testimony alleged earlier in the petition in paragraph 27:

"27. Morgan testified she had received the letter from Par Digital advising her that Par Digital owned, operated and controlled the sign. She spoke to someone from Par Digital about the operation of the sign. She knew the sign was not controlled by Tom Debbrecht. She knew the areas illuminated by the sign were outside the City. With knowledge that the sign did not illuminate any residential district within the City and Debbrecht did not control or operated [*sic* ] the sign, she issued a citation to him. She issued the citation to Debbrecht instead of Par Digital because she did not know how to issue a citation to Par Digital, an out of state corporation."

Debbrecht was prosecuted in Haysville Municipal Court for violating City Code § 16B–203 which at that time stated in part:

"(e) *Illuminated Signs.* Signs shall be shaded wherever necessary to avoid casting bright light upon property located in any residential district or upon any public street or park. Any brightly illuminated sign located on a lot adjacent to or across the street from any residential district, which is not otherwise shaded and visible from such residential district, shall not be illuminated between the hours of 11 P.M. and 6 A.M. Any accessory external lighting fixtures attached to a sign shall maintain a clearance of nine feet to the grade directly below the fixture."

Debbrecht and Par Digital argue that the improper use of process was Morgan's issuing the complaint against Debbrecht despite her knowledge that he did not control the sign. But the city ordinance clearly applied to Debbrecht because the sign was located on his lot which was adjacent to or across the street from a residential district. Contrary to the plaintiffs' argument, the City cannot be liable for abuse of process simply because Morgan knew that Debbrecht did not control the sign.

**\*14** Next, Debbrecht and Par Digital allege that the criminal citation was not used for the purpose for which it was designed and intended, to punish Debbrecht or compel his compliance with the city code. But the criminal citation was used precisely for that purpose. After hearing the evidence, the Haysville Municipal Court convicted Debbrecht and sentenced him to 6 months' imprisonment and a fine of $500. The municipal court agreed to suspend the sentence and commute it to probation if the prohibited illumination stopped within 10 days. On the next day, the sign was turned off from 11 p.m. to 6 a.m. and has remained off during those hours in compliance with the ordinance. Debbrecht and Par Digital cannot claim that the City and Morgan misused process in order to accomplish an end other than that which it was designed to accomplish.

*Clerk of the District Court, Johnson County Kansas*
*12/17/20  01:01pm ST*

We agree with the City that Debbrecht and Par Digital have failed to allege any use of process that was illegal, improper, or unauthorized. Such an allegation is an essential element of a claim for abuse of process. Accordingly, we find that the district court should have dismissed the abuse of process claim for failure to state a claim upon which relief could be granted.

*Tortious Interference with Contract*

Finally, the City argues that Debbrecht and Par Digital failed to state a claim for tortious interference with contract. The parties do not agree on the elements required to prove this claim. The elements Debbrecht and Par Digital list in their appellate brief are those required to prove a claim of tortious interference with a prospective business advantage or relationship, not tortious interference with a contract. See *Cohen,* 296 Kan. at 546. The City's proposed list of elements matches our Supreme Court's recent statement that "[t]he elements of tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) the intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. [Citation omitted.]" 296 Kan. at 546.

The City first contends that Debbrecht and Par Digital's petition failed to allege a breach of contract, which is required to show the third element of tortious interference with contract: that the City intentionally procured a breach of the contract. In the alternative, the City argues that its actions were reasonably justified.

In response to the City's first argument, Debbrecht and Par Digital assert that an actual breach of contract is not required and reiterate the elements for what they term "interference with an existing contract" but what our Supreme Court calls the tort of interference with a prospective business advantage or relationship:

" '(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) but for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct.' [Citation omitted.]"
**\*15** See *Cohen,* 296 Kan. at 546 (listing these elements as proving tortious interference with a prospective business advantage or relationship).

It is disingenuous for Debbrecht and Par Digital to argue on appeal that their petition is sufficient because it meets all the elements for a claim of interference with a prospective business advantage or relationship. In the pleadings to the district court, Debbrecht and Par Digital clearly argued that this claim alleged facts sufficient to show tortious interference with contract. Debbrecht and Par Digital listed the elements of tortious interference with contract in the petition, including the element requiring "the defendant's intentional bringing about of [the contract's] breach." Because Debbrecht and Par Digital presented a claim in district court for tortious interference with contract, they cannot argue on appeal that their petition is sufficient because it meets the elements for a claim of tortious interference with a prospective business advantage or relationship.

Regarding the claim for "tortuous interference," Debbrecht and Par Digital asserted the following claims in their petition:

"51. At all times material hereto there existed a contract between the plaintiffs for the lease of the Property and the erection, maintenance, operation and illumination of outdoor advertising structures, to-wit: the sign, on the Property.

"52. The defendants had knowledge of the Agreement.

"53. The defendants acted to intentionally bring about a breach of the Agreement.

"54. The defendants acted without justification.

"55. The conduct of the defendants was in violation of the plaintiffs' constitutional substantive and procedural due process rights under the Fourteenth Amendment (no person shall be deprived of life, liberty or [*sic*] without due process of law).

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

"56. The acts of the defendants resulted in damages to the plaintiffs, including economic damages caused by the illegally coerced turning off of the sign during the hours 11 P.M. to 6 A.M. and legal fees incurred by Par Digital for the defense of the plaintiff Debbrecht, as required by the terms of the Agreement, all in an amount in excess of $75,000."

As the City contends, the petition clearly does not allege any facts that would constitute a breach of the contract between Par Digital and Debbrecht, which, by the language of the petition, is the contract with which they allege the City interfered. The petition states that the City's actions amounted to "tortious interference in the contract between Debbrecht and Par Digital," yet the only breach specifically alleged is of "advertising contracts with third parties because the sign was turned off." The petition also alleges that "[t]he acts of the defendants resulted in a substantial failure of the plaintiff Par Digital's performance under the Agreement," because "[t]he sign was turned off for seven hours each day pending the appeal of Debbrecht's conviction," but continues to quote language from the lease agreement setting out what would occur if the law or another cause beyond Par Digital's control prevented it from illuminating the sign. The petition does not explain how this constitutes a breach of contract.

*16 In the petition, Debbrecht and Par Digital failed to set out the facts that allegedly established a breach of contract between the parties. The failure to allege a breach of contract leaves that element utterly unsatisfied and creates a claim upon which Debbrecht and Par Digital could not obtain relief. We do not need to address the City's alternative arguments regarding reasonable justification for the City's actions. Accordingly, we find that the district court should have dismissed the tortious interference with contract claim for failure to state a claim upon which relief could be granted.

In summary, viewing the well-pleaded facts in a light most favorable to Debbrecht and Par Digital, the allegations clearly demonstrate that the plaintiffs do not state sufficient claims for malicious prosecution, abuse of process, and tortious interference with contract. As a result, we do not need to address the City's additional argument that Morgan and the City were immune from liability under the Kansas Tort Claims Act. We find that the district court should have dismissed the lawsuit for failure to state a claim upon which relief could be granted. Thus, we affirm the district court's judgment as being right for the wrong reason. See *Hockett v. The Trees Oil Co.*, 292 Kan. 213, 218, 251 P.3d 65 (2011) (if district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision).

Affirmed.


BRUNS, J., concurring in part and dissenting in part.
I concur in the result reached by the majority. In particular, I agree that the district court's dismissal of this case should be affirmed based on the failure to state a claim upon which relief could be granted. But I respectfully dissent from the majority's conclusion that the district court erred in dismissing the case for lack of jurisdiction under K.S.A.2013 Supp. 12-105b(d).

As the majority recognizes, the plain and unambiguous language of K.S.A.2013 Supp. 12-105b(d) requires that "[o]nce notice of the claim is filed, *no action shall be commenced* until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." (Emphasis added.) Further, the statute provides "*[n]o person may initiate an action* against a municipality unless the claim has been denied in whole or part." (Emphasis added.) Indeed, "[t]he specific provisions of K.S.A. 12-105b(d) require written notice of claims by persons alleging injury from acts of municipalities as *a jurisdictional prerequisite* (condition precedent) to commencing a lawsuit under the Kansas Tort Claims Act." (Emphasis added.) *Gessner v. Phillips County Comm'rs*, 270 Kan. 78, Syl. ¶ 1, 11 P.3d 1131 (2000); see *Christopher v. State*, 36 Kan.App.2d 697, Syl. ¶ 1, 143 P.3d 685 (2006).

"It is clear that the legislature intended that failure to provide the appropriate notice must be construed to preclude claimants from commencing a legal action." *Gessner*, 270 Kan. at 82. If a plaintiff fails to meet this condition precedent, "the action [is] void *ab initio*, given the district court's lack of jurisdiction." *Christopher*, 36 Kan.App.2d 697, Syl. ¶ 3. Accordingly, the notice of claim requirement in K.S.A.2013 Supp. 12-105b(d)—both on its face and as interpreted by the Kansas Supreme Court—is

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

intended to afford a municipality an opportunity to review and investigate tort claims asserted against it and to approve, deny, or settle such claims before being forced into litigation. Here, the City was never given that opportunity.

**\*17** Understandably, and as the majority notes, the Kansas Supreme Court has allowed for substantial compliance with the provisions of K.S.A.2013 Supp. 12–105b(d) to be sufficient in certain situations. But a review of the record in the present case reveals that the Debbrecht and Par Digital (collectively referred to as Debbrecht) never complied—substantially or otherwise —with the statutory procedural requirements. Instead, as the notice of claim letter the City received on November 19, 2010, expressly states: "Concurrently with the service of this notice, a petition setting out these claims has been filed in Sedgwick County District Court...." Moreover, Debbrecht's attorney confirmed during oral argument that a legal action had in fact been filed against the City on the same day that the plaintiffs served their notice of claim under K.S.A.2013 Supp. 12–105b(d). Thus, the notice of claim was invalid.

To this day, Debbrecht has never served the City with a valid notice of claim nor has the City had any time to consider Debbrecht's claims without having to also defend one or more lawsuits. Rather, ever since service of the invalid notice of claim, the City has continuously been forced to defend itself in one or more lawsuits. Even when his failure to comply with the jurisdictional prerequisites set forth in K.S.A.2013 Supp. 12–105b(d) was brought to Debbrecht's attention in the first lawsuit, Debbrecht did not dismiss the action or seek to stay it in order to serve a valid notice of claim. To the contrary, Debbrecht compounded the problem by filing a second lawsuit—alleging identical federal and state claims—and continued to litigate the first lawsuit.

Consequently, I must disagree with the majority's conclusion that the invalid notice of claim and the subsequent response letter from the City conferred jurisdiction in the second civil action. The letter from the City's attorney dated March 17, 2011, accurately informed Debbrecht's attorney that the notice of claim, "which was served on the same day that you filed suit against the City and Jeana Morgan, is invalid because it does not comport with the procedures and requirements of K.S.A. 12–105b, and is hereby rejected." And we should not excuse Debbrecht's blatant disregard for the procedures set forth in K.S.A.2013 Supp. 12–105b(d) simply because the City's attorney went on to "note" that the purported claims asserted in the invalid notice of claim and in the first lawsuit "are without merit, for the reasons set forth in the Memorandum in Support of Defendants' Motion for Judgment on the Pleadings," filed in the first lawsuit.

As indicated above, at the time the City's attorney sent the letter to Debbrecht's attorney, the parties were still litigating the first lawsuit that had been removed to federal court. In addition, Debbrecht continued to actively prosecute the first lawsuit even after filing the second lawsuit on June 14, 2011. In fact, it was not until March 29, 2012, that the federal court involuntarily dismissed the first lawsuit.

**\*18** In other words, by the time the City's attorney sent his letter to Debbrecht's attorney, the City had already been forced to defend the first lawsuit for nearly 4 months; and it had to continue defending it—plus the second lawsuit—for an additional year. Consequently, Debbrecht's continuing disregard for the jurisdictional prerequisites set forth in K.S.A.2013 Supp. 12–105b(d) resulted in the City being required to defend two lawsuits without ever receiving a valid notice of claim.

In summary, the Kansas Supreme Court has consistently held that a notice of claim and the subsequent review period is intended to provide a municipality with "an opportunity to review and investigate tort claims against it and to approve or deny such claims before having to litigate an action under the Kansas Tort Claims Act." *Cummings v. City of Lakin*, 276 Kan. 858, 863, 80 P.3d 356 (2003). Here, Debbrecht filed the initial lawsuit on the same day that he served the City with an invalid notice of claim and he filed a second lawsuit that overlapped the first for more than 9 months. As such, the City has not even been afforded a single day—much less 120 days—to consider Debbrecht's claims without being forced to defend itself in court. Thus, I would affirm the district court's dismissal of this action in its entirety.

## All Citations

328 P.3d 585 (Table), 2014 WL 3397180

*Clerk of the District Court, Johnson County Kansas*
*12/17/20 01:01pm ST*

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.: 20CV03451** |
| | ) | |
| vs. | ) | **Div. 4** |
| | ) | |
| **THE BOARD OF COUNTY** | ) | |
| **COMMISSIONERS OF THE** | ) | |
| **COUNTY OF JOHNSON,** | ) | |
| | ) | |
| Defendant. | | |

### DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE REPLY IN SUPPORT OF MOTION TO DISMISS

COMES NOW Defendant, The Board of County Commissioners of the County of Johnson, and hereby respectfully moves the Court for an extension of time to file its Reply in Support of Motion to Dismiss to January 11, 2021. In support thereof, the Defendant states the following:

1. Plaintiff filed her Petition on August 14, 2020.

2. Defendant was served with the Petition on November 16, 2020.

3. Defendant filed its Motion to Dismiss and Suggestions in Support on December 3, 2020.

4. Plaintiff filed his Response to Defendant's Motion to Dismiss on December 17, 2020, but Defendant did not receive notice of the filing until December 22, 2020.

5. Although it is unclear, Defendant believes the deadline to file a Reply in Support of its Motion to Dismiss may be as early as December 24, 2020.

6. Due to the holidays, the undersigned needs additional time to draft the Reply and will be out of the country from December 27 until December 31.

6. Accordingly, Defendant seeks an extension of time to file its Reply in Support of

Motion to Dismiss until January 11, 2021.

7.      Plaintiff's counsel has indicated that Plaintiff does not object to this request.

8.      The extension is not requested for the purpose of delay, and will not prejudice either party.

WHEREFORE, Defendant respectfully requests an extension to January 11, 2021, to file its Reply in Support of Motion to Dismiss.

Respectfully submitted,

/s/ Jeannie M. DeVeney

Jeannie M. DeVeney, KS #17445
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEYS FOR DEFENDANT

2

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2020, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeannie M. DeVeney*
ATTORNEY FOR DEFENDANT

*Clerk of the District Court, Johnson County Kansas*
*12/23/20 10:17am NG*

123

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

CHARMAINE ELVEN,          )
                                 )
            Plaintiff,      )     **Case No.: 20CV03451**
                                 )
      vs.                 )     **Div. 4**
                                 )
THE BOARD OF COUNTY     )
COMMISSIONERS OF THE     )
COUNTY OF JOHNSON,        )
                                 )
            Defendant.

### ORDER

NOW on this ___ day of _____, 2020, comes before the Court, Defendant's Unopposed Motion for Extension of Time to File Reply in Support of Motion to Dismiss. For the reasons set forth herein and for good cause shown the Court hereby grants the Motion. The Defendant is hereby granted an extension to January 11, 2021, in which to file its Reply in Support of Motion to Dismiss.

IT IS SO ORDERED.

/s/ PAUL GURNEY
Dated: 12/29/20

Date: _____

_____
Rhonda K. Mason
Judge of the District Court
Division 4

### IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### CIVIL DEPARTMENT

CHARMAINE ELVEN,        )
                                   )

           Plaintiff,     )     **Case No.: 20CV03451**

       vs.              )

                                   )     **Div. 4**

THE BOARD OF COUNTY     )
COMMISSIONERS OF THE     )
COUNTY OF JOHNSON,      )
                                   )

       Defendant.

### <u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

In an effort to avoid the fatal flaws to her claim, Plaintiff has made multiple misrepresentations about both the law and her own allegations. Plaintiff repeatedly makes statements in her Opposition that are provably false. She also makes small changes to words that have significant legal effect in an apparent attempt to hide the reality of the situation from Defendant and from the Court.

Upon a review of the *actual* allegations in Plaintiff's Petition, and the *actual* holdings of the relevant cases, the conclusions are clear. First, Plaintiff did not comply with the notice requirements of the Kansas Tort Claims Act ("KTCA"). To this day, she has not provided the County with the required notice. Rather, she simply filed a case in federal court with *no* notice to the County, in direct contravention of the requirements of the KTCA. After later realizing this fatal flaw, Plaintiff argues that the federal lawsuit *was* the required notice. On top of turning the statutory scheme on its head, in making this argument, Plaintiff has represented to this court that the Court of appeals has recognized "a premature lawsuit … as sufficient to substantially comply with Section 12-105b." (Pltf's Opp., p. 1). That representation is false. Neither case Plaintiff cites

stands for that proposition. Plaintiff's failure to provide the required notice is fatal to her claim, and her Petition should be dismissed for lack of jurisdiction for this reason alone.

Second, even if Plaintiff had provided notice on March 2, 2020, that notice would have been untimely as to three of the alleged retaliatory acts Plaintiff now asserts. Those acts accrued on or before February 22, 2018.

In addition, several of the acts Plaintiff now asserts as retaliatory cannot serve as the basis for her claim for a variety of reasons. First, they are not "employment actions," as required by the case law. Second, two of the acts were not included as retaliatory acts in the federal lawsuit (which Plaintiff now claims served as Defendant's notice). Third, the case law is clear that Plaintiff cannot base a public policy retaliation claim on the County's decision to contest her unemployment claim.

Finally, even ignoring all of these problems, Plaintiff waited 91 days after the alleged "denial" of her claim to file the Petition in this case, making the Petition untimely for this additional reason.

## I. PLAINTIFF'S MISREPRESENTATIONS AND MISLEADING TACTICS

In her Opposition, Plaintiff states that at the February 22, 2018 meeting, "Fletcher told Plaintiff that Defendant County *would be* requesting that the District Attorney for Johnson County pursue criminal charges against Plaintiff." (Pltf's Opp., p. 3) (emphasis added). In support of this statement, Plaintiff cites Paragraph 90 of her Petition.

Paragraph 90 of the Petition *actually* states: "Fletcher informed Plaintiff that Defendant *had* advised the District Attorney for Johnson County, Kanas to pursue criminal charges against Plaintiff for theft." (Pet. ¶ 90) (emphasis added). In other words, Plaintiff attempts to make this Court believe that Fletcher (allegedly) asked the District attorney to pursue criminal charges

sometime *after* February 22, 2018. She does so in an attempt to make allegations related to that action timely. But it is a blatant misrepresentation of her own allegation.

Next, Plaintiff's Opposition states: "Defendant Fletcher handed Plaintiff a memorandum which memorialized what had been said [at the February 22, 2018 meeting]." (Pltf's Opp., p. 3). In support of this statement, Plaintiff cites Paragraphs 91-93 of her Petition. In actuality, those Paragraphs state:

- Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff. (Pet. ¶ 91).

- The memorandum had been written by Fletcher prior to hearing from Plaintiff on February 22, 2018. (Pet. ¶ 92).

- In the memorandum, it stated, "[Defendant] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working." (Pet. ¶ 93).

Thus, those Paragraphs allege – in a crystal clear manner – that Plaintiff was discharged on February 22, 2018 and that the allegations about her submitting time records for work she did not perform (which she claims are false) occurred *before* February 22, 2018.

Next, Plaintiff's Opposition states: "Plaintiff's discharge was not effective until March 1, 2018 – five business days after the meeting." (Pltf's Opp., p. 3). In support of this statement, Plaintiff cites Paragraph 98 of her Petition. Paragraph 98 of the Petition *actually* states: "Plaintiff was given five business days, up to and including March 1, 2018, to determine whether she would appeal the decision of Defendant." (Pet. ¶ 98).[1]

In an effort to imply that Defendant agrees that the decision to terminate Plaintiff's employment was made sometime after February 22, 2018, Plaintiff cites to Defendant's responses to Paragraphs 84 and 90 in its Answer to Plaintiff's federal Complaint. (*See* Pltf's Opp. pp. 4-5).

---

[1] Notably, this Paragraph was not included in the federal Complaint. (Ex. 1, to Defendant's Motion).

Those responses, however, simply state that the decision was made *during* the meeting. (Ex. A to Pltf's Opp., ¶¶ 84 and 90).

## II.   KEY FACTUAL ALLEGATIONS IN PLAINTIFF'S PETITION

As discussed, below, this Court does not need to reach the question of whether Plaintiff's alleged "notice" was timely served on Defendant because Plaintiff never served the notice required by the KTCA at all. Assuming that the federal Complaint could count as that notice, however, Plaintiff's Petition in this case clearly alleges that the termination decision was made and communicated on February 22, 2018, making Plaintiff's service of the federal complaint on March 2, 2020 plainly untimely.

Specifically, Paragraph 85 states: "Plaintiff realized that this was not a 'meeting' for follow-up questions, but a hearing upon which her employment status would be decided." (Pet. ¶ 85). The meeting referenced in Paragraph 85 occurred on February 22, 2018 (*see* Pet. ¶ 82) and illustrates that Plaintiff was well aware that February 22, 2018 was the date her employment status was decided.[2]

Similarly, Paragraph 91 states that Fletcher "presented Plaintiff with a written memorandum discharging Plaintiff" in that same meeting." (Pet. ¶ 91).

## III.  NEW ALLEGATIONS IN PLAINTIFF'S PETITION

The vast majority of Plaintiff's Petition is a word-for-word replication of her federal Complaint. A careful review, however, shows two key additions. First, Paragraph 123 of Plaintiff's Petition is absent from plaintiff's federal Complaint. That Paragraph states:

> The destruction of exculpatory evidence, done well after Defendant knew it would be requesting a criminal case to be opened, constitutes further retaliation by Defendant against Plaintiff.

---

[2] Plaintiff conveniently omits reference to Paragraph 85 in her recitation of the facts.

(Pet. ¶ 123).

Second, Paragraph 129 of Plaintiff's Petition corresponds to Paragraph 124 of Plaintiff's

federal Complaint, but the Petition includes new claims. Paragraph 129 of Plaintiff's Petition is

quoted below. The bolded language *was not* included in the federal Complaint.

> Defendant took adverse employment actions against Plaintiff, including but not
> limited to discharging Plaintiff from employment, making false allegations
> regarding Plaintiff's work, **requesting criminal charges be brought against
> Plaintiff, destroying exculpatory evidence identified by Plaintiff,** and
> opposition Plaintiff receiving unemployment benefits.

(Pet. ¶ 129) (emphasis added).

By adding Paragraph 123 and the new language in Paragraph 129, Plaintiff is now asserting

new acts of retaliation. Since she did not make those allegations in the federal Complaint, she did

not put the County on notice of those claims, even if the federal Complaint could count as "notice."

## IV.    ARGUMENT

### A.    <u>Plaintiff's Federal Lawsuit is Not Notice Under K.S.A. § 12-105b(d).</u>

In addition to misrepresenting her own allegations, Plaintiff has also misrepresented the

law. The argument section of her Opposition, Plaintiff makes the following statements:

- "Plaintiff has substantially complied with the notice requirements of the Kansas
  Tort Claims Act ("KTCA") **in a way that has been recognized as appropriate by
  the Kansas Court of Appeals**." (Pltf's Opp., p. 6) (emphasis added).

- "The Kansas Court of Appeals has held that an improperly filed lawsuit, if cured
  via a later filing, can constitute sufficient notice for purposes of KTCA." (Pltf's
  Opp., p. 7).

- "These cases recognize that prematurely filed lawsuits cannot be 'lawsuits'
  pursuant to Section 12-105b(d), **and thus can be notices under that law**." (Pltf's
  Opp., p. 7) (emphasis added).

- "The Court of Appeals found that the trial court erred in holding that the first
  lawsuit could not constitute notice." (Pltf's Opp., p. 8).

In support of each of these statements, Plaintiff cites *Debbrecht v. City of Haysville*, 2014 WL 3397180 (Kan. Ct. App. July 11, 2014) and/or *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 78, 221 P.3d 1157 (Kan. App. 2010). Neither of these cases supports *any* of the statements listed above. In both *Debbrecht* and *Steed*, the plaintiff sent a notice of claim letter to the defendant and *also* filed a premature lawsuit. The *Debbrecht* plaintiff then filed a second lawsuit (after the City denied the claim). The *Steed* plaintiff filed an amended petition after the expiration of 120 days required by the KTCA. The question in those cases was whether the fact that the plaintiffs filed premature lawsuits – in addition to sending claims letters – nullified the letters.

Here, Plaintiff did not send a notice of claim letter at all. She simply filed a federal lawsuit. Plaintiff's representation that the Court of Appeals has held that a premature lawsuit can constitute notice is blatantly false. In fact, the Court of Appeals has never been presented with that question.

The KTCA very clearly requires that an individual "file a written notice as provided in this subsection before commencing [an] action ...." Kan. Stat. Ann § 12-105b(d). The plaintiff is in *Debbrecht* and *Steed* did that.[3] Plaintiff in this case did not. Rather, she filed a federal complaint (served after her statute of limitations expired) and is now attempting to retroactively fit it into the notice requirements of Kan. Stat. Ann. § 12-105b(d). Plaintiff has presented no case law to support her position that a prematurely-filed lawsuit can function *as a replacement* for proper notice under the statute.

Citing *Myers v. Board of Cnty Comm'rs of Jackson Cnty*, 280 Kan. 862, 127 P.3d 319 (2006), Plaintiff argues that the Court should find that she substantially complied with the notice

---

[3] In *Debbrecht*, the letter was sent on the same day the lawsuit was filed, but in both cases a separate letter was sent.

requirements. This argument glosses over the fact that Plaintiff provided no notice at all. Far from her compliance being "substantial," it is completely absent.

Moreover, the Plaintiff's "substantial compliance" argument suggests that courts only require an action that results in actual notice being given. That suggestion is belied by *Myers* itself. In that case, the plaintiff provided notice to the County Counselor, who promptly forwarded it to the Board of County Commissioners. Despite the fact that the County had actual notice of the claim, the Kansas Supreme Court rejected the argument that the plaintiff had complied with the KTCA's notice requirements.

Finally, Plaintiff's federal lawsuit did not include allegations that Defendant retaliated against Plaintiff by requesting the District Attorney to file criminal charges or by destroying exculpatory evidence. Thus, even if the federal complaint could serve as notice under the KCTA, it cannot possibly serve as notice of those claims.

**B.**     <u>Plaintiff's Claims Are Untimely And/Or Otherwise Not Actionable.</u>

Because Plaintiff did not serve Defendant with the notice required by the KTCA, no further analysis is required. Assuming, *arguendo*, that Plaintiff's federal Complaint could count as "notice," however, Plaintiff's claim still fails for a variety of reasons. Plaintiff's Petition in this case alleges five retaliatory acts: (1) termination; (2) making false allegations regarding Plaintiff's work; (3) requesting criminal charges be brought against Plaintiff; (4) destroying exculpatory evidence identified by Plaintiff; and (5) opposing Plaintiff's unemployment claim. (Pet. ¶ 129).

The first three allegedly retaliatory acts are time-barred. The third and fourth allegedly retaliatory acts were not included in Plaintiff's alleged "notice." In addition, public policy retaliation claims in Kansas relate only to employment actions. Of the retaliatory acts Plaintiff

alleges, only her termination is an employment action. Finally, the case law makes clear that disputing an unemployment claim cannot serve as the basis for a retaliation claim.

## 1. Plaintiff's termination and "false allegations" claims are untimely.

In her Opposition, Plaintiff acknowledges that she was required to serve the County with notice of her intent to file a claim within two years of the date her claim arose. In an effort to save her termination claim, Plaintiff argues that her injury was not actionable until the date her termination was effective, rather than the date she learned of her termination. In so doing, she plucks quotes out of cases without providing context. In actuality, the cases she cites support Defendant's position, not Plaintiff's.

As noted above, Plaintiff knew the meeting on February 22, 2018, was "a hearing upon which her employment status would be decided." (Pet. ¶¶82-85). Plaintiff also acknowledges that she received "a written memorandum discharging her from her employment" in that meeting. (Petition, ¶ 91). In addition, Plaintiff acknowledges that the same memorandum stated that Defendant had been "unable to find any significant evidence of actual work product that [Plaintiff] completed to demonstrate [Plaintiff was], in fact, working." (Petition, ¶ 93).

*Johnston v. Famers Alliance Mut. Ins. Co.*, 218 Kan. 543, 545 P.2d 312 (1976), cited by Plaintiff (and by Defendant), specifically held that the plaintiff's cause of action accrued when he received notice of his termination, not when it became effective. 218 Kan. at 548, 545 P.2d at 317. ("By his own testimony plaintiff knew he was being terminated by Alliance on March 3, 1972 ... The acts causing plaintiff's injury occurred on or before March 3, 1972, and any cause of action plaintiff had against [defendants] could have been brought after that date.")

In *Whye v. City Council for City of Topeka*, 278 Kan. 458, 102 P.3d 384 (2004), the plaintiff argued that his cause of action accrued on his last day of employment, rather than the day he

8

announced his retirement, because he could have changed his mind about retiring and/or the employer could have decided not to accept his early retirement. The Kansas Supreme Court rejected that argument, finding that his cause of action accrued on the date the plaintiff announced his retirement. 278 Kan. at 464, 102 P.3d at 461.[4]

*Johnston* and *Whye* plainly demonstrate that Plaintiff's retaliation claim accrued on February 22, 2018. Defendant also "made false allegations" (according to Plaintiff) about Plaintiff's work on or before that date. Finally, Plaintiff's Petition alleges that Defendant informed her on February 22, 2018 that Defendant had already advised the District Attorney to pursue criminal charges against Plaintiff. As such, she was required to provide notice of these three acts of alleged retaliation by February 22, 2020. Kan. Stat. Ann. § 60-513(a)(4). Even assuming the federal lawsuit could count as notice under the KTCA, Plaintiff admittedly did not provide that notice until March 2, 2020. Thus, all of those claims are untimely.[5]

### 2. Allegations about criminal prosecution and evidence destruction were not included in Plaintiff's "notice."

In addition to the fact that the allegations related to requesting criminal prosecution are untimely, they also were not included as allegations of retaliation in the "notice," i.e. the federal Complaint. (Ex. 1 to Defendant's Motion). The same is true of allegations that Defendant destroyed evidence in retaliation for Plaintiff's alleged protected activity. *Id.* Although the federal Complaint includes reference to these "facts," it does so in the context of the constitutional claims, not in the context of alleged retaliation – the only claim asserted in this case.

---

[4] Plaintiff also cites to *Kansas Nat'l Educ. Ass'n v. State* for the proposition that judicial power is limited to "actual cases and controversies." 305 Kan. 739, 743. The facts of the case are entirely distinguishable, and even so, support Defendant's position more readily than Plaintiff's.

[5] As noted above, Plaintiff's argument that Defendant has stated the decision was subject to change as of the time that the February 22, 2018 meeting *was scheduled* and could have changed based on that meeting is of no consequence. The fact is, according to Plaintiff's own Petition, the decision was made and communicated on that day.

### 3. Public Policy Retaliation Claims in Kansas relate only to Employment Actions.

In order to state a claim for public policy retaliation, Plaintiff must demonstrate: 1) she exercised rights protected by public policy; 2) Defendant had knowledge that she exercised such rights; 3) Defendant subjected her to an adverse employment action; and 4) a causal connection existed between the protected activity and the subsequent employment action. *Hill v. State*, 310 Kan. 490, 514, 448 P.3d 457, 474 (citing *Rebarchek v. Farmers Co-op Elevator*, 272 Kan. 546, 554 (2001) and *Campbell v. Husky Hogs*, 292 Kan. 225, 235 (2011)).

Even accepting Plaintiff's allegations as true, the only employment action she even alleges is her termination. Thus, Plaintiff cannot state a claim as to any of the remaining retaliatory acts, even if she had given proper notice, and they were timely. *See Hill*, 310 Kan. at 505, 448 P.3d at 469 (A common law-retaliation claim "may be premised on any *employment action* that is materially adverse to a reasonable employee ...") (emphasis added).

### 4. Retaliation cannot be premised on contested unemployment benefits.

Even if Plaintiff had properly served notice of her claim, she could not base a retaliation claim on Defendant's decision to contest her claim for unemployment benefits. An employer in Kansas has an absolute right to contest an unemployment compensation claim that the employer has reason to believe is without merit, and is indeed required to provide the Department of Labor with the reason for the employee's termination. *See* Kan. Stat Ann. §§ 44-709 and 44-706(b)(3)(A) (listing "theft" as "gross misconduct" that disqualifies an individual from receiving unemployment benefits).

If the employer's contest is premised on knowingly false information, there are statutory provisions imposing penalties for such conduct. As such, the Kansas Supreme Court has rejected the argument that the denial of unemployment benefits can form the basis of a retaliation claim.

*Clerk of the District Court, Johnson County Kansas*
*01/08/21 04:46pm ML*

*See* Kan. Stat. Ann. § 44-719(b); *see also Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 205 (2000) (finding there is no public policy justification to create a cause of action against an employer for defending an unemployment compensation claim when adequate statutory remedies are available).

**C.**     **Plaintiff did not file her lawsuit within 90 days of Defendant's "denial."**

As discussed in Defendant's original Motion, Plaintiff contends that Defendant's Answer in the federal action constitutes its "denial," under the KTCA. Obviously, Defendant takes issue with that conclusion since Plaintiff did not send a notice of claim at all. Regardless, the parties agree that Defendant filed its Answer on May 15, 2020 and that Plaintiff filed this case on August 14, 2020. Plaintiff argues that she filed on the 90th day because the first day does not count. Defendant agrees the first day does not count. Even so, August 14, 2020 is 91 days after May 15, 2020. Plaintiff's entire Petition is untimely for this additional reason.

**V.     CONCLUSION**

At the end of the day, Plaintiff cannot escape the fact that she failed to comply with the notice requirements of the KTCA. Faced with this reality, Plaintiff has engaged in factual and legal gymnastics in an attempt to circumvent those requirements. For all of the reasons discussed in Defendant's original Motion, as well as those discussed herein, Plaintiff's attempts have failed. Because Plaintiff did not comply with the KTCA, neither this Court, nor any other court, has jurisdiction over her claim. Accordingly, Defendant requests that the Court dismiss Plaintiff's Petition with prejudice.

Respectfully submitted,

*/s/ Jeannie M. DeVeney*
Jeannie M. DeVeney, #17445
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeannie M. DeVeney*
ATTORNEY FOR DEFENDANT

*Clerk of the District Court, Johnson County Kansas*
*01/08/21  04:46pm ML*

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: **20CV03451** |
| v. | ) | **Division No.: 4** |
| | ) | **Chapter No.: 60** |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION

COMES NOW Plaintiff, by and through undersigned counsel, and respectfully requests leave of this Court to file her First Amended Petition. In support of this request, Plaintiff states the following:

1.    This matter arises from Plaintiff's employment and subsequent termination with Defendant, and actions of Defendant and proposed additional Defendants in requesting criminal charges be brought against Plaintiff.

2.    On July 16, 2021, the criminal case of Kansas v. Elven, 19CR00022 was dismissed by the District Attorney.

3.    This action gave rise to new claims which Plaintiff wishes to add to this matter.

4.    These claims are directly related to the subject matter and factual occurrences at issue in this lawsuit.

5.    Though Plaintiff could file a second lawsuit to include these claims, judicial economy and avoidance of unnecessary expense favors bringing these claims together with the wrongful discharge claim in this case.

6.      K.S.A. § 60-215 states that, aside from two non-applicable scenarios, "a party may amend its pleading only with the opposing party's written consent, or the court's leave. The court should freely give leave when justice so requires."

7.      A copy of the proposed First Amended Petition is attached to this filing as Exhibit 1.

WHEREFORE, Plaintiff requests permission to file her First Amended Petition and for such other and further consideration and relief as the Court may deem just and equitable.

Respectfully submitted,


/s/ Robert A. Bruce
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's electronic filing system to the following:

Jeannie M. DeVeney
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, Missouri 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com
**Attorneys for Defendant**


/s/ Robert A. Bruce
Attorney for Plaintiff

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | |
|---|---|
| **CHARMAINE ELVEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:  20CV03451** |
| **v.** ) | **Division No.:  4** |
| ) | **Chapter No.: 60** |
| **THE BOARD OF COUNTY** ) | |
| **COMMISSIONERS OF THE** ) | |
| **COUNTY OF JOHNSON,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **BETH JOHNSON, in her official and** ) | |
| **individual capacities,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MATTHEW FLETCHER, in his official and** ) | |
| **individual capacities,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TIFFANY HENTSCHEL, in her official and** ) | |
| **individual capacities,** ) | |
| ) | |
| **Defendants.** ) | |

### FIRST AMENDED PETITION FOR DAMAGES

COMES NOW Plaintiff, Charmaine Elven, and for her claims against Defendants,

alleges and states as follows:

1.    Plaintiff was at all times set forth below a resident of Kansas.

2.    Defendant The Board of County Commissioners of the County of

Johnson ("Defendant County") is a political subdivision (municipality) of the State of

Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3.    Defendant Beth Johnson was, at relevant times at issue in this lawsuit,

the Director of Day and Employment Services for Johnson County Developmental Supports of Defendant County.

4.      Defendant Matthew Fletcher was, at relevant times at issue in this lawsuit, the Deputy Director of Day for Johnson County Developmental Supports of Defendant County.

5.      Defendant Tiffany Hentschel was, at relevant times at issue in this lawsuit, the Deputy Director of Human Resources for Defendant County.

6.      The actions giving rise to Plaintiff's claims occurred in Johnson County, Kansas.

7.      On February 28, 2020, Plaintiff sent written notice of this claim to Defendant, substantially complying with the requirements of Kansas Tort Claims Act, particularly K.S.A. 12-105b (2020).

8.      Specifically, that document identified Plaintiff's name; Plaintiff's attorneys' names and address; a statement of facts laying out Plaintiff's claim as outlined below; the names of public officers involved, and the address or two such officers; a statement of the injuries suffered; and a demand of more than $75,000.

9.      Defendant denied the claim on or about May 15, 2020.

10.     On March 18, 2020, Chief Justice Luckert signed Kansas Supreme Court Administrative Order 2020-PR-016, suspending all statute of limitations and statutory time standards.

11.     That suspension remained in effect as of August 14, 2020, the date Plaintiff filed her initial Petition in this matter.

## EXHIBIT 1 to Plaintiff's Motion for Leave to File First Amended Petition

### FACTS COMMON TO ALL COUNTS

12. Plaintiff was hired by Defendant County in approximately April 2015.

13. Plaintiff was employed as a Community Employment Specialist at the Johnson County Developmental Supports (JCDS).

14. Plaintiff's job duties including serving as the Team Leader for Project SEARCH, which strives to offer education and vocational training to individual with intellectual and development disabilities.

15. Plaintiff worked as a non-exempt employee, and was required to submit timecards showing hours Plaintiff had worked for each week.

16. Plaintiff's supervisor, Kim Perry, the Team Leader for Day and Employment Services, had to approve all time entries before Plaintiff would be compensated for that time.

17. In Perry's absence, Defendant Johnson would approve all time entries— including overtime—before Plaintiff would be compensated for that time.

18. Between April 2015 and January 2018, Plaintiff worked substantial overtime.

19. At no time prior to January 31, 2018 did Perry, Defendant Johnson, or any employee of Defendant County ask Plaintiff about her overtime hours worked.

20. Plaintiff would often use a laptop computer provided by Defendant to complete tasks.

21. Some of these tasks were completed at Plaintiff's home.

22. In late 2017, Plaintiff began to notice several troubling issues at JCDS.

23. In one instance, Plaintiff arrived for her shift to find a client pounding on the

*Clerk of the District Court, Johnson County Kansas*
*03/17/22 02:57pm MM*

wall of his room in an attempt to get assistance.

24. Plaintiff asked the night staff if something was wrong with the client.

25. The staff remarked that, "I dunno, he's been doing that for over an hour."

26. Plaintiff entered the client's room to find that the client had defecated and urinated on himself.

27. The client was pounding the wall in an attempt to get someone's attention for assistance in cleaning himself.

28. Plaintiff apologized to the client and helped him to get clean.

29. Plaintiff reported the occurrence to Senior Direct Support Professional, as well as Melissa Athey and Chris Goff.

30. To Plaintiff's knowledge, no investigation was under taken nor any corrective measures implemented to prevent similar occurrences.

31. Plaintiff also complained that narcotic medications that were at the JCDS 54th Terrace location were not being properly stored, including a lack of any lock on the medications.

32. Some narcotic medications ultimately came up missing at the 99th Terrace Home.

33. Plaintiff reported the missing medications to her supervisors and the medical staff at JCDS.

34. However, after Plaintiff's report, Plaintiff did not observe any changes in how the narcotic medications were stored or secured.

35. On or about December 7, 2017, Plaintiff was working in the office at JCDS.

36. The office had several medical files, which contained confidential medical

and personal information of several clients of the JCDS.

37.     Some of this information is protected by the Health Insurance Portability and Accountability Act (HIPAA).

38.     During her shift, an unknown individual opened the door to the office.

39.     Plaintiff was startled, as the door was supposed to be locked to prevent unauthorized individuals from accessing the room, as well as the confidential information stored therein.

40.     Plaintiff examined the door, and found that it did not even have a functioning lock.

41.     Plaintiff also learned that court was being held in the same building as the JCDS office.

42.     Several individuals reporting to court for criminal cases began knocking on the office door, with some opening the unlocked door.

43.     Plaintiff learned that, despite court being held in the building, no additional security was present.

44.     Plaintiff contacted Perry to report these incidents and request that a working lock be installed on the door to protect the confidential information, as well as the JCDS staff and clients.

45.     Plaintiff also noted that the door needed to be secured to protect the staff and clients of JCDS.

46.     Perry brushed off Plaintiff's complaints.

47.     Perry told Plaintiff, "I'm sure this will all blow over and get fixed eventually."

48.     Plaintiff was put off by this comment, as she did not want anything to "blow over"; Plaintiff wanted the issue corrected.

49.     Plaintiff again requested that Perry make these issues known.

50.     Perry again refused.

51.     On December 13, 2017, Plaintiff found that nothing had been done to address her complaints.

52.     Plaintiff decided she needed to report the issues to a higher authority.

53.     Plaintiff contacted Human Resources and described the occurrence, the potential issues, and the need for the lock.

54.     The Human Resources representative told Plaintiff the department would follow up on this to make sure it was addressed.

55.     Approximately 10 minutes after Plaintiff's complaint to Human Resources, Plaintiff received a call from Perry.

56.     Perry immediately asked Plaintiff: "Why did you contact HR?"

57.     Plaintiff attempted to explain, but Perry talked over her.

58.     Perry told Plaintiff that Plaintiff should not go "over her head" again "or else."

59.     Perry told Plaintiff: "I have things under control."

60.     Plaintiff apologized to Perry about contacting Human Resources.

61.     Plaintiff explained that she did not realize Perry was working on something to address the issue.

62.     Perry snapped back: "I'm not."

63.     Plaintiff did not know what to say, and Perry ended the call.

64.     A few weeks later, Plaintiff was called into a meeting with Human Resources representative Teal Goeller and Defendant Johnson.

65.     In that meeting Plaintiff was told that her overtime usage was "excessive."

66.     Plaintiff pointed out that she had been working at JCDS for over three years, and substantial overtime was part of the job.

67.     Plaintiff also noted that her supervisor, Perry, had signed off on all of Plaintiff's timecards showing Plaintiff's overtime hours.

68.     Plaintiff further pointed out that the only other individual in the same position as Plaintiff, Jo Duncan, had been using FMLA leave during 2017, which had also contributed to Plaintiff working additional hours.

69.     As Plaintiff attempted to explain the work she had been doing to justify the overtime worked, Goeller and Defendant Johnson continually interrupted Plaintiff and kept her from speaking.

70.     Plaintiff repeatedly told both Goeller and Defendant Johnson that she needed the laptop computer Defendant County had issued to her to indicate what she was doing on any given day.

71.     Plaintiff offered to allow Goeller or Defendant Johnson to operate the computer while Plaintiff instructed the operator where to locate the pertinent data, but was rebuffed.

72.     Plaintiff was never given the opportunity to access this documentation from her computer to prove she had been working for all claimed hours.

73.     In fact, Plaintiff would never be allowed to access her computer again before being discharged, falsely charged with a crime, or prosecuted.

74.     The following day, Plaintiff was placed on administrative leave.

75.     When Plaintiff was informed of this, she asked if she should get an attorney.

76.     The Human Resources representative mocked Plaintiff for asking this question.

77.     The representative remarked "Why should you? You aren't in any trouble here."

78.     Plaintiff was only interviewed for approximately 10 minutes over the next three weeks as an investigation was conducted.

79.     In that brief interview, Plaintiff again directed Defendant County to her work computer.

80.     Plaintiff noted that the computer contained all the relevant information to support Plaintiff's use of overtime.

81.     Defendant, through its agents, including Defendant Johnson, again denied Plaintiff access to her computer.

82.     Unbeknownst to Plaintiff, Defendant Hentschel met with Jason Novotny and Dana Gouge, investigators from the Office of the District Attorney for Johnson County, Kansas (hereinafter "DA"), on February 13, 2018.

83.     Defendant Hentschel reported that Defendant County had ***proof*** that Plaintiff was falsely claiming overtime hours.

84.     In reality, Defendant County had not yet even determined if it would discharge Plaintiff.

85.     The DA would ultimately subpoena various records in investigating these allegations but would not subpoena Defendant County.

86.     Instead, the DA's report noted that such records have been supplied by "Johnson County Human Resources."

87.     Goeller contacted Plaintiff to request that Plaintiff attend a "meeting" on February 22, 2018.

88.     Goeller told Plaintiff that Defendant had some "follow up questions" for Plaintiff.

89.     Goeller did not inform Plaintiff that a decision would be made on this date.

90.     On February 22, 2018, Plaintiff arrived for the "meeting."

91.     However, Plaintiff found that six individuals, including Defendant Fletcher, Perry, and Goeller, were present.

92.     Shortly after Plaintiff entered the room, Defendant Fletcher told Plaintiff: "I intend to separate you from employment with JCDS; convince me otherwise."

93.     Plaintiff realized that this was not a "meeting" for follow-up questions, but a hearing upon which her employment status would be decided.

94.     Plaintiff had gotten no advanced warning of this fact.

95.     Plaintiff again, asked for access to her work computer.

96.     Plaintiff again, explained that the computer held documents and data that would prove her explanations regarding the use of overtime.

97.     Plaintiff was again denied access to this evidence by Defendant County, acting through Defendant Fletcher.

98.     Defendant Fletcher informed Plaintiff that Defendant County had advised the DA that Defendant County wished for the DA to pursue criminal charges against Plaintiff for theft.

*Clerk of the District Court, Johnson County Kansas*
*03/17/22 02:57pm MM*

99. Defendant Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff.

100. The memorandum had been written by Fletcher prior to hearing from Plaintiff on February 22, 2018.

101. In the memorandum, it stated: "[Defendant County] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working."

102. Despite signing off on Plaintiff's overtime, Perry was not discharged.

103. In fact, Perry participated in Plaintiff's discharge.

104. Defendant Johnson had signed off on some of Plaintiff's overtime as well.

105. Despite this, Defendant Johnson was not discharged.

106. Plaintiff was given five business days, up to and including March 1, 2018, to determine whether she would appeal the decision of Defendant County.

107. Plaintiff did not have access to her computer, so knew she would not have the ability to properly defend herself upon an appeal of the decision.

108. Plaintiff notified Defendant County of this one March 1, 2018.

109. Plaintiff applied for unemployment benefits, but was denied when Defendant County alleged that Plaintiff had committed theft by inflating overtime hours.

110. Sometime between February 13, 2018 and September 2018, Defendant Johnson would provide select documentation to the DA, but would not provide Plaintiff's computer nor all the records Defendant Johnson and Defendant County claimed to have reviewed in making the determination that Plaintiff inflated overtime hours.

111. Plaintiff began working at another job following her discharge from

employment by Defendant County.

112. On January 2, 2019, the DA filed a criminal charge of theft against Plaintiff.

113. As a result of this charge, Plaintiff was terminated from her replacement employment.

114. Plaintiff was arrested on January 2, 2019, and forced to post bond for her release.

115. Plaintiff retained legal counsel to represent her in the criminal case.

116. In the criminal case, Plaintiff's legal counsel requested access to Plaintiff's work computer and all data/documents contained therein.

117. Plaintiff has a constitutional right to this information, as it would exonerate her.

118. Plaintiff's legal counsel contacted the DA, through the attorney prosecuting Plaintiff's criminal case, and informed the attorney that the work computer would be extremely important.

119. The DA's office sent an investigator, Jason Novotny, to review the computer's contents.

120. However, it was discovered that the computer was believed to have been completely wiped.

121. Plaintiff's legal counsel then subpoenaed Defendant County for access to the computer.

122. Defendant County, though its IT department, stated that the computer had been reissued to another employee and that the computer had not been examined forensically in any way prior to being wiped.

123.    Defendant County, though its IT department, suggested that most of the data was saved to an external server owned by Defendant County.

124.    Novotny interviewed Mike Epperson, the Information Security and Resilience Manager for Defendant County.

125.    Epperson stated that Defendant County's retention policy was for six months after an employee's discharge.

126.    Epperson stated that the computer had been "disabled" on March 19, 2018, well before the six month period.

127.    Further, no hold was placed on the data held by the computer.

128.    Plaintiff's legal counsel then subpoenaed Defendant County for access to the saved data from the server.

129.    Defendant County, through its legal counsel, stated *that none of the records from Plaintiff's computer could be located on the server*.

130.    This data was never saved to the server, but instead deleted well ahead of Defendant County's record retention policy.

131.    Additionally, many of the documents identified in the discharge report written by Defendant Fletcher were identified as "un-locatable" by the DA.

132.    This is true despite Defendants knowing and requesting that criminal charges be pursued well before Plaintiff was even discharged, and well after Plaintiff had repeatedly identified the existence of exculpatory evidence on her work computer.

133.    A Preliminary Hearing was set in Plaintiff's criminal case for August 2 through 4, 2021.

134.    On July 16, 2021, the DA dismissed the criminal case.

135.    All actions or inactions of or by Defendant County occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY
### (against Defendant County)

136.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 135 of her First Amended Petition, as though fully stated herein.

137.    Plaintiff made good-faith complaints to management members of Defendant County about the following concerns:

a.    Neglect of residents who depended on staff of JCDS for support, in violation of the Adult Care Home Licensure Act (K.S.A. § 39-923) and civil rights of the residents;

b.    Unsafe and unsecured storage of narcotic medications, in violation of the Controlled Substances Act (21 U.S.C., ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

c.    Missing narcotic medications, in violation of the Controlled Substances Act (21 U.S.C. ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

d.    Unsafe working conditions due to lack of locks on doors, in violation of the Occupational Safety and Health Act (29 U.S.C., ch. 15); and

e.    Inadequate protections for personal information protected by HIPAA, in violation of HIPAA and Health Information Technology for Economic and Clinical Health Act.

138.    The above laws each pertain to public health, safety, and the general welfare of the citizens of Kansas.

139.    Plaintiff made each of the above reports to supervisory employees of Defendant County, including Plaintiff's direct supervisor.

140.    When Plaintiff's direct supervisor failed to act on Plaintiff's complaint, Plaintiff went to a higher internal authority.

141.    Defendant County took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, requesting criminal charges be brought against Plaintiff, destroying exculpatory evidence identified by Plaintiff, and opposing Plaintiff receiving unemployment benefits.

142.    Defendant County's adverse employment actions taken against Plaintiff were each based upon, and directly related to, Plaintiff's complaints.

143.    Defendant County's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts, the Kansas Legislature, and Congress.

144.    As a direct and proximate result of Defendant County's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, loss of subsequent employment, increased legal fees, and will continue to suffer the same unless and until this Court grants relief.

145.    Defendant County acted toward Plaintiff with willful conduct, wanton conduct, or malice.

146.    Thus, an award of punitive and exemplary damages is appropriate.

## COUNT II – VIOLATION OF RIGHTS UNDER
## FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
## MALICIOUS PROSECUTION
### (against Defendant County)

147.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 146 of her First Amended Petition, as though fully stated herein.

148.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

149.    Defendant Johnson, Defendant Fletcher, and Defendant Hentschel were each involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

150.    Defendant Johnson, Defendant Fletcher, and Defendant Hentschel were each involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

151.    Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

152.    Defendant County, Defendant Johnson, Defendant Fletcher, and Defendant Hentschel all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

153.    Plaintiff directly told Defendant County, including but not limited to Defendant Johnson and Defendant Fletcher, that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

154.    Despite this knowledge, Defendants each did nothing to preserved the data

contained in the computer.

155.    Instead, Defendants allowed for the data to be completely destroyed while the computer was under their collective control.

156.    Further, Defendants did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendants had never viewed.

157.    Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of formers employees.

158.    However, this policy was not followed, and the data was erased well before the dictated amount of time.

159.    Defendant Fletcher has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

160.    Defendant Johnson has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

161.    Defendant Hentschel has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

162.    Defendants took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

163.    Defendants took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

164.    Further, Defendants identified documents to support Defendant County's

conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

165.     Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

166.     This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendants.

167.     This both caused and continued Plaintiff's confinement and prosecution.

168.     As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

169.     Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

170.     Defendants acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

171.     Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

172.     Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT III – VIOLATION OF RIGHTS UNDER
## FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
## MALICIOUS PROSECUTION
## (against Defendant Johnson)

173.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 172 of her First Amended Petition, as though fully stated herein.

174.    Defendant Johnson was involved in the investigational aspects of criminal charges brought against Plaintiff.

175.    Defendant Johnson was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

176.    Defendant Johnson was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

177.    Defendant Johnson requested that the DA file particular state law criminal charges against Plaintiff.

178.    Defendant Johnson had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

179.    Plaintiff directly told Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

180.    Despite this knowledge, Defendant Johnson did nothing to preserve the data contained in the computer.

181.    Instead, Defendant Johnson allowed for the data to be completely destroyed while the computer was under her control.

182. Further, Defendant Johnson did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant Johnson had never viewed.

183. Defendant Johnson took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

184. Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

185. Further, Defendant Johnson identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

186. Defendant Johnson did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

187. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Johnson.

188. This both caused and continued Plaintiff's confinement and prosecution.

189. As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

190. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

191. Defendant Johnson acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

192.     Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

193.     Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Johnson in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV – VIOLATION OF RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 – MALICIOUS PROSECUTION (against Defendant Fletcher)

194.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 193 of her First Amended Petition, as though fully stated herein.

195.     Defendant Fletcher was involved in the investigational aspects of criminal charges brought against Plaintiff.

196.     Defendant Fletcher was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

197.     Defendant Fletcher was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

198.     Defendant Fletcher requested that the DA file particular state law criminal charges against Plaintiff.

199.     Defendant Fletcher had control of Plaintiff's former work computer at all

times prior to turning the computer over to the DA.

200.    Plaintiff directly told Defendant Fletcher that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

201.    In fact, Plaintiff told Defendant Fletcher this in response to Defendant Fletcher's request that Plaintiff identify data which would refute Defendant Fletcher and Defendant County's allegation that Plaintiff was not working during claimed overtime hours.

202.    Despite this knowledge, Defendant Fletcher did nothing to preserve the data contained in the computer.

203.    Instead, Defendant Fletcher allowed for the data to be completely destroyed while the computer was under his control.

204.    Further, Defendant Fletcher did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant Fletcher had never viewed.

205.    Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

206.    Defendant Fletcher took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

207.    Further, Defendant Fletcher identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

208.    Defendant Fletcher did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

209.    This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Fletcher.

210.    This both caused and continued Plaintiff's confinement and prosecution.

211.    As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

212.    Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

213.    Defendant Fletcher acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

214.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

215.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT V – VIOLATION OF RIGHTS UNDER
## FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
## MALICIOUS PROSECUTION
### (against Defendant Hentschel)

216.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 215 of her First Amended Petition, as though fully stated herein.

217.    Defendant Hentschel was involved in the investigational aspects of criminal charges brought against Plaintiff.

218.    Defendant Hentschel met with investigators from the DA on February 13, 2018 and claimed to have proof that Plaintiff had committed theft.

219.    Both prior to and after this meeting, Plaintiff identified exculpatory information and exculpatory evidence, including Plaintiff's work computer, that would justify her claimed overtime.

220.    Defendant Hentschel kept this exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

221.    Defendant Hentschel requested that the DA file particular state law criminal charges against Plaintiff.

222.    Defendant Hentschel all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA—which was done long after the criminal charges were filed in January 2019.

223.    Defendant Hentschel each did nothing to preserved the data contained in the computer.

224.    Instead, Defendant Hentschel allowed for the data to be completely

destroyed while the computer was under her collective control.

225. Further, Defendant Hentschel did not notify the DA of the existence of this potential evidence or Plaintiff's claim that the computer contained exculpatory evidence which Defendant Hentschel had never viewed.

226. Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of formers employees.

227. However, this policy was not followed, and the data was erased well before the dictated amount of time.

228. Defendant Hentschel has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

229. Defendant Hentschel took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer—*even after directly asking that the DA pursue criminal charges.*

230. Defendant Hentschel took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

231. Further, Defendant Hentschel identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

232. Defendant Hentschel did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

233. This deliberate destruction of multiple pieces of evidence deprived Plaintiff

of her ability to defend herself against false criminal charges that were brought at the request of Defendant Hentschel.

234.    This both caused and continued Plaintiff's confinement and prosecution.

235.    As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

236.    Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

237.    Defendant Hentschel acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

238.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

239.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Hentschel in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all accounts and allegations of wrongful conduct alleged in this First Amended Petition.

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.: 20CV03451** |
| | ) | |
| v. | ) | |
| | ) | **Div. 4** |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION

Defendant, The Board of County Commissioners of the County of Johnson ("Defendant"), has reviewed Plaintiff's Motion for Leave to file First Amended Petition. For the reasons discussed in Defendant's Motion to Dismiss Plaintiff's original Petition, Plaintiff's initial count against Defendant fails to state a claim upon which relief may be granted. In addition, the newly proposed claims also fail to state a claim upon which relief may be granted. Defendant does not oppose Plaintiff's request to file the proposed First Amended Petition, but intends to defend against the newly proposed claims on the basis that none of the claims state a claim upon which relief may be granted (and, if necessary, on other bases).

Respectfully submitted,

*/s/ Jeannie M. DeVeney*
Jeannie M. DeVeney, #17445
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEY FOR DEFENDANT

*Clerk of the District Court, Johnson County Kansas*
*03/30/22  01:33pm MM*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2022, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
Telephone: 913.371.1930
Facsimile: 913.371.0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeannie M. DeVeney*
**ATTORNEY FOR DEFENDANT**

*Clerk of the District Court, Johnson County Kansas*
*03/30/22 01:33pm MM*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

ELVEN, CHARMAINE        )

        PLAINTIFF      )

                     )        CASE NO. 20CV03451

        V.           )        DIVISION 4

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON

        DEFENDANT,    )

## NOTICE AND ORDER OF PENDING DISMISSAL

This case will be dismissed without prejudice for lack of prosecution on the 23RD DAY OF SEPTEMBER, 2022, AT 12:00 p.m. (1) unless good cause is shown for not doing so in accordance with K.S.A 60-241(b)(2) and Civil Rules 6 and 16, and (2) unless an order executed by the **above-assigned division** removing this case from the dismissal list has been filed by that date and time.

A party desiring to prosecute this action shall prepare and submit to the **above-assigned division** for consideration a motion and order in the form required by Local Rule 6, which may be found at: http://courts.jocogov.org/forms/dismiss.pdf. The order shall include a setting for the next hearing and shall be served on all parties and proof of service filed.

IT IS SO ORDERED.

Dated this 29TH DAY OF AUGUST, 2022.

        /s/ J. CHARLES DROEGE
        CHIEF JUDGE

## CERTIFICATE OF MAILING/DELIVERY

I hereby certify that a copy of the foregoing Notice and Order was delivered to all counsel of record or pro se parties in this action by (1) depositing in the U.S. mail, postage prepaid, or (2) depositing in the designated attorney's box in the clerk's office, or (3) by e-mail pursuant to Local Rule 6, this 29TH DAY OF AUGUST, 2022.

        /s/ Jennie Leach
        CLERK OF THE DISTRICT COURT  *File Stamp 08/29/2022 13:27:21*

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20CV03451 |
| v. | ) | Division No.: 4 |
| | ) | Chapter No.: 60 |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |

## PLAINTIFF'S MOTION AND SHOWING TO REMOVE CASE FROM DISMISSAL LIST

COMES NOW Plaintiff, by and through undersigned counsel, and respectfully requests that this matter be removed from the dismissal list. In support of this request, Plaintiff states the following:

1. This matter arises from Plaintiff's employment and subsequent termination with Defendant, as well as actions of Defendant and proposed additional Defendants in requesting criminal charges be brought against Plaintiff.

2. Plaintiff initially filed this lawsuit on or about August 14, 2020.

3. On December 3, 2020, Defendant filed a Motion to Dismiss.

4. On July 16, 2021, the criminal case of *Kansas v. Eleven*, 19CR00022 was dismissed by the District Attorney.

5. This action gave rise to new claims which Plaintiff requested to add to this matter.

6. Plaintiff filed a Motion for Leave to Amend on March 17, 2022.

7. Plaintiff also provided notice, pursuant to the Kansas Tort Claims Act, to Defendant of additional claims she intended to bring against Defendant.

8.     120 days passed and Defendant did not accepted in whole or part those claims.

9.     Plaintiff now has contacted Defendant's counsel to inquire about stipulating to the filing of an Amended Petition inclusive of both the amendments sought in March 17, 2022, as well as the additional claims outlines in the KTCA Notice.

10.     Should the parties be unable to agree to the filing of that Motion, Plaintiff will file an amended and/or renewed Motion for Leave to Amend on or before Friday, September 23, 2022.

WHEREFORE, Plaintiff requests that this matter be removed from the Dismissal List, and for such other and further consideration and relief as the Court may deem just and equitable.

Respectfully submitted,

*/s/ Robert A. Bruce*
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's

electronic filing system to the following:

Jeannie M. DeVeney
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, Missouri 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com
**Attorneys for Defendant**

> /s/ Robert A. Bruce
> Attorney for Plaintiff

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 20CV03451** |
| v. | ) | **Division No.: 4** |
| | ) | **Chapter No.: 60** |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |

## <u>PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION</u>

COMES NOW Plaintiff, by and through undersigned counsel, and respectfully requests leave of this Court to file her First Amended Petition. In support of this request, Plaintiff states the following:

1. This matter arises from Plaintiff's employment and subsequent termination with Defendant, and actions of Defendant and proposed additional Defendants in requesting criminal charges be brought against Plaintiff.

2. On July 16, 2021, the criminal case of *Kansas v. Eleven*, 19CR00022 was dismissed by the District Attorney.

3. This action gave rise to new claims which Plaintiff wishes to add to this matter.

4. These claims are directly related to the subject matter and factual occurrences at issue in this lawsuit.

5. Plaintiff initially filed a Motion for Leave to add the federal claims, while sending notice pursuant to the Kansas Tort Claims Act for state-law claims.

6. That Motion for Leave still remains pending.

7. The notice and timing requirements imposed by the KTCA have now been satisfied, and Plaintiff renews her Motion to include adding these additional two state-law claims.

8. Though Plaintiff could file a second lawsuit to include these claims, judicial economy and avoidance of unnecessary expense favors bringing these claims together with the wrongful discharge claim in this case.

9. K.S.A. § 60-215 states that, aside from two non-applicable scenarios, "a party may amend its pleading only with the opposing party's written consent, or the court's leave. The court should freely give leave when justice so requires."

10. A copy of the new proposed First Amended Petition is attached to this filing as Exhibit 1.

WHEREFORE, Plaintiff requests permission to file her First Amended Petition and for such other and further consideration and relief as the Court may deem just and equitable.

Respectfully submitted,

*/s/ Robert A. Bruce*
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
**ATTORNEYS FOR PLAINTIFF**

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

171

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's

electronic filing system to the following:

Jeannie M. DeVeney
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, Missouri 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com
**Attorneys for Defendant**

/s/ Robert A. Bruce
Attorney for Plaintiff

EXHIBIT 1 - Proposed Am. Pet.

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | |
|---|---|
| CHARMAINE ELVEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 20CV03451 |
| v. | ) Division No.: 4 |
| | ) Chapter No.: 60 |
| THE BOARD OF COUNTY | ) |
| COMMISSIONERS OF THE | ) |
| COUNTY OF JOHNSON, | ) |
| | ) |
| and | ) |
| | ) |
| BETH JOHNSON, in her official and | ) |
|     individual capacities, | ) |
| | ) |
| and | ) |
| | ) |
| MATTHEW FLETCHER, in his official and | ) |
|     individual capacities, | ) |
| | ) |
| and | ) |
| | ) |
| TIFFANY HENTSCHEL, in her official and | ) |
|     individual capacities, | ) |
| | ) |
| Defendants. | ) |

<u>**FIRST AMENDED PETITION FOR DAMAGES**</u>

COMES NOW Plaintiff, Charmaine Elven, and for her claims against Defendants, alleges and states as follows:

1.    Plaintiff was at all times set forth below a resident of Kansas.

2.    Defendant The Board of County Commissioners of the County of Johnson ("Defendant County") is a political subdivision (municipality) of the State of Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3.    Defendant Beth Johnson was, at relevant times at issue in this lawsuit,

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

the Director of Day and Employment Services for Johnson County Developmental Supports of Defendant County.

4.       Defendant Matthew Fletcher was, at relevant times at issue in this lawsuit, the Deputy Director of Day for Johnson County Developmental Supports of Defendant County.

5.       Defendant Tiffany Hentschel was, at relevant times at issue in this lawsuit, the Deputy Director of Human Resources for Defendant County.

6.       The actions giving rise to Plaintiff's claims occurred in Johnson County, Kansas.

7.       On February 28, 2020, Plaintiff sent written notice of this claim to Defendant County, substantially complying with the requirements of Kansas Tort Claims Act, particularly K.S.A. 12-105b (2020).

8.       Specifically, that document identified Plaintiff's name; Plaintiff's attorneys' names and address; a statement of facts laying out Plaintiff's claim as outlined below; the names of public officers involved, and the address or two such officers; a statement of the injuries suffered; and a demand of more than $75,000.

9.       Defendant County denied the claim on or about May 15, 2020.

10.      On March 18, 2020, Chief Justice Luckert signed Kansas Supreme Court Administrative Order 2020-PR-016, suspending all statute of limitations and statutory time standards.

11.      That suspension remained in effect as of August 14, 2020, the date Plaintiff filed her initial Petition in this matter.

12.      On March 17, 2022, Plaintiff sent written notice of her additional claims

174

to Defendant County, substantially complying with the requirements of Kansas Tort Claims Act, particularly K.S.A. 12-105b (2020).

13.     Specifically, that document identified Plaintiff's name; Plaintiff's attorneys' names and address; a statement of facts laying out Plaintiff's claim as outlined below; the names of public officers involved, and the address or two such officers; a statement of the injuries suffered; and a demand of $500,000.

14.     On July 19, 2022, 120 days passed, and Defendant County did not accept Plaintiff's claim in any part.

15.     Plaintiff is bringing this action within 90 days of July 19, 2022.

16.     Plaintiff has thus complied with the Kansas Tort Claims Act.

### FACTS COMMON TO ALL COUNTS

17.     Plaintiff was hired by Defendant County in approximately April 2015.

18.     Plaintiff was employed as a Community Employment Specialist at the Johnson County Developmental Supports (JCDS).

19.     Plaintiff's job duties including serving as the Team Leader for Project SEARCH, which strives to offer education and vocational training to individual with intellectual and development disabilities.

20.     Plaintiff worked as a non-exempt employee, and was required to submit timecards showing hours Plaintiff had worked for each week.

21.     Plaintiff's supervisor, Kim Perry, the Team Leader for Day and Employment Services, had to approve all time entries before Plaintiff would be compensated for that time.

22.     In Perry's absence, Defendant Johnson would approve all time entries—

including overtime—before Plaintiff would be compensated for that time.

23.     Between April 2015 and January 2018, Plaintiff worked substantial overtime.

24.     At no time prior to January 31, 2018 did Perry, Defendant Johnson, or any employee of Defendant County ask Plaintiff about her overtime hours worked.

25.     Plaintiff would often use a laptop computer provided by Defendant to complete tasks.

26.     Some of these tasks were completed at Plaintiff's home.

27.     In late 2017, Plaintiff began to notice several troubling issues at JCDS.

28.     In one instance, Plaintiff arrived for her shift to find a client pounding on the wall of his room in an attempt to get assistance.

29.     Plaintiff asked the night staff if something was wrong with the client.

30.     The staff remarked that, "I dunno, he's been doing that for over an hour."

31.     Plaintiff entered the client's room to find that the client had defecated and urinated on himself.

32.     The client was pounding the wall in an attempt to get someone's attention for assistance in cleaning himself.

33.     Plaintiff apologized to the client and helped him to get clean.

34.     Plaintiff reported the occurrence to Senior Direct Support Professional, as well as Melissa Athey and Chris Goff.

35.     To Plaintiff's knowledge, no investigation was under taken nor any corrective measures implemented to prevent similar occurrences.

36.     Plaintiff also complained that narcotic medications that were at the JCDS

54th Terrace location were not being properly stored, including a lack of any lock on the medications.

37. Some narcotic medications ultimately came up missing at the 99th Terrace Home.

38. Plaintiff reported the missing medications to her supervisors and the medical staff at JCDS.

39. However, after Plaintiff's report, Plaintiff did not observe any changes in how the narcotic medications were stored or secured.

40. On or about December 7, 2017, Plaintiff was working in the office at JCDS.

41. The office had several medical files, which contained confidential medical and personal information of several clients of the JCDS.

42. Some of this information is protected by the Health Insurance Portability and Accountability Act (HIPAA).

43. During her shift, an unknown individual opened the door to the office.

44. Plaintiff was startled, as the door was supposed to be locked to prevent unauthorized individuals from accessing the room, as well as the confidential information stored therein.

45. Plaintiff examined the door, and found that it did not even have a functioning lock.

46. Plaintiff also learned that court was being held in the same building as the JCDS office.

47. Several individuals reporting to court for criminal cases began knocking on the office door, with some opening the unlocked door.

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

48. Plaintiff learned that, despite court being held in the building, no additional security was present.

49. Plaintiff contacted Perry to report these incidents and request that a working lock be installed on the door to protect the confidential information, as well as the JCDS staff and clients.

50. Plaintiff also noted that the door needed to be secured to protect the staff and clients of JCDS.

51. Perry brushed off Plaintiff's complaints.

52. Perry told Plaintiff, "I'm sure this will all blow over and get fixed eventually."

53. Plaintiff was put off by this comment, as she did not want anything to "blow over"; Plaintiff wanted the issue corrected.

54. Plaintiff again requested that Perry make these issues known.

55. Perry again refused.

56. On December 13, 2017, Plaintiff found that nothing had been done to address her complaints.

57. Plaintiff decided she needed to report the issues to a higher authority.

58. Plaintiff contacted Human Resources and described the occurrence, the potential issues, and the need for the lock.

59. The Human Resources representative told Plaintiff the department would follow up on this to make sure it was addressed.

60. Approximately 10 minutes after Plaintiff's complaint to Human Resources, Plaintiff received a call from Perry.

61.     Perry immediately asked Plaintiff: "Why did you contact HR?"

62.     Plaintiff attempted to explain, but Perry talked over her.

63.     Perry told Plaintiff that Plaintiff should not go "over her head" again "or else."

64.     Perry told Plaintiff: "I have things under control."

65.     Plaintiff apologized to Perry about contacting Human Resources.

66.     Plaintiff explained that she did not realize Perry was working on something to address the issue.

67.     Perry snapped back: "I'm not."

68.     Plaintiff did not know what to say, and Perry ended the call.

69.     A few weeks later, Plaintiff was called into a meeting with Human Resources representative Teal Goeller and Defendant Johnson.

70.     In that meeting Plaintiff was told that her overtime usage was "excessive."

71.     Plaintiff pointed out that she had been working at JCDS for over three years, and substantial overtime was part of the job.

72.     Plaintiff also noted that her supervisor, Perry, had signed off on all of Plaintiff's timecards showing Plaintiff's overtime hours.

73.     Plaintiff further pointed out that the only other individual in the same position as Plaintiff, Jo Duncan, had been using FMLA leave during 2017, which had also contributed to Plaintiff working additional hours.

74.     As Plaintiff attempted to explain the work she had been doing to justify the overtime worked, Goeller and Defendant Johnson continually interrupted Plaintiff and kept her from speaking.

*Clerk of the District Court, Johnson County Kansas*
*09/21/22  09:13am CM*

75.     Plaintiff repeatedly told both Goeller and Defendant Johnson that she needed the laptop computer Defendant County had issued to her to indicate what she was doing on any given day.

76.     Plaintiff offered to allow Goeller or Defendant Johnson to operate the computer while Plaintiff instructed the operator where to locate the pertinent data, but was rebuffed.

77.     Plaintiff was never given the opportunity to access this documentation from her computer to prove she had been working for all claimed hours.

78.     In fact, Plaintiff would never be allowed to access her computer again before being discharged, falsely charged with a crime, or prosecuted.

79.     The following day, Plaintiff was placed on administrative leave.

80.     When Plaintiff was informed of this, she asked if she should get an attorney.

81.     The Human Resources representative mocked Plaintiff for asking this question.

82.     The representative remarked "Why should you? You aren't in any trouble here."

83.     Plaintiff was only interviewed for approximately 10 minutes over the next three weeks as an investigation was conducted.

84.     In that brief interview, Plaintiff again directed Defendant County to her work computer.

85.     Plaintiff noted that the computer contained all the relevant information to support Plaintiff's use of overtime.

86.     Defendant, through its agents, including Defendant Johnson, again denied

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

180

Plaintiff access to her computer.

87.     Unbeknownst to Plaintiff, Defendant Hentschel met with Jason Novotny and Dana Gouge, investigators from the Office of the District Attorney for Johnson County, Kansas (hereinafter "DA"), on February 13, 2018.

88.     Defendant Hentschel reported that Defendant County had ***proof*** that Plaintiff was falsely claiming overtime hours.

89.     In reality, Defendant County had not yet even determined if it would discharge Plaintiff.

90.     The DA would ultimately subpoena various records in investigating these allegations but would not subpoena Defendant County.

91.     Instead, the DA's report noted that such records have been supplied by "Johnson County Human Resources."

92.     Goeller contacted Plaintiff to request that Plaintiff attend a "meeting" on February 22, 2018.

93.     Goeller told Plaintiff that Defendant had some "follow up questions" for Plaintiff.

94.     Goeller did not inform Plaintiff that a decision would be made on this date.

95.     On February 22, 2018, Plaintiff arrived for the "meeting."

96.     However, Plaintiff found that six individuals, including Defendant Fletcher, Perry, and Goeller, were present.

97.     Shortly after Plaintiff entered the room, Defendant Fletcher told Plaintiff: "I intend to separate you from employment with JCDS; convince me otherwise."

98.     Plaintiff realized that this was not a "meeting" for follow-up questions, but a

hearing upon which her employment status would be decided.

99.  Plaintiff had gotten no advanced warning of this fact.

100.  Plaintiff again, asked for access to her work computer.

101.  Plaintiff again, explained that the computer held documents and data that would prove her explanations regarding the use of overtime.

102.  Plaintiff was again denied access to this evidence by Defendant County, acting through Defendant Fletcher.

103.  Defendant Fletcher informed Plaintiff that Defendant County had advised the DA that Defendant County wished for the DA to pursue criminal charges against Plaintiff for theft.

104.  Defendant Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff.

105.  The memorandum had been written by Fletcher prior to hearing from Plaintiff on February 22, 2018.

106.  In the memorandum, it stated: "[Defendant County] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working."

107.  Despite signing off on Plaintiff's overtime, Perry was not discharged.

108.  In fact, Perry participated in Plaintiff's discharge.

109.  Defendant Johnson had signed off on some of Plaintiff's overtime as well.

110.  Despite this, Defendant Johnson was not discharged.

111.  Plaintiff was given five business days, up to and including March 1, 2018, to determine whether she would appeal the decision of Defendant County.

112.     Plaintiff did not have access to her computer, so knew she would not have the ability to properly defend herself upon an appeal of the decision.

113.     Plaintiff notified Defendant County of this one March 1, 2018.

114.     Plaintiff applied for unemployment benefits, but was denied when Defendant County alleged that Plaintiff had committed theft by inflating overtime hours.

115.     Sometime between February 13, 2018 and September 2018, Defendant Johnson would provide select documentation to the DA, but would not provide Plaintiff's computer nor all the records Defendant Johnson and Defendant County claimed to have reviewed in making the determination that Plaintiff inflated overtime hours.

116.     Plaintiff began working at another job following her discharge from employment by Defendant County.

117.     On January 2, 2019, the DA filed a criminal charge of theft against Plaintiff.

118.     As a result of this charge, Plaintiff was terminated from her replacement employment.

119.     Plaintiff was arrested on January 2, 2019, and forced to post bond for her release.

120.     Plaintiff retained legal counsel to represent her in the criminal case.

121.     In the criminal case, Plaintiff's legal counsel requested access to Plaintiff's work computer and all data/documents contained therein.

122.     Plaintiff has a constitutional right to this information, as it would exonerate her.

123.     Plaintiff's legal counsel contacted the DA, through the attorney prosecuting Plaintiff's criminal case, and informed the attorney that the work computer would be

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

extremely important.

124. The DA's office sent an investigator, Jason Novotny, to review the computer's contents.

125. However, it was discovered that the computer was believed to have been completely wiped.

126. Plaintiff's legal counsel then subpoenaed Defendant County for access to the computer.

127. Defendant County, though its IT department, stated that the computer had been reissued to another employee and that the computer had not been examined forensically in any way prior to being wiped.

128. Defendant County, though its IT department, suggested that most of the data was saved to an external server owned by Defendant County.

129. Novotny interviewed Mike Epperson, the Information Security and Resilience Manager for Defendant County.

130. Epperson stated that Defendant County's retention policy was for six months after an employee's discharge.

131. Epperson stated that the computer had been "disabled" on March 19, 2018, well before the six month period.

132. Further, no hold was placed on the data held by the computer.

133. Plaintiff's legal counsel then subpoenaed Defendant County for access to the saved data from the server.

134. Defendant County, through its legal counsel, stated *that none of the records from Plaintiff's computer could be located on the server*.

135.    This data was never saved to the server, but instead deleted well ahead of Defendant County's record retention policy.

136.    Additionally, many of the documents identified in the discharge report written by Defendant Fletcher were identified as "un-locatable" by the DA.

137.    This is true despite Defendants knowing and requesting that criminal charges be pursued well before Plaintiff was even discharged, and well after Plaintiff had repeatedly identified the existence of exculpatory evidence on her work computer.

138.    A Preliminary Hearing was set in Plaintiff's criminal case for August 2 through 4, 2021.

139.    On July 16, 2021, the DA dismissed the criminal case.

140.    All actions or inactions of or by Defendant County occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY
### (against Defendant County)

141.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 140 of her First Amended Petition, as though fully stated herein.

142.    Plaintiff made good-faith complaints to management members of Defendant County about the following concerns:

a.    Neglect of residents who depended on staff of JCDS for support, in violation of the Adult Care Home Licensure Act (K.S.A. § 39-923) and civil rights of the residents;

b.    Unsafe and unsecured storage of narcotic medications, in violation of

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

the Controlled Substances Act (21 U.S.C., ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

c. Missing narcotic medications, in violation of the Controlled Substances Act (21 U.S.C. ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

d. Unsafe working conditions due to lack of locks on doors, in violation of the Occupational Safety and Health Act (29 U.S.C., ch. 15); and

e. Inadequate protections for personal information protected by HIPAA, in violation of HIPAA and Health Information Technology for Economic and Clinical Health Act.

143. The above laws each pertain to public health, safety, and the general welfare of the citizens of Kansas.

144. Plaintiff made each of the above reports to supervisory employees of Defendant County, including Plaintiff's direct supervisor.

145. When Plaintiff's direct supervisor failed to act on Plaintiff's complaint, Plaintiff went to a higher internal authority.

146. Defendant County took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, requesting criminal charges be brought against Plaintiff, destroying exculpatory evidence identified by Plaintiff, and opposing Plaintiff receiving unemployment benefits.

147. Defendant County's adverse employment actions taken against Plaintiff were each based upon, and directly related to, Plaintiff's complaints.

148.    Defendant County's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts, the Kansas Legislature, and Congress.

149.    As a direct and proximate result of Defendant County's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, loss of subsequent employment, increased legal fees, and will continue to suffer the same unless and until this Court grants relief.

150.    Defendant County acted toward Plaintiff with willful conduct, wanton conduct, or malice.

151.    Thus, an award of punitive and exemplary damages is appropriate.

**COUNT II – VIOLATION OF RIGHTS UNDER
FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
MALICIOUS PROSECUTION
(against Defendant County)**

152.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 151 of her First Amended Petition, as though fully stated herein.

153.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

154.    Defendant Johnson, Defendant Fletcher, and Defendant Hentschel were each involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

155.    Defendant Johnson, Defendant Fletcher, and Defendant Hentschel were each involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

187

156. Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

157. Defendant County, Defendant Johnson, Defendant Fletcher, and Defendant Hentschel all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

158. Plaintiff directly told Defendant County, including but not limited to Defendant Johnson and Defendant Fletcher, that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

159. Despite this knowledge, Defendants each did nothing to preserved the data contained in the computer.

160. Instead, Defendants allowed for the data to be completely destroyed while the computer was under their collective control.

161. Further, Defendants did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendants had never viewed.

162. Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of formers employees.

163. However, this policy was not followed, and the data was erased well before the dictated amount of time.

164. Defendant Fletcher has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

165. Defendant Johnson has been delegated final policymaking authority as to

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

when to suspend Defendant County's policy of data deletion.

166. Defendant Hentschel has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

167. Defendants took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

168. Defendants took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

169. Further, Defendants identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

170. Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

171. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendants.

172. This both caused and continued Plaintiff's confinement and prosecution.

173. As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

174. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

175. Defendants acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

176.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

177.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT III – VIOLATION OF RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 – MALICIOUS PROSECUTION (against Defendant Johnson)

178.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 177 of her First Amended Petition, as though fully stated herein.

179.    Defendant Johnson was involved in the investigational aspects of criminal charges brought against Plaintiff.

180.    Defendant Johnson was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

181.    Defendant Johnson was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

182.    Defendant Johnson requested that the DA file particular state law criminal charges against Plaintiff.

183.    Defendant Johnson had control of Plaintiff's former work computer at all

*Clerk of the District Court, Johnson County Kansas*
*09/21/22  09:13am CM*

times prior to turning the computer over to the DA.

184. Plaintiff directly told Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

185. Despite this knowledge, Defendant Johnson did nothing to preserve the data contained in the computer.

186. Instead, Defendant Johnson allowed for the data to be completely destroyed while the computer was under her control.

187. Further, Defendant Johnson did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant Johnson had never viewed.

188. Defendant Johnson took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

189. Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

190. Further, Defendant Johnson identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

191. Defendant Johnson did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

192. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the

*Clerk of the District Court, Johnson County Kansas*
*09/21/22  09:13am CM*

request of Defendant Johnson.

193.    This both caused and continued Plaintiff's confinement and prosecution.

194.    As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

195.    Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

196.    Defendant Johnson acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

197.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

198.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Johnson in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV – VIOLATION OF RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 – MALICIOUS PROSECUTION (against Defendant Fletcher)

199.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 198 of her First Amended Petition, as though fully stated herein.

200.    Defendant Fletcher was involved in the investigational aspects of criminal charges brought against Plaintiff.

201.	Defendant Fletcher was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

202.	Defendant Fletcher was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

203.	Defendant Fletcher requested that the DA file particular state law criminal charges against Plaintiff.

204.	Defendant Fletcher had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

205.	Plaintiff directly told Defendant Fletcher that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

206.	In fact, Plaintiff told Defendant Fletcher this in response to Defendant Fletcher's request that Plaintiff identify data which would refute Defendant Fletcher and Defendant County's allegation that Plaintiff was not working during claimed overtime hours.

207.	Despite this knowledge, Defendant Fletcher did nothing to preserve the data contained in the computer.

208.	Instead, Defendant Fletcher allowed for the data to be completely destroyed while the computer was under his control.

209.	Further, Defendant Fletcher did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant Fletcher had never viewed.

*Clerk of the District Court, Johnson County Kansas*
*09/21/22  09:13am CM*

193

210. Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

211. Defendant Fletcher took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

212. Further, Defendant Fletcher identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

213. Defendant Fletcher did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

214. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Fletcher.

215. This both caused and continued Plaintiff's confinement and prosecution.

216. As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

217. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

218. Defendant Fletcher acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

219. Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

194

220.     Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT V – VIOLATION OF RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 – MALICIOUS PROSECUTION (against Defendant Hentschel)

221.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 220 of her First Amended Petition, as though fully stated herein.

222.     Defendant Hentschel was involved in the investigational aspects of criminal charges brought against Plaintiff.

223.     Defendant Hentschel met with investigators from the DA on February 13, 2018 and claimed to have proof that Plaintiff had committed theft.

224.     Both prior to and after this meeting, Plaintiff identified exculpatory information and exculpatory evidence, including Plaintiff's work computer, that would justify her claimed overtime.

225.     Defendant Hentschel kept this exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

226.     Defendant Hentschel requested that the DA file particular state law criminal charges against Plaintiff.

227.     Defendant Hentschel all had control of Plaintiff's former work computer at

all times prior to turning the computer over to the DA—which was done long after the criminal charges were filed in January 2019.

228. Defendant Hentschel each did nothing to preserved the data contained in the computer.

229. Instead, Defendant Hentschel allowed for the data to be completely destroyed while the computer was under her collective control.

230. Further, Defendant Hentschel did not notify the DA of the existence of this potential evidence or Plaintiff's claim that the computer contained exculpatory evidence which Defendant Hentschel had never viewed.

231. Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of formers employees.

232. However, this policy was not followed, and the data was erased well before the dictated amount of time.

233. Defendant Hentschel has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

234. Defendant Hentschel took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer—*even after directly asking that the DA pursue criminal charges.*

235. Defendant Hentschel took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

236. Further, Defendant Hentschel identified documents to support Defendant

County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

237. Defendant Hentschel did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

238. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Hentschel.

239. This both caused and continued Plaintiff's confinement and prosecution.

240. As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

241. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

242. Defendant Hentschel acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

243. Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

244. Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Hentschel in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT VI – MALICIOUS PROSECUTION
### (against Defendant County)

245.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 244 of her First Amended Petition, as though fully stated herein.

246.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

247.    Defendant County was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

248.    Defendant County was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

249.    Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

250.    Thus, Defendant County procured criminal proceedings against Plaintiff by inducing the DA to initiate such criminal prosecution of Plaintiff.

251.    Defendant County had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

252.    Plaintiff directly told Defendant County that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

253.    Despite this knowledge, Defendant County did nothing to preserve the data contained in the computer.

254.    Instead, Defendant County allowed for the data to be completely destroyed

*Clerk of the District Court, Johnson County Kansas*
*09/21/22  09:13am CM*

198

while the computer was under his control.

255. Further, Defendant County did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant County had never viewed.

256. Defendant County took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

257. Defendant County took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

258. Further, Defendant County identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

259. Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

260. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County.

261. This both caused and continued Plaintiff's confinement and prosecution.

262. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

263. Defendant County acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

264. Defendant County acted without probable cause.

265. Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

266. The criminal proceeding terminated in favor of Plaintiff via dismissal and has not been again commenced.

## COUNT VII – ABUSE OF PROCESS
### (against Defendant County)

267. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 266 of her First Amended Petition, as though fully stated herein.

268. Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

269. Defendant County was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

270. Defendant County was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

271. Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

272. Thus, Defendant County procured criminal proceedings against Plaintiff by inducing the DA to initiate such criminal prosecution of Plaintiff.

273. Defendant County had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

274. Plaintiff directly told Defendant County that the computer contained

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

200

information that would prove what tasks Plaintiff was performing during claimed overtime hours.

275. Despite this knowledge, Defendant County did nothing to preserve the data contained in the computer.

276. Instead, Defendant County allowed for the data to be completely destroyed while the computer was under his control.

277. Further, Defendant County did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant County had never viewed.

278. Defendant County took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

279. Defendant County took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

280. Further, Defendant County identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

281. Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

282. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County.

283. This both caused and continued Plaintiff's confinement and prosecution.

284. Defendant County took these actions knowing of the illegal and improper use of the criminal process.

285. Defendant County acted with the purpose of harassing Plaintiff.

286. Defendant County acted with the purpose of causing great inconvenience to Plaintiff.

287. Defendant County acted with the purpose of causing great hardship to Plaintiff.

288. Defendant County acted with malice.

289. Plaintiff has suffered injury due to this, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $500,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all accounts and allegations of wrongful conduct alleged in this First Amended Petition.

*Clerk of the District Court, Johnson County Kansas*
*09/21/22 09:13am CM*

202

Respectfully submitted,

_/s/ Robert A Bruce_

Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.: 20CV03451** |
| | ) | |
| vs. | ) | **Div. 4** |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| Defendant. | | |

## DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION

COMES NOW Defendant, The Board of County Commissioners of the County of Johnson, and hereby respectfully moves the Court for a two-week extension of time to file its Response to Plaintiff's Renewed Motion for Leave to File First Amended Petition. In support thereof, the Defendant states the following:

1.    On September 21, 2022, Plaintiff filed her Renewed Motion for Leave to File First Amended Petition.

2.    Defendant's response deadline is currently October 4.

3.    Defendant requires additional time in order to adequately and sufficiently respond to Plaintiff's Motion.

4.    Defendant's counsel contacted Plaintiff's counsel, who indicated that Plaintiff does not object to this request.

5.    The extension is not requested for the purpose of delay, and will not prejudice either party.

*Clerk of the District Court, Johnson County Kansas*
*09/29/22  09:43am ST*

WHEREFORE, Defendant respectfully requests an extension of time to October 18, 2022, in which to file its Response to Plaintiff's Renewed Motion for Leave to File First Amended Petition.

Respectfully submitted,

/s/ Jeannie M. DeVeney

Jeannie M. DeVeney, KS #17445
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2022, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

/s/ Jeannie M. DeVeney
ATTORNEY FOR DEFENDANT

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.: 20CV03451** |
| | ) | |
| vs. | ) | **Div. 4** |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| Defendant. | | |

## ORDER

NOW on this ___ day of _____, 2022, comes before the Court, Defendant's Unopposed Motion for Extension of Time to Respond to Plaintiff's Renewed Motion for Leave to File First Amended Petition. For the reasons set forth herein and for good cause shown the Court hereby grants the Motion. The Defendant is hereby granted an extension to October 18, 2022, in which to file its Response to Plaintiff's Renewed Motion for Leave to File First Amended Petition.

IT IS SO ORDERED.

/s/ RHONDA K MASON
Dated: 09/29/22

Date: _____    _____

Rhonda K. Mason
Judge of the District Court
Division 4

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.: 20CV03451** |
| | ) | |
| vs. | ) | **Div. 4** |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| Defendant. | | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION

Defendant, The Board of County Commissioners of the County of Johnson ("The County"), has reviewed Plaintiff's Renewed Motion for Leave to File First Amended Petition. The County does not believe the proposed First Amended Petition states a claim upon which relief may be granted. However, The County has decided to address the flaws in the First Amended Petition with a motion to dismiss, rather than an opposition to the Motion to Amend. As such, The County does not oppose Plaintiff's Motion.

Respectfully submitted,

/s/ Jeannie M. DeVeney
Jeannie M. DeVeney, KS #17445
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2022, a true and correct copy of the foregoing was

electronically submitted via the Court's e-filing system, which generated notice of same to the

following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

/s/ Jeannie M. DeVeney
ATTORNEY FOR DEFENDANT

Clerk of the District Court, Johnson County Kansas
10/18/22  01:39pm CM

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No.: **20CV03451** |
| v. | ) | Division No.: **4** |
| | ) | Chapter No.: **60** |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |

## ORDER

Now on this __th day of October, 2022, the above-captioned matter comes before the Court on Plaintiff's Renewed Motion for Leave to File First Amended Petition. After reviewing the filings and finding that Defendant does not oppose the Motion, the Court hereby GRANTS Plaintiff's Motion.

Plaintiff shall file her First Amended Petition within 10 days of the date of this Order.

/s/ RHONDA K MASON
Dated: 10/21/22
_____
Honorable District Judge Rhonda K. Mason

I

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20CV03451 |
| v. | ) | Division No.: 4 |
| | ) | Chapter No.: 60 |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BETH JOHNSON, in her official and | ) | |
| individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW FLETCHER, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TIFFANY HENTSCHEL, in her official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED PETITION FOR DAMAGES

COMES NOW Plaintiff, Charmaine Elven, and for her claims against Defendants, alleges and states as follows:

1.     Plaintiff was at all times set forth below a resident of Kansas.

2.     Defendant The Board of County Commissioners of the County of Johnson ("Defendant County") is a political subdivision (municipality) of the State of Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3.     Defendant Beth Johnson was, at relevant times at issue in this lawsuit,

the Director of Day and Employment Services for Johnson County Developmental Supports of Defendant County.

4.      Defendant Matthew Fletcher was, at relevant times at issue in this lawsuit, the Deputy Director of Day for Johnson County Developmental Supports of Defendant County.

5.      Defendant Tiffany Hentschel was, at relevant times at issue in this lawsuit, the Deputy Director of Human Resources for Defendant County.

6.      The actions giving rise to Plaintiff's claims occurred in Johnson County, Kansas.

7.      On February 28, 2020, Plaintiff sent written notice of this claim to Defendant County, substantially complying with the requirements of Kansas Tort Claims Act, particularly K.S.A. 12-105b (2020).

8.      Specifically, that document identified Plaintiff's name; Plaintiff's attorneys' names and address; a statement of facts laying out Plaintiff's claim as outlined below; the names of public officers involved, and the address or two such officers; a statement of the injuries suffered; and a demand of more than $75,000.

9.      Defendant County denied the claim on or about May 15, 2020.

10.      On March 18, 2020, Chief Justice Luckert signed Kansas Supreme Court Administrative Order 2020-PR-016, suspending all statute of limitations and statutory time standards.

11.      That suspension remained in effect as of August 14, 2020, the date Plaintiff filed her initial Petition in this matter.

12.      On March 17, 2022, Plaintiff sent written notice of her additional claims

to Defendant County, substantially complying with the requirements of Kansas Tort Claims Act, particularly K.S.A. 12-105b (2020).

13.    Specifically, that document identified Plaintiff's name; Plaintiff's attorneys' names and address; a statement of facts laying out Plaintiff's claim as outlined below; the names of public officers involved, and the address or two such officers; a statement of the injuries suffered; and a demand of $500,000.

14.    On July 19, 2022, 120 days passed, and Defendant County did not accept Plaintiff's claim in any part.

15.    Plaintiff filed her Motion for Leave to Amend[1] within 90 days of July 19, 2022.

16.    Plaintiff has thus complied with the Kansas Tort Claims Act.

## FACTS COMMON TO ALL COUNTS

17.    Plaintiff was hired by Defendant County in approximately April 2015.

18.    Plaintiff was employed as a Community Employment Specialist at the Johnson County Developmental Supports (JCDS).

19.    Plaintiff's job duties including serving as the Team Leader for Project SEARCH, which strives to offer education and vocational training to individual with intellectual and development disabilities.

20.    Plaintiff worked as a non-exempt employee, and was required to submit timecards showing hours Plaintiff had worked for each week.

21.    Plaintiff's supervisor, Kim Perry, the Team Leader for Day and Employment

---

[1] For purposes of satisfying statute of limitations, an amended pleading is deemed filed on the date the plaintiff seeks leave to amend. *Brez v. Fougera Pharm., Inc.*, No. 16-2576-DDC-GEB, 2017 WL 3267610, at*7 n.39 (D. Kan. Aug. 1, 2017) (collecting cases).

Services, had to approve all time entries before Plaintiff would be compensated for that time.

22. In Perry's absence, Defendant Johnson would approve all time entries— including overtime—before Plaintiff would be compensated for that time.

23. Between April 2015 and January 2018, Plaintiff worked substantial overtime.

24. At no time prior to January 31, 2018 did Perry, Defendant Johnson, or any employee of Defendant County ask Plaintiff about her overtime hours worked.

25. Plaintiff would often use a laptop computer provided by Defendant to complete tasks.

26. Some of these tasks were completed at Plaintiff's home.

27. In late 2017, Plaintiff began to notice several troubling issues at JCDS.

28. In one instance, Plaintiff arrived for her shift to find a client pounding on the wall of his room in an attempt to get assistance.

29. Plaintiff asked the night staff if something was wrong with the client.

30. The staff remarked that, "I dunno, he's been doing that for over an hour."

31. Plaintiff entered the client's room to find that the client had defecated and urinated on himself.

32. The client was pounding the wall in an attempt to get someone's attention for assistance in cleaning himself.

33. Plaintiff apologized to the client and helped him to get clean.

34. Plaintiff reported the occurrence to Senior Direct Support Professional, as well as Melissa Athey and Chris Goff.

35.    To Plaintiff's knowledge, no investigation was under taken nor any corrective measures implemented to prevent similar occurrences.

36.    Plaintiff also complained that narcotic medications that were at the JCDS 54th Terrace location were not being properly stored, including a lack of any lock on the medications.

37.    Some narcotic medications ultimately came up missing at the 99th Terrace Home.

38.    Plaintiff reported the missing medications to her supervisors and the medical staff at JCDS.

39.    However, after Plaintiff's report, Plaintiff did not observe any changes in how the narcotic medications were stored or secured.

40.    On or about December 7, 2017, Plaintiff was working in the office at JCDS.

41.    The office had several medical files, which contained confidential medical and personal information of several clients of the JCDS.

42.    Some of this information is protected by the Health Insurance Portability and Accountability Act (HIPAA).

43.    During her shift, an unknown individual opened the door to the office.

44.    Plaintiff was startled, as the door was supposed to be locked to prevent unauthorized individuals from accessing the room, as well as the confidential information stored therein.

45.    Plaintiff examined the door, and found that it did not even have a functioning lock.

46.    Plaintiff also learned that court was being held in the same building as the

*Clerk of the District Court, Johnson County Kansas*
*10/24/22  09:54am CM*

JCDS office.

47.    Several individuals reporting to court for criminal cases began knocking on the office door, with some opening the unlocked door.

48.    Plaintiff learned that, despite court being held in the building, no additional security was present.

49.    Plaintiff contacted Perry to report these incidents and request that a working lock be installed on the door to protect the confidential information, as well as the JCDS staff and clients.

50.    Plaintiff also noted that the door needed to be secured to protect the staff and clients of JCDS.

51.    Perry brushed off Plaintiff's complaints.

52.    Perry told Plaintiff, "I'm sure this will all blow over and get fixed eventually."

53.    Plaintiff was put off by this comment, as she did not want anything to "blow over"; Plaintiff wanted the issue corrected.

54.    Plaintiff again requested that Perry make these issues known.

55.    Perry again refused.

56.    On December 13, 2017, Plaintiff found that nothing had been done to address her complaints.

57.    Plaintiff decided she needed to report the issues to a higher authority.

58.    Plaintiff contacted Human Resources and described the occurrence, the potential issues, and the need for the lock.

59.    The Human Resources representative told Plaintiff the department would

follow up on this to make sure it was addressed.

60. Approximately 10 minutes after Plaintiff's complaint to Human Resources, Plaintiff received a call from Perry.

61. Perry immediately asked Plaintiff: "Why did you contact HR?"

62. Plaintiff attempted to explain, but Perry talked over her.

63. Perry told Plaintiff that Plaintiff should not go "over her head" again "or else."

64. Perry told Plaintiff: "I have things under control."

65. Plaintiff apologized to Perry about contacting Human Resources.

66. Plaintiff explained that she did not realize Perry was working on something to address the issue.

67. Perry snapped back: "I'm not."

68. Plaintiff did not know what to say, and Perry ended the call.

69. A few weeks later, Plaintiff was called into a meeting with Human Resources representative Teal Goeller and Defendant Johnson.

70. In that meeting Plaintiff was told that her overtime usage was "excessive."

71. Plaintiff pointed out that she had been working at JCDS for over three years, and substantial overtime was part of the job.

72. Plaintiff also noted that her supervisor, Perry, had signed off on all of Plaintiff's timecards showing Plaintiff's overtime hours.

73. Plaintiff further pointed out that the only other individual in the same position as Plaintiff, Jo Duncan, had been using FMLA leave during 2017, which had also contributed to Plaintiff working additional hours.

74.     As Plaintiff attempted to explain the work she had been doing to justify the overtime worked, Goeller and Defendant Johnson continually interrupted Plaintiff and kept her from speaking.

75.     Plaintiff repeatedly told both Goeller and Defendant Johnson that she needed the laptop computer Defendant County had issued to her to indicate what she was doing on any given day.

76.     Plaintiff offered to allow Goeller or Defendant Johnson to operate the computer while Plaintiff instructed the operator where to locate the pertinent data, but was rebuffed.

77.     Plaintiff was never given the opportunity to access this documentation from her computer to prove she had been working for all claimed hours.

78.     In fact, Plaintiff would never be allowed to access her computer again before being discharged, falsely charged with a crime, or prosecuted.

79.     The following day, Plaintiff was placed on administrative leave.

80.     When Plaintiff was informed of this, she asked if she should get an attorney.

81.     The Human Resources representative mocked Plaintiff for asking this question.

82.     The representative remarked "Why should you? You aren't in any trouble here."

83.     Plaintiff was only interviewed for approximately 10 minutes over the next three weeks as an investigation was conducted.

84.     In that brief interview, Plaintiff again directed Defendant County to her work computer.

*Clerk of the District Court, Johnson County Kansas*
*10/24/22  09:54am CM*

85.     Plaintiff noted that the computer contained all the relevant information to support Plaintiff's use of overtime.

86.     Defendant, through its agents, including Defendant Johnson, again denied Plaintiff access to her computer.

87.     Unbeknownst to Plaintiff, Defendant Hentschel met with Jason Novotny and Dana Gouge, investigators from the Office of the District Attorney for Johnson County, Kansas (hereinafter "DA"), on February 13, 2018.

88.     Defendant Hentschel reported that Defendant County had ***proof*** that Plaintiff was falsely claiming overtime hours.

89.     In reality, Defendant County had not yet even determined if it would discharge Plaintiff.

90.     The DA would ultimately subpoena various records in investigating these allegations but would not subpoena Defendant County.

91.     Instead, the DA's report noted that such records have been supplied by "Johnson County Human Resources."

92.     Goeller contacted Plaintiff to request that Plaintiff attend a "meeting" on February 22, 2018.

93.     Goeller told Plaintiff that Defendant had some "follow up questions" for Plaintiff.

94.     Goeller did not inform Plaintiff that a decision would be made on this date.

95.     On February 22, 2018, Plaintiff arrived for the "meeting."

96.     However, Plaintiff found that six individuals, including Defendant Fletcher, Perry, and Goeller, were present.

97.     Shortly after Plaintiff entered the room, Defendant Fletcher told Plaintiff: "I intend to separate you from employment with JCDS; convince me otherwise."

98.     Plaintiff realized that this was not a "meeting" for follow-up questions, but a hearing upon which her employment status would be decided.

99.     Plaintiff had gotten no advanced warning of this fact.

100.    Plaintiff again, asked for access to her work computer.

101.    Plaintiff again, explained that the computer held documents and data that would prove her explanations regarding the use of overtime.

102.    Plaintiff was again denied access to this evidence by Defendant County, acting through Defendant Fletcher.

103.    Defendant Fletcher informed Plaintiff that Defendant County had advised the DA that Defendant County wished for the DA to pursue criminal charges against Plaintiff for theft.

104.    Defendant Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff.

105.    The memorandum had been written by Fletcher prior to hearing from Plaintiff on February 22, 2018.

106.    In the memorandum, it stated: "[Defendant County] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working."

107.    Despite signing off on Plaintiff's overtime, Perry was not discharged.

108.    In fact, Perry participated in Plaintiff's discharge.

109.    Defendant Johnson had signed off on some of Plaintiff's overtime as well.

219

110. Despite this, Defendant Johnson was not discharged.

111. Plaintiff was given five business days, up to and including March 1, 2018, to determine whether she would appeal the decision of Defendant County.

112. Plaintiff did not have access to her computer, so knew she would not have the ability to properly defend herself upon an appeal of the decision.

113. Plaintiff notified Defendant County of this one March 1, 2018.

114. Plaintiff applied for unemployment benefits, but was denied when Defendant County alleged that Plaintiff had committed theft by inflating overtime hours.

115. Sometime between February 13, 2018 and September 2018, Defendant Johnson would provide select documentation to the DA, but would not provide Plaintiff's computer nor all the records Defendant Johnson and Defendant County claimed to have reviewed in making the determination that Plaintiff inflated overtime hours.

116. Plaintiff began working at another job following her discharge from employment by Defendant County.

117. On January 2, 2019, the DA filed a criminal charge of theft against Plaintiff.

118. As a result of this charge, Plaintiff was terminated from her replacement employment.

119. Plaintiff was arrested on January 2, 2019, and forced to post bond for her release.

120. Plaintiff retained legal counsel to represent her in the criminal case.

121. In the criminal case, Plaintiff's legal counsel requested access to Plaintiff's work computer and all data/documents contained therein.

122. Plaintiff has a constitutional right to this information, as it would exonerate

her.

123. Plaintiff's legal counsel contacted the DA, through the attorney prosecuting Plaintiff's criminal case, and informed the attorney that the work computer would be extremely important.

124. The DA's office sent an investigator, Jason Novotny, to review the computer's contents.

125. However, it was discovered that the computer was believed to have been completely wiped.

126. Plaintiff's legal counsel then subpoenaed Defendant County for access to the computer.

127. Defendant County, though its IT department, stated that the computer had been reissued to another employee and that the computer had not been examined forensically in any way prior to being wiped.

128. Defendant County, though its IT department, suggested that most of the data was saved to an external server owned by Defendant County.

129. Novotny interviewed Mike Epperson, the Information Security and Resilience Manager for Defendant County.

130. Epperson stated that Defendant County's retention policy was for six months after an employee's discharge.

131. Epperson stated that the computer had been "disabled" on March 19, 2018, well before the six month period.

132. Further, no hold was placed on the data held by the computer.

133. Plaintiff's legal counsel then subpoenaed Defendant County for access to the

saved data from the server.

134.   Defendant County, through its legal counsel, stated *that none of the records from Plaintiff's computer could be located on the server*.

135.   This data was never saved to the server, but instead deleted well ahead of Defendant County's record retention policy.

136.   Additionally, many of the documents identified in the discharge report written by Defendant Fletcher were identified as "un-locatable" by the DA.

137.   This is true despite Defendants knowing and requesting that criminal charges be pursued well before Plaintiff was even discharged, and well after Plaintiff had repeatedly identified the existence of exculpatory evidence on her work computer.

138.   A Preliminary Hearing was set in Plaintiff's criminal case for August 2 through 4, 2021.

139.   On July 16, 2021, the DA dismissed the criminal case.

140.   All actions or inactions of or by Defendant County occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY
### (against Defendant County)

141.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 140 of her First Amended Petition, as though fully stated herein.

142.   Plaintiff made good-faith complaints to management members of Defendant County about the following concerns:

          a.   Neglect of residents who depended on staff of JCDS for support, in

violation of the Adult Care Home Licensure Act (K.S.A. § 39-923) and civil rights of the residents;

b. Unsafe and unsecured storage of narcotic medications, in violation of the Controlled Substances Act (21 U.S.C., ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

c. Missing narcotic medications, in violation of the Controlled Substances Act (21 U.S.C. ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

d. Unsafe working conditions due to lack of locks on doors, in violation of the Occupational Safety and Health Act (29 U.S.C., ch. 15); and

e. Inadequate protections for personal information protected by HIPAA, in violation of HIPAA and Health Information Technology for Economic and Clinical Health Act.

143. The above laws each pertain to public health, safety, and the general welfare of the citizens of Kansas.

144. Plaintiff made each of the above reports to supervisory employees of Defendant County, including Plaintiff's direct supervisor.

145. When Plaintiff's direct supervisor failed to act on Plaintiff's complaint, Plaintiff went to a higher internal authority.

146. Defendant County took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, requesting criminal charges be brought against Plaintiff, destroying exculpatory evidence identified by Plaintiff, and opposing Plaintiff

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

receiving unemployment benefits.

147.    Defendant County's adverse employment actions taken against Plaintiff were each based upon, and directly related to, Plaintiff's complaints.

148.    Defendant County's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts, the Kansas Legislature, and Congress.

149.    As a direct and proximate result of Defendant County's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, loss of subsequent employment, increased legal fees, and will continue to suffer the same unless and until this Court grants relief.

150.    Defendant County acted toward Plaintiff with willful conduct, wanton conduct, or malice.

151.    Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $500,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT II – VIOLATION OF RIGHTS UNDER
### FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
### MALICIOUS PROSECUTION
### (against Defendant County)

152.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 151 of her First Amended Petition, as though fully stated herein.

153.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

*Clerk of the District Court, Johnson County Kansas*
*10/24/22  09:54am CM*

154. Defendant Johnson, Defendant Fletcher, and Defendant Hentschel were each involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

155. Defendant Johnson, Defendant Fletcher, and Defendant Hentschel were each involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

156. Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

157. Defendant County, Defendant Johnson, Defendant Fletcher, and Defendant Hentschel all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

158. Plaintiff directly told Defendant County, including but not limited to Defendant Johnson and Defendant Fletcher, that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

159. Despite this knowledge, Defendants each did nothing to preserved the data contained in the computer.

160. Instead, Defendants allowed for the data to be completely destroyed while the computer was under their collective control.

161. Further, Defendants did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendants had never viewed.

162. Erasing the data from the computer was ostensibly done pursuant to a policy

of Defendant County regarding deleting all data contained on computers of formers employees.

163. However, this policy was not followed, and the data was erased well before the dictated amount of time.

164. Defendant Fletcher has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

165. Defendant Johnson has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

166. Defendant Hentschel has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

167. Defendants took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

168. Defendants took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

169. Further, Defendants identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

170. Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

171. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendants.

172.    This both caused and continued Plaintiff's confinement and prosecution.

173.    As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

174.    Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

175.    Defendants acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

176.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

177.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT III – VIOLATION OF RIGHTS UNDER
### FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
### MALICIOUS PROSECUTION
### (against Defendant Johnson)

178.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 177 of her First Amended Petition, as though fully stated herein.

179.    Defendant Johnson was involved in the investigational aspects of criminal charges brought against Plaintiff.

180.    Defendant Johnson was involved in gathering information that was used to

convince the DA to pursue criminal charges against Plaintiff.

181.    Defendant Johnson was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

182.    Defendant Johnson requested that the DA file particular state law criminal charges against Plaintiff.

183.    Defendant Johnson had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

184.    Plaintiff directly told Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

185.    Despite this knowledge, Defendant Johnson did nothing to preserve the data contained in the computer.

186.    Instead, Defendant Johnson allowed for the data to be completely destroyed while the computer was under her control.

187.    Further, Defendant Johnson did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant Johnson had never viewed.

188.    Defendant Johnson took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

189.    Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

190.    Further, Defendant Johnson identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

191.    Defendant Johnson did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

192.    This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Johnson.

193.    This both caused and continued Plaintiff's confinement and prosecution.

194.    As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

195.    Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

196.    Defendant Johnson acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

197.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

198.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Johnson in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

## COUNT IV – VIOLATION OF RIGHTS UNDER
## FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
## MALICIOUS PROSECUTION
### (against Defendant Fletcher)

199. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 198 of her First Amended Petition, as though fully stated herein.

200. Defendant Fletcher was involved in the investigational aspects of criminal charges brought against Plaintiff.

201. Defendant Fletcher was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

202. Defendant Fletcher was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

203. Defendant Fletcher requested that the DA file particular state law criminal charges against Plaintiff.

204. Defendant Fletcher had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

205. Plaintiff directly told Defendant Fletcher that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

206. In fact, Plaintiff told Defendant Fletcher this in response to Defendant Fletcher's request that Plaintiff identify data which would refute Defendant Fletcher and Defendant County's allegation that Plaintiff was not working during claimed overtime hours.

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

207. Despite this knowledge, Defendant Fletcher did nothing to preserve the data contained in the computer.

208. Instead, Defendant Fletcher allowed for the data to be completely destroyed while the computer was under his control.

209. Further, Defendant Fletcher did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant Fletcher had never viewed.

210. Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

211. Defendant Fletcher took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

212. Further, Defendant Fletcher identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

213. Defendant Fletcher did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

214. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Fletcher.

215. This both caused and continued Plaintiff's confinement and prosecution.

216. As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

217.    Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

218.    Defendant Fletcher acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

219.    Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

220.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT V – VIOLATION OF RIGHTS UNDER
## FOURTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 –
## MALICIOUS PROSECUTION
## (against Defendant Hentschel)

221.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 220 of her First Amended Petition, as though fully stated herein.

222.    Defendant Hentschel was involved in the investigational aspects of criminal charges brought against Plaintiff.

223.    Defendant Hentschel met with investigators from the DA on February 13, 2018 and claimed to have proof that Plaintiff had committed theft.

224.    Both prior to and after this meeting, Plaintiff identified exculpatory information and exculpatory evidence, including Plaintiff's work computer, that would

justify her claimed overtime.

225.    Defendant Hentschel kept this exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

226.    Defendant Hentschel requested that the DA file particular state law criminal charges against Plaintiff.

227.    Defendant Hentschel all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA—which was done long after the criminal charges were filed in January 2019.

228.    Defendant Hentschel each did nothing to preserved the data contained in the computer.

229.    Instead, Defendant Hentschel allowed for the data to be completely destroyed while the computer was under her collective control.

230.    Further, Defendant Hentschel did not notify the DA of the existence of this potential evidence or Plaintiff's claim that the computer contained exculpatory evidence which Defendant Hentschel had never viewed.

231.    Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of formers employees.

232.    However, this policy was not followed, and the data was erased well before the dictated amount of time.

233.    Defendant Hentschel has been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

234. Defendant Hentschel took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer—*even after directly asking that the DA pursue criminal charges.*

235. Defendant Hentschel took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

236. Further, Defendant Hentschel identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

237. Defendant Hentschel did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

238. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant Hentschel.

239. This both caused and continued Plaintiff's confinement and prosecution.

240. As a result of the destruction of evidence, Plaintiff's rights guaranteed by the Fourth Amendment and Fourteenth Amendment have been violated.

241. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

242. Defendant Hentschel acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

243. Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

life, reduced employment opportunities, emotional distress, and deprivation of these rights.

244.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Hentschel in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT VI – MALICIOUS PROSECUTION
### (against Defendant County)

245.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 244 of her First Amended Petition, as though fully stated herein.

246.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

247.    Defendant County was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

248.    Defendant County was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

249.    Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

250.    Thus, Defendant County procured criminal proceedings against Plaintiff by inducing the DA to initiate such criminal prosecution of Plaintiff.

251.    Defendant County had control of Plaintiff's former work computer at all

times prior to turning the computer over to the DA.

252. Plaintiff directly told Defendant County that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

253. Despite this knowledge, Defendant County did nothing to preserve the data contained in the computer.

254. Instead, Defendant County allowed for the data to be completely destroyed while the computer was under his control.

255. Further, Defendant County did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant County had never viewed.

256. Defendant County took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

257. Defendant County took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely located on the computer.

258. Further, Defendant County identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

259. Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

260. This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

request of Defendant County.

261. This both caused and continued Plaintiff's confinement and prosecution.

262. Plaintiff was seized without probable cause, being arrested and detained, including bond conditions following her initial release from jail.

263. Defendant County acted with malice, concealing and ultimately destroying evidence identified as exculpatory by Plaintiff.

264. Defendant County acted without probable cause.

265. Plaintiff has suffered injury due to this deprivation, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

266. The criminal proceeding terminated in favor of Plaintiff via dismissal and has not been again commenced.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $500,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT VII – ABUSE OF PROCESS
### (against Defendant County)

267. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 266 of her First Amended Petition, as though fully stated herein.

268. Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

269. Defendant County was involved in gathering information that was used to convince the DA to pursue criminal charges against Plaintiff.

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

270. Defendant County was involved in keeping exculpatory information and exculpatory evidence, including Plaintiff's work computer, hidden from the DA while requesting that the DA pursue criminal charges against Plaintiff.

271. Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

272. Thus, Defendant County procured criminal proceedings against Plaintiff by inducing the DA to initiate such criminal prosecution of Plaintiff.

273. Defendant County had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

274. Plaintiff directly told Defendant County that the computer contained information that would prove what tasks Plaintiff was performing during claimed overtime hours.

275. Despite this knowledge, Defendant County did nothing to preserve the data contained in the computer.

276. Instead, Defendant County allowed for the data to be completely destroyed while the computer was under his control.

277. Further, Defendant County did not notify the DA of the existence of this potential evidence or Plaintiff claim that the computer contained exculpatory evidence which Defendant County had never viewed.

278. Defendant County took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

279. Defendant County took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of

*Clerk of the District Court, Johnson County Kansas*
*10/24/22 09:54am CM*

238

theft via overtime fraud was solely located on the computer.

280.	Further, Defendant County identified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

281.	Defendant County did not retain these documents, despite having requested that criminal charges be brought against Plaintiff.

282.	This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County.

283.	This both caused and continued Plaintiff's confinement and prosecution.

284.	Defendant County took these actions knowing of the illegal and improper use of the criminal process.

285.	Defendant County acted with the purpose of harassing Plaintiff.

286.	Defendant County acted with the purpose of causing great inconvenience to Plaintiff.

287.	Defendant County acted with the purpose of causing great hardship to Plaintiff.

288.	Defendant County acted with malice.

289.	Plaintiff has suffered injury due to this, in the form of legal fees, emotional pain, suffering humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $500,000, for the costs of this action, and for such other and further

*Clerk of the District Court, Johnson County Kansas*
*10/24/22  09:54am CM*

consideration and relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all accounts and allegations of wrongful conduct alleged in this First Amended Petition.

Respectfully submitted,

_/s/ Robert A Bruce_
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930
Facsimile: (913) 371-0147
Dan@KCLaw.com
Robert@KCLaw.com
**ATTORNEYS FOR PLAINTIFF**

_Clerk of the District Court, Johnson County Kansas_
_10/24/22  09:54am CM_

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

CHARMAINE ELVEN

              Plaintiff                         Case No: 20CV03451

    vs                                   Division:   4

                                        K.S.A. Chapter 60

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON

              Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a(n) SUMMONS and PETITION in this action for MATTHEW FLETCHER whose address for service is:

     700 SW JACKSON, SUITE 1100
     TOPEKA, KS 66603


Certified mail service by the undersigned attorney, who understands that it is their responsibility to obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the Clerk's office to prove service.


                    By: /s/ ROBERT A BRUCE
                    ROBERT A BRUCE, #28332
                    748 ANN AVE
                    KANSAS CITY, KS 66101
                    913-221-7066

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

CHARMAINE ELVEN
                    Plaintiff                    Case No: 20CV03451
        vs                                       Division:   4
                                                 K.S.A. Chapter 60
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON
                    Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a(n) SUMMONS and PETITION in this action for BETH JOHNSON whose address for
service is:

        10501 LACKMAN ROAD
        LENEXA, KS 66219


Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.


                        By: /s/ ROBERT A BRUCE
                        ROBERT A BRUCE, #28332
                        748 ANN AVE
                        KANSAS CITY, KS 66101
                        913-221-7066

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

CHARMAINE ELVEN
                Plaintiff                        Case No: 20CV03451
    vs                                        Division:   4
                                                K.S.A. Chapter 60
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON
                      Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a(n) SUMMONS and PETITION in this action for TIFFANY HENTSCHEL whose address
for service is:

    111 S CHERRY STREET, SUITE 2600
    OLATHE, KS 66061

Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.

                        By: /s/ ROBERT A BRUCE
                        ROBERT A BRUCE, #28332
                        748 ANN AVE
                        KANSAS CITY, KS 66101
                        913-221-7066

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 20CV03451 |
| | ) | |
| THE BOARD OF COUNTY | ) | Div. 4 |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| BETH JOHNSON, | ) | |
| MATTHEW FLETCHER, and | ) | |
| TIFFANY HENTSCHEL, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' UNOPPOSED MOTION FOR**</u>
<u>**EXTENSION TO ANSWER OR OTHERWISE RESPOND**</u>

COME NOW the Defendants, The Board of County Commissioners of the County of Johnson ("Defendant County"), Beth Johnson, Matthew Fletcher, and Tiffany Hentschel ("Individual Defendants"), and hereby respectfully move the Court for an extension to answer or otherwise respond to Plaintiff's First Amended Petition, giving Defendants 45 days to answer or otherwise respond. In support thereof, the Defendants state the following:

1.      Plaintiff filed her First Amended Petition on October 24, 2022.

2.      Accordingly, Defendant County's responsive pleading is currently due on November 14, 2022.

3.      Defendants' counsel accepted service for the Individual Defendants on October 26, 2022.

4.      Accordingly, the deadline for the Individual Defendants to answer or otherwise respond is currently November 16, 2022.

5.    In exchange for the Individual Defendants' agreement to accept informal service (on counsel), Plaintiff agreed to allow Defendants 45 days to plead or otherwise respond to Plaintiff's Amended Petition, making the responsive pleading deadline December 8, 2022.

6.    The extension is not requested for the purpose of delay, and will not prejudice either party.

WHEREFORE, Defendants respectfully request an extension of time to December 8, 2022, in which to answer or otherwise respond to Plaintiff's First Amended Petition.

Respectfully submitted,

*/s/ Jeannie M. DeVeney*
Jeannie M. DeVeney, #17445
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com

ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2022, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Daniel L. Doyle
Robert A. Bruce
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, KS 66101
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeannie M. DeVeney*
ATTORNEY FOR DEFENDANTS

*Clerk of the District Court, Johnson County Kansas*
*10/26/22 12:04pm CM*

**IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL DEPARTMENT**

| | |
|---|---|
| CHARMAINE ELVEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.: 20CV03451 |
| THE BOARD OF COUNTY | ) |
| COMMISSIONERS OF THE | ) Div. 4 |
| COUNTY OF JOHNSON, | ) |
| BETH JOHNSON, | ) |
| MATTHEW FLETCHER, and | ) |
| TIFFANY HENTSCHEL, | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

NOW on this ___ day of _____, 2022, comes before the Court, Defendants'

Unopposed Motion for Extension to Answer or Otherwise Respond. For the reasons set forth

herein and for good cause shown, the Court hereby grants the Motion. Defendants are hereby

granted an extension to December 8, 2022, in which to answer or otherwise respond to Plaintiff's

First Amended Petition.

IT IS SO ORDERED.

/s/ RHONDA K MASON
Dated: 10/26/22

Date: _____

_____
Rhonda K. Mason
Judge of the District Court
Division 4